**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CHICAGO BOARD OPTIONS EXCHANGE, INCORPORATED,<br><br>Plaintiff,<br><br>v.<br><br>INTERNATIONAL SECURITIES EXCHANGE, LLC,<br><br>Defendant. | Case No. 07-cv-00623<br><br>Hon. Joan H. Lefkow, U.S.D.J.<br>Hon. Jeffrey Cole, U.S.M.J. |

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Chicago Board Options Exchange, Incorporated ("CBOE"), for its Amended Complaint, alleges:

### THE PARTIES

1.  Plaintiff CBOE is a Delaware corporation having its principal place of business at 400 South LaSalle Street, Chicago, Illinois 60605.

2.  Defendant, International Securities Exchange, LLC ("ISE"), is a Delaware corporation having its principal place of business at 60 Broad Street, New York, New York 10004.

### JURISDICTION AND VENUE

3.  This action arises under the Patent Laws of the United States, Title 35, United States Code, Section 1 et seq., and is for a declaratory judgment that United States Patents Nos. 6,377,940 (the "'940 patent"); 6,405,180 (the "'180 patent"); and 6,618,707 (the "'707 patent") (collectively, the "ISE patents") are not infringed and/or not valid and/or not enforceable against plaintiff.

4. This court has jurisdiction of the subject matter hereof under the provisions of Title 28, United States Code, Sections 1338(a), 2201 and 2202.

5. Venue in this judicial district is proper under Title 28, United States Code, 1391(b) and 1391(c) in that a substantial part of the property that is the subject of this action is situated in this judicial district and defendant is subject to personal jurisdiction in this district.

## FACTS COMMON TO ALL CLAIMS

6. CBOE operates a national securities exchange based in Chicago, Illinois that specializes in the trading of standardized securities options. Among other things, CBOE operates a trading floor in Chicago and maintains and operates a trading system (the "Hybrid System") in Chicago through which members can buy and sell options for their own account, for their employer's account, and for their customers. CBOE's Hybrid System provides members with the ability to trade options electronically and through an open outcry auction on its exchange.

7. ISE operates an all-electronic securities exchange that offers trading in securities options.

8. On November 22, 2006, ISE, by its counsel, sent to CBOE a letter entitled "Notice of Infringement of U.S. Patent No. 6,618,707," a copy of which is annexed hereto as Exhibit A.

9. In the November 22, 2006 letter, ISE informed CBOE that it owned the '940 patent, the '180 patent, and the '707 patent, copies of which are annexed hereto as Exhibits B, C and D, respectively.

10. Also in the November 22, 2006 letter, ISE informed CBOE that it believed the CBOE Hybrid System infringed the '707 patent; that it had that day filed an action for infringement of the '707 patent in the United States District Court for the Southern District of

New York; and that it might be willing to license CBOE under the '707 patent, as well as the '940 patent and the '180 patent.

11.     The filing by ISE of a patent infringement action in New York based on the '707 patent, the invitation to discuss licensing of the '940 patent and the '180 patent, and the then-existing and continuing adversarial relationship between ISE and CBOE which includes at least two active litigations, all taken together, raise a reasonable apprehension by CBOE of litigation with respect to the '940 patent and the '180 patent.

12.     The November 22, 2006 letter referred to in Paragraphs 8, 9 and 10 hereof (Exhibit A) represents the first communication between the parties hereto regarding the '940 patent, the '180 patent, or the '707 patent.

## FIRST CLAIM FOR RELIEF

13.     Plaintiff CBOE repeats and realleges each and every allegation contained in Paragraphs 1 through 12, inclusive, hereof as though fully set forth herein.

14.     By reason of the facts set forth in Paragraphs 6 through 12, inclusive, hereof, a conflict of asserted rights has arisen between the parties and an actual controversy exists between plaintiff CBOE and defendant ISE with respect to the infringement, validity, scope and/or enforceability of the '940 patent, in that plaintiff claims the right to use its Hybrid System without further interference from defendant and without any and all charges of infringement against it.

15.     The '940 patent and each claim of such patent is, on information and belief, not infringed, and/or not valid and/or not enforceable against plaintiff under one or more of the provisions of Title 35, United States Code, Sections 101, 102, 103 or 112.

**SECOND CLAIM FOR RELIEF**

16. Plaintiff CBOE repeats and realleges each and every allegation contained in Paragraphs 1 through 12, inclusive, hereof as though fully set forth herein.

17. By reason of the facts set forth in Paragraphs 6 through 12, inclusive, hereof, a conflict of asserted rights has arisen between the parties and an actual controversy exists between plaintiff CBOE and defendant ISE with respect to the infringement, validity, scope and/or enforceability of the '180 patent, in that plaintiff claims the right to use its Hybrid System without further interference from defendant and any and all charges of infringement against it.

18. The '180 patent and each claim of such patent is, on information and belief, not infringed, and/or not valid and/or not enforceable against plaintiff under one or more of the provisions of Title 35, United States Code, Sections 101, 102, 103, or 112.

**THIRD CLAIM FOR RELIEF**

19. Plaintiff CBOE repeats and realleges each and every allegation contained in Paragraphs 1 through 12, inclusive, hereof as though fully set forth herein.

20. By reason of the facts set forth in Paragraphs 6 through 12, inclusive, hereof, a conflict of asserted rights has arisen between the parties and an actual controversy exists between plaintiff CBOE and defendant ISE with respect to the infringement, validity, scope and enforceability of the '707 patent, in that plaintiff claims the right to use its Hybrid System without further interference from defendant and any and all charges of infringement against it.

21. The '707 patent and each claim of such patent is, on information and belief, not infringed, and/or not valid and/or not enforceable against plaintiff under one or more of the provisions of Title 35, United States Code, Sections 101, 102, 103, or 112.

22. The '707 patent is further unenforceable by reason of inequitable conduct because, on information and belief, the applicant for such patent and/or his authorized representative

and/or other persons associated with the preparation, filing and/or prosecution of Provisional Application No. 60/106935 and/or Application No. 09/433,613 (the "application for the '707 patent"), all of whom had the duty to disclose to the United States Patent and Trademark Office (the "PTO") information material to the patentability of the subject matter claimed in the application for the '707 patent, willfully and knowingly withheld and misrepresented in the proceedings before the PTO, knowledge and information relating to material prior art which would have been pertinent to the examination and evaluation conducted by the PTO that resulted in the issuance of the '707 patent.

23. On information and belief, the applicant for the '707 patent, his authorized representatives, and other persons associated with the preparation and/or filing and/or prosecution before the PTO of the application for the '707 patent (collectively, "the applicant") were aware at all relevant times of their duty to cite material prior art references to the PTO during the prosecution of the application for the '707 patent. Despite this awareness, the applicant, with an intent to deceive the PTO, concealed from and/or misrepresented to the PTO material information during the prosecution of the application for the '707 patent.

24. The knowing and willful concealment and/or misrepresentation of material information during the prosecution of the application for the '707 patent before the PTO, referred to in Paragraphs 16 and 17 hereof, renders the '707 patent unenforceable against plaintiff CBOE by reason of inequitable conduct.

25. A printed publication of the United States Securities and Exchange Commission ("SEC") entitled "A Monitoring Report on the Operation of the Cincinnati Stock Exchange National Securities Trading System" (the "1981 SEC Report") was published in or about May

1981. The 1981 SEC Report, which is a prior art reference to the claims of the '707 patent under 35 U.S.C. § 102, is attached to this Amended Complaint as Exhibit E.

26. A printed publication of the SEC entitled "A Report on the Operation of the Cincinnati Stock Exchange National Securities Trading System 1978-1981 (the "1982 SEC Report") was published in or about May 1981. A copy of the 1982 SEC Report, which is prior art with respect to the claims of the '707 patent under 35 U.S.C. § 102, is attached to this Amended Complaint as Exhibit F.

27. A printed publication of the SEC, SEC Release No. 22330, entitled "Self-Regulatory Organization: Proposed Rule Change by the Cincinnati Stock Exchange (CSE) Relating to Small Order Execution Guarantee" (the "1985 SEC Release") was published in the Federal Register on or about August 15, 1985. A copy of the 1985 SEC Release, which is prior art to the claims of the '707 patent under 35 U.S.C. § 102, is attached to this Amended Complaint as Exhibit G.

28. A printed publication of the SEC Release No. 34-25995, entitled "Self-Regulatory Organizations; Chicago Board Options Exchange, Inc.; Order Approving Proposed Rule Changes Relating to the Retail Automatic Execution System ("RAES")," (the "1988 SEC Release"), was published on or about August 19, 1988. A copy of the 1988 SEC Release, which is prior art to the claims of the '707 patent under 35 U.S.C. § 102, is attached to this Amended Complaint as Exhibit H.

29. A printed publication of the Chicago Board of Trade entitled "Impressive Project A® Provides Extended Opportunity in CBOT Financial Complex" (the "1995 CBOT Project A Article") was published in or about January 1995. A copy of the 1995 CBOT Project A Article,

which is prior art to the claims of the '707 patent under 35 U.S.C. § 102, is attached to this Amended Complaint as Exhibit I.

30. The 1981 SEC Report, the 1982 SEC Report, and the 1985 SEC Release, referred to respectively in Paragraphs 19, 20, 21, and 22 hereof, each disclose an automated exchange for trading a financial instrument and a process for trading a financial instrument on an automated exchange wherein priority is determined first by price and, with respect to orders at the same price, by time of entry. Public customer orders have priority over other orders at the same price, regardless of time of entry.

31. The 1995 CBOT Project A Article referred to in Paragraph 23 hereof, discloses an automated exchange for trading a financial instrument and a process for trading a financial instrument on an automated exchange wherein priority is determined first by price and, with respect to orders at the same price, by time of entry. Non-priority orders are then matched by "quantity allocation, based on the percentage of the total quantity of orders at that price," which rewards orders having a larger size.

32. The 1981 SEC Report, the 1982 SEC Report, the 1985 SEC Release, the 1988 SEC Release, and the CBOT Project A Article are all material to the patentability of at least claims 1 and 35 of the '707 patent under 37 C.F.R. § 1.56 ("Rule 56") and the applicable decisions of the United States Court of Appeals for the Federal Circuit.

33. Claims 1 and 35 of the '707 patent are the only claims currently being asserted by defendant against plaintiff CBOE.

34. The 1981 SEC Report, the 1982 SEC Report, the 1985 SEC Release and/or the 1988 SEC Release, in combination with the CBOT Project A Article establish at least a prima facie case of unpatentability of such claims and/or a reasonable examiner would have considered

this information important in deciding whether to allow at least the claims of the application for the '707 patent that became claims 1 and 35 of the '707 patent.

35. During the prosecution of the application for the '707 patent, the applicant represented to the examiner in response to prior art rejections that:

> [b]y providing a mechanism for allocating transactions, an exchange according to the present invention overcomes problems with known exchanges that allocate incoming orders through a rotation of assignment (Paper No. 11 at p. 35; May 21, 2001).

\* \* \*

> Minton [the prior art] does not, however, show or suggest allocating an incoming order among a plurality of previously received orders on the basis of a stored allocating parameter.  Instead, Minton shows that <u>individual orders</u> between a buyer and seller are matched.  (*Id*. at p. 36)(emphasis in original).

\* \* \*

> [C]laims 1 and 35, which recite the allocation of an incoming order or quotation among a plurality of previously received orders or quotations based on an allocating parameter, are not shown or suggested by Minton and are submitted a [sic] patentable over Minton.  (*Id*. at p. 37).

\* \* \*

> The present invention is not shown or suggested by Minton at least because Minton does not show an exchange where portions of an incoming order are allocated among previously received orders or quotations based upon an allocating parameter or preference quantity. …There is also no suggestion in Minton that trade matching takes place based on a preference quantity that is determined by the type of entity placing an incoming order.  Thus, claims 1 and 35, which quote the allocation of an order among a plurality of previously received orders based on an allocating parameter, are not shown or suggested by Minton (Paper No. 16 at p. 3; Jan. 14, 2002).

\* \* \*

> The deep liquid markets offered by ISE are a consequence of the claimed features of the invention.  The exchange trading system automatically allocates incoming orders among previously received orders and quotations according to a predetermined parameter.  *See* claim 1, 35 and 68 (reciting allocating orders based on stored allocation parameters and preference quantities).  (Declaration of Gary Katz, Paper No. 22 at paragraph 12, pp. 5-6; July 19, 2002).

\* \* \*

> The present invention is directed to an automated exchange that receives orders and quotations for the purchase and sale of a financial instrument from public customers and professional traders and accumulates these orders and quotations in a memory. Accumulated orders and quotations are traded against incoming orders or quotations based on predetermined allocating parameters. According to one embodiment, the allocating parameters include parameters for "allocating a remaining portion of [an] incoming order or quotation preferentially against professional orders and quotations with larger size." *See* claims 1 and 35. (Paper No. 23 at p. 18; Aug. 2, 2002).
>
> \* \* \*
>
> Minton [the prior art] does not show or suggest allocating an incoming order among a plurality of previously received orders on the basis of a stored allocating parameter, or that such an allocating parameter includes parameters for allocating preferentially against professional orders or quotations with larger size, as required by claims 1 and 35. (Paper No. 23 at p. 19; Aug. 2, 2002).

36. The 1981 SEC Report, the 1982 SEC Report, and/or the 1985 SEC Release and/or the 1988 SEC Release, taken together with the 1995 CBOT Project A Article, disclose the very features of an automated exchange for trading a financial instrument and a process for trading a financial instrument on an automated exchange which the applicant for the '707 patent repeatedly represented to the PTO distinguished the subject matter of at least claims 1 and 35 of the application for the '707 patent from the prior art known to the examiner.

37. In particular, the prior art publications referred to in Paragraphs 19, 20, 21, 22, and 23 hereof, withheld from the PTO by the applicant, disclose an automated exchange for trading a financial instrument and a process for trading a financial instrument on an automated exchange that includes, as provided in claims 1 and 35 of the '707 patent, parameters for first allocating a portion of an incoming order or quotation against previously received customer orders (public customer priority) and then allocating a remaining portion of the incoming order or quotation preferentially against professional orders and quotations with larger size.

38.     Nevertheless, neither the 1981 SEC Report, the 1982 SEC Report, the 1985 SEC Release, the 1988 SEC Release nor the 1995 CBOT Project A Article were ever disclosed to the PTO by the applicant, even though, on information and belief, the applicant and/or his authorized representative and/or other persons associated with the preparation, filing and/or prosecution were at all relevant times fully aware of each such report, release and article.

39.     On information and belief, the applicant withheld the 1981 SEC Report, the 1982 SEC Report, the 1985 SEC Release, the 1988 SEC Release, and the 1995 CBOE Project A Article from the PTO with an intent to mislead and deceive the PTO.

40.     By reason of the facts and circumstances referred to in Paragraphs 16 through 33, inclusive, hereof, the '707 patent is unenforceable by reason of inequitable conduct.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff CBOE demands judgment as follows:

    A.     The ISE patents are invalid.

    B.     The ISE patents are not infringed by plaintiff.

    C.     The ISE patents are unenforceable against plaintiff.

    D.     Awarding plaintiff its costs and disbursements in this action.

    E.     Awarding plaintiff reasonable attorneys' fees.

    F.     For such other and further relief as the Court deems just and proper.

## JURY DEMAND

CBOE respectfully requests a trial by jury as to all issues so triable.

| | |
|---|---|
| Dated:  May 11, 2007 | By:   s/*Mark Ashton*<br>Paul E. Dengel<br>Stacie R. Hartman<br>Mark E. Ashton<br>**SCHIFF HARDIN LLP**<br>6600 Sears Tower<br>233 South Wacker Drive<br>Chicago, Illinois 60606-6473<br>(312) 258-5500<br>(312) 258-5600  (*facsimile*)<br><br>*Attorneys for Plaintiff Chicago Board*<br>*Options Exchange, Incorporated* |
| OF COUNSEL: | |
| Jonathan A. Marshall<br>David Francescani<br>John T. Johnson (N.D. Ill. Fed. Bar No. 2589182)<br>**FISH & RICHARDSON P.C.**<br>Citigroup Center - 52nd Floor<br>153 East 53rd Street<br>New York, NY 10022<br>Telephone: (212) 765-5070<br>Facsimile: (212) 258-2291 | Joanne Moffic-Silver<br>Jordan Newmark<br>**CHICAGO BOARD OPTIONS**<br>**EXCHANGE, INCORPORATED**<br>400 S. LaSalle Street<br>Chicago, Illinois  60605<br>Telephone: (312) 786-7909 |