IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO BOARD OPTIONS EXCHANGE, INCORPORATED, <br><br> Plaintiff, <br><br> vs. <br><br> INTERNATIONAL SECURITIES EXCHANGE, LLC <br><br> Defendant. | No. 07 C 623 <br><br> Judge Joan H. Lefkow <br><br> Magistrate Judge Jeffrey Cole |

## MEMORANDUM OPINION AND ORDER

The plaintiff, Chicago Board Options Exchange ("CBOE"), moves for an order compelling the defendant, International Securities Exchange, LLC ("ISE"), to produce certain documents in discovery that it has thus far withheld as privileged or protected by the work product doctrine.

### I.

### BACKGROUND

ISE operates an all-electronic, automated securities exchange. CBOE operates a "hybrid" exchange, offering both automated and traditional, open outcry trading. ISE charges CBOE with infringement of its Patent No. 6,168.707 ("'707 Patent"), which relates to automated trading. Their discovery dispute stems from the deposition of Joseph Ferraro, III, ISE's vice president, associate general counsel, and legal officer on January 17, 2008. Among other things, Mr. Ferraro testified that: (1) the law firm of Fish & Neave conducted an infringement analysis of the '707 Patent prior to its issuance in September 2003; (2) the CBOE's hybrid system was among the subjects of the infringement analysis, along with other exchanges; (3) exchanges were categorized as either

automated or partially automated, with the CBOE falling in the latter category; (4) the conclusion was that the CBOE's hybrid system infringed the '707 Patent. That response, the CBOE submits, effected a waiver of the attorney-client privilege and work product protection as to all documents relating to the infringement study.

ISE had designated Mr. Ferraro as a Rule 30(b)(6) witness to testify on eleven topics, all of which concern either (1) ISE's search for, collection, and production of documents in response to CBOE's discovery requests, or (2) ISE's investigation and preparation of responses to CBOE's interrogatories. The deposition was noticed to explore the steps that ISE had taken to discharge its burdens under Federal Rules 33 and 34. It was to be about documents, but not what those documents were about. But CBOE says that substantive content was disclosed, and that constitutes a waiver of any protection from discovery ISE might have claimed.

CBOE's argument is based on four portions of Mr. Ferraro's deposition. In the first, Mr. Ferraro, in response to specific questions, indicated that ISE undertook an infringement analysis, and engaged the firm of Fish & Neave for that purpose:

> Q. Was Mr. Lieb the only patent attorney working for ISE in preparing or helping to prepare the patent application that led to the '707 patent in suit?
>
> MR. BAGLEY [counsel for ISE]: Objection to form.
>
> A. No, he wasn't.
>
> Q. Who else was?
>
> A. There were, there was first Rob Isackson, who was then and still is a partner at Orrick Herrington, who was Steve's boss while he was at Orrick, and Rob participated in the app - the preparation of the application and the prosecution. I believe that there was a limited participation by a law firm, Fish & Neave, now Ropes & Gray, and the attorney there whose name was Mark Bloomberg.

Q. What was the nature of the participation of Fish & Neave?

A. Fish & Neave, I believe, became involved at the tail end of the prosecution. Their primary role, though, was conducting an infringement analysis of the to-be-issued patent.

(Ferraro Dep., at 69-70).

Next, Mr. Ferraro said that CBOE, with its hybrid system, was a target of the investigation,

as were other exchanges that were either fully or partly automated:

Q. Was the CBOE Hybrid system a subject of the infringement analysis conducted by Fish & Neave?

A. Yes, it was.

Q. Were any other trading systems subjects of the infringement analysis conducted by Fish & Neave?

A. Yes, they were.

Q. Which ones?

A. We, the analysis looked at all of the then-current registered national securities exchanges that were operating a marketplace for trading of options, all of them.

Q. Was that limited to the exchanges operating in the United States? Or did it include exchanges operating elsewhere in the world?

A. It was limited to, to the U.S.

(Ferraro Dep., at 71-72).

Hours later in the deposition, CBOE's counsel asked Mr. Ferraro about ISE's efforts to

collect documents in response to CBOE's document request no. 151:

Q. [R]equest 151 calls for all materials that constitute, describe, evidence, report or otherwise refer or relate to any comparison (including but not limited to those done by ISE and OMX) comparing and/or contrasting automated exchanges with nonautomated exchanges or partially automated exchanges.

Did you make a search on that subject'?

A. Yes, we did.

Q. And where did you search'?

A. We searched in the same areas with the same custodians.

Q. Did you find anything?

A. Yes, we did.

Q. What did you find?

A. Well, one, one thing that we found that would be responsive to this would be the infringement analysis that was done, because each automated exchange or partially automated exchange was analyzed, so you could say that it was a report or a, and a comparison to ISE.

Q. What, what nonautomated exchanges were studied as reflected in the infringement analysis?

A. I don't believe that nonautomated exchanges were studied with respect to the infringement analysis, only automated exchanges or partially automated exchanges.

Q. What partially automated exchanges were searched?

A. The CBOE. We referred to that as –

Q. That's the Hybrid?

A. – the Hybrid. Amex, I believe at the time that it was studied it was completely electronic, but it, I know at one point it wasn't, but – and that is the Pacific Exchange.

Q. And what fully automated exchanges did you study?

A. We studied BOX, the Boston Options Exchange, and that's it.

(Ferraro Dep., at 215-17).

The final portion of the deposition testimony upon which CBOE relies is the following

exchange, in which Mr. Ferraro describes ISE's efforts to comply with CBOE's document request

4

no. 117:

> Q. Number 117 on page 89, separately for each claim of the `707 [Patent] all materials that describe, report, evidence or otherwise refer or relate to an act of CBOE which ISE regarded prior to January 31, 2007 - and that was the date the Chicago case was filed - as direct infringement, contributory infringement and/or active inducement of infringement of such claim.
>
> Did you make a search for responsive documents?
>
> A. Yes, we did.
>
> Q. Did you find anything?
>
> A. Yes, we did.
>
> Q. What did you find?
>
> A. We found several documents. One example of a document was an infringement analysis that was prepared.
>
> Q. By Fish & Neave?
>
> A. By Fish & Neave.

(Ferraro Dep., at 203-204).

So, in the course of describing ISE's efforts to comply with CBOE's discovery requests, Mr. Ferraro testified that ISE hired a firm to conduct an infringement investigation, CBOE was one of the exchanges the investigation covered, and the analysis "describe[d], report[ed], evidence[d] or otherwise refer[red] or relate[d] to an act of CBOE which ISE regarded . . . as direct infringement, and/or active inducement of infringement of such claim." Although such testimony seems unremarkable and commonplace, CBOE argues that it resulted in a waiver of both the attorney client privilege and work product immunity as to the infringement analysis and all other attorney-client communications, opinions, materials, and portions of documents relating to the infringement of the

'707 Patent. It is a surprising position, and one that if accepted would have unfortunate consequences. *See* Richard Posner, Cardozo: A Study in Reputation, 118 (1990)("The soundness of a conclusion may not infrequently be tested by its consequences.").

## II.

## ANALYSIS

Of course, a party may waive the attorney-client or work/product privilege by revealing the confidential information the privilege was meant to protect. *In re Seagate Technology, LLC*, 497 F.3d 1360, 1372 (Fed.Cir. 2007).[1] The same goes for the work product immunity. *In re EchoStar Communications Corp.*, 448 F.3d 1294, 1301 (Fed.Cir. 2006). Such disclosure can be held to effect a "subject matter waiver," owing to the unfairness that would result if a party could selectively disclose information favorable to it while withholding damaging materials. *Seagate*, 497 F.3d at 1372; *EchoStar*, 448 F.3d at 1301. Ultimately, however, "[t]here is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures." *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349-50 (Fed. Cir. 2005). *Compare Schenck v. United States*, 249 U.S. 47 (1919)(Holmes, J.)("[T]he character of every act depends on the circumstances in which it is done."). But there was no waiver here, because nothing protected was disclosed.

---

[1] "Federal Circuit law applies when deciding whether particular written or other materials are discoverable in a patent case, if those materials relate to an issue of substantive patent law. . . . Questions of privilege and discoverability that arise from an assertion of the advice-of-counsel defense necessarily involve issues of substantive patent law." *In re EchoStar*, 448 F.3d 1294, 1298; *Truswal Systems Corp. v. Hydro-Air Engineering, Inc.*, 813 F.2d 1207, 1212 (Fed.Cir. 1987). But the analysis would differ little, if at all, if Seventh Circuit law applied.

There is a significant difference between indicating the fact or topic of a confidential communication with an attorney and revealing its content. The latter effects a waiver of the attorney-client privilege, while the former does not.

> Inquiry into the general nature of the legal services provided by counsel does not necessitate an assertion of the privilege because the general nature of services is not protected. Further inquiry into the substance of the client's and attorney's discussions does implicate the privilege and an assertion is required to preserve it.

*GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1273 (Fed.Cir. 2001); *see also United States v. O'Malley*, 786 F.2d 786, 794 (7th Cir. 1986)("... a client does not waive his attorney-client privilege '"merely by disclosing a subject which he had discussed with his attorney.'"). All Mr. Ferraro revealed here – and "revealed" is an exaggeration given its connotation – is that the firm ISE hired to conduct its infringement analysis did so and prepared a document that "describe[d], report[ed], evidence[d] or otherwise refer[red] or relate[d] to an act of CBOE which ISE regarded . . . as direct infringement, and/or active inducement of infringement of such claim." That's some rather mundane information, and it's hardly confidential. After all, a party had better conduct such an investigation before filing suit. *See* Fed.R.Civ.P. 11(b); *Hoffmann-La Roche Inc. v. Invamed Inc.*, 213 F.3d 1359, 1363 (Fed.Cir. 2000); *Judin v. United States*, 110 F.3d 780, 785 (Fed.Cir. 1997).

If CBOE's argument were accepted, it would mean that privilege logs and compliance with Fed.R.Civ.P. 26(b)(5) would operate as a waiver of the attorney client privilege. Rule 26(b)(5) demands that a party asserting the privilege as to a document "shall describe the nature of the ... communications ... in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the applicability of the privilege or protection." *See also Hobley v. Burge,* 433 F.3d 946, 947 (7th Cir.2006) ("An attorney asserting privilege must timely support that

claim with a "privilege log" which describes the nature of each document being withheld.").[2] None of the kinds of topical descriptions required in a privilege log would be held to waive the privilege, and the result cannot be different here simply because such superficial information was enunciated in deposition testimony in response to CBOE's questioning. As such, merely adverting to the nature of a communication, as Mr. Ferraro did here, cannot be held to amount to a revelation of the protected information that waives the attorney-client privilege or the work product doctrine. *See Murata Mfg. Co., Ltd. v. Bel Fuse, Inc.*, 2007 WL 781252, *3 (N.D.Ill. Mar. 8, 2007); *Zenith Electronics Corp. v. Exzec, Inc.*, 1997 WL 798908, *4 (N.D.Ill. Dec. 24, 1997)(mere restatements of an attorney's conclusion do not disclose a particular attorney-client communication and therefore does not constitute a waiver); *Rates Technology, Inc. v. Elcotel, Inc.*, 118 F.R.D. 133, 134-35 (M.D.Fla.1987)(same).

Moreover, the rule espoused by CBOE would have put an end to Mr. Ferraro's deposition before it started. Mr. Ferraro would have been unable to respond to the questions of CBOE's counsel. He would have had to refuse to describe ISE's efforts to comply with its discovery obligations. And CBOE would have been here with another type of motion to compel, and probably demanding sanctions under Fed.R.Civ.P. 37. As ISE complains in its response brief, CBOE's rule would put parties to the unenviable choice between demonstrating they have complied with discovery obligations in good faith and waiving their privilege, or maintaining their privilege and

---

[2] CBOE argues that Mr. Ferraro's testimony goes far beyond the type of information that might be revealed in a privilege log because he indicated that Fish & Neaves's study categorized exchanges into fully automated and partially automated, and that the CBOE fell into the partially automated category. But this is not confidential information. The patent covers automated trading, so the exchanges targeted would have to have had some degree of automation, whether partial or full.

subjecting themselves to motions seeking discovery sanctions. Weighing the circumstances as is required in these situations, *Fort James,* 412 F.3d at 1349-50, the unfairness of imposing on the parties and their counsel a choice between Scylla and Charybdis is as obvious as it is unacceptable.

## CONCLUSION

The plaintiff's motion to compel [# 90] is DENIED.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 8/8/08