UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO BOARD OPTIONS EXCHANGE, INCORPORATED,<br><br>            Plaintiff,<br><br>   v.<br><br>INTERNATIONAL SECURITIES EXCHANGE, LLC,<br><br>            Defendant. | Civil Action No. 07-cv-00623<br><br>Hon. Joan H. Lefkow, U.S.D.J.<br>Hon. Jeffrey Cole, U.S.M.J. |

**CHICAGO BOARD OPTIONS EXCHANGE, INCORPORATED'S MEMORANDUM IN SUPPORT OF ITS MOTION TO AMEND THE COMPLAINT**

# TABLE OF CONTENTS

                                                  **Page**

I. SUMMARY OF THE ARGUMENT AND PERTINENT FACTS ............................... 1

II. ARGUMENT ................................................................................................. 3

    A. CBOE's proposed amendments are not futile. ............................................. 4

        1. Mr. Katz's intentional failure to disclose to the PTO the Product Description is a basis for inequitable conduct. .................................... 5

            (a) The Product Description is material and non-cumulative prior art. ............. 5

            (b) Mr. Katz intentionally withheld the OM Product Description from the PTO with the intent to deceive the PTO. ........................... 6

        2. Mr. Katz's and Ms. Simmons' failure to disclose to the PTO their knowledge of the rules of other exchanges is a basis for inequitable conduct. ............................. 7

            (a) The rules of other exchanges are material and non-cumulative prior art. ......... 8

            (b) Ms. Simmons and Mr. Katz intentionally withheld rules of other exchanges from the PTO with intent to deceive the PTO. ............................ 8

    B. There is no undue prejudice, undue delay or bad faith. ................................. 9

        1. Amending the complaint will not unduly prejudice ISE. ........................ 10

        2. Amending the complaint will not unduly delay the proceedings ........... 10

        3. CBOE's motion to amend is not in bad faith. ......................................... 11

    C. CBOE has good cause to amend the complaint because it has been diligent in seeking an amendment. ............................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Baxter Int'l, Inc. v. McGraw, Inc.*,
  149 F.3d 1321 (Fed. Cir. 1998) ............................................................................... 5, 7

*Bruno Independent Living Aids, Inc. v. Acorn Mobility Servs., Ltd.*,
  394 F.3d 1348 (Fed. Cir. 2005) ............................................................................... 6, 9

*Civix-DDI, LLC v. Cellco Partnership*,
  387 F. Supp. 2d 869 (N.D.Ill. 2005)(St. Eve, J.) ........................................................ 6

*Connell v. KLn Steel Products Co.*,
  2006 WL 1120514 (N.D. Ill. April 25, 2006) ......................................................... 1, 3

*Connetics Corp. v. Pentech Pharmaceuticals, Inc.*,
  2009 WL 1089552 (N.D. Ill. April 16, 2009) ............................................................ 4

*Continental Leavitt Communications, Ltd. v. Painewebber, Inc.*,
  1994 WL 710745 (N.D. Ill. Dec. 20, 1994) ............................................................. 10

*Digital Control Inc. v. Charles Machine Works*,
  437 F.3d 1309, 1315-16 (Fed. Cir. 2006) .................................................................. 5

*Dippin' Dots, Inc. v. Mosey*,
  476 F.3d 1337 (Fed. Cir. 2007) ............................................................................... 6, 9

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
  575 F.3d 1312 (Fed. Cir. 2009) .................................................................................. 4

*FMC Corp. v. Hennessy Indust., Inc.*,
  836 F.2d 521 (Fed. Cir. 1987) .......................................................................... 4, 6, 8

*Foman v. Davis*,
  371 U.S. 178 (1962) ........................................................................................... 1, 2, 9

*GFI, Inc., v. Franklin Corp.*,
  265 F.3d 1268 (Fed. Cir. 2001) ..................................................................... 6, 7, 8, 9

*Heidelberg Harris, Inc. v. Mitsubishi Heavy Industries, Ltd.*,
  1996 WL 680243 (N.D. Ill. Nov. 21, 1996) ............................................................... 4

*Hess v. Gray*,
  85 F.R.D. 15 (N.D. Ill. 1979) ................................................................................... 10

# TABLE OF AUTHORITIES (cont'd)

Page(s)

*King v. Cooke,*
   26 F.3d 720 (7th Cir.1994) .................................................................................................10

*Krippelz v. Ford Motor Co.,*
   2003 WL 466109 (N.D.Ill. Feb. 24, 2003) ............................................................................4

*LaBounty Mfg., Inc, v. United States Int'l Trade Comm'n,*
   958 F.2d 1066 (Fed. Cir 1992) .............................................................................................9

*Merck & Co., Inc., v. Danbury Pharm., Inc.,*
   873 F.2d. 1418 (Fed. Cir. 1989) ...........................................................................................9

*OddzOn Prods., Inc. v. Just Toys, Inc.,*
   122 F.3d 1396 (Fed. Cir. 1997) ............................................................................................6

*Ripmax Ltd.v. Horizon Hobby, Inc.,*
   2009 WL 1329142 (C.D. Ill. May 11, 2009) ........................................................................7

*Semiconductor Energy Lab.,*
   204 F.3d 1368, 1374 (Fed. Cir. 2000) ..................................................................................6

*Thomas & Betts Corp. v. Panduit Corp.,*
   1999 WL 92894 (N.D. Ill. Feb 17, 1999) ............................................................................10

*Toth v. USX Corp.,*
   883 F.2d 1297 (7th Cir. 1989), *cert. denied* 493 U.S. 994 .................................................4

*Tragarz v. Keene Corporation,*
   980 F.2d 411, 431-32 (7th Cir.1992) ..................................................................................10

*Trustmark Ins. Co. v. General & Cologne Life Re of America,*
   424 F.3d 542 (7th Cir. 2005) ..............................................................................................11

*U.S. ex rel. Fowler v. Caremark RX, L.L.C.,*
   496 F.3d 730 (7th Cir. 2007) ................................................................................................4

*Vargas-Harrison v. Racine Unified School Dist.,*
   272 F.3d 964 (7th Cir. 1997) ................................................................................................4

### OTHER AUTHORITIES

37 C.F.R. § 1.56 ..............................................................................................................5, 6, 8

3 Moore's Federal Practice § 15.02 .....................................................................................3

# TABLE OF AUTHORITIES (cont'd)

Page(s)

Fed. R. Civ. P. 16(b) ...................................................................................................3, 11

Fed. R. Civ. P. 15(a) .......................................................................................................1, 3

Fed. R. Civ. P. 9(b) ............................................................................................................4

Fed. R. Civ. P. 12(b) ..........................................................................................................4

Fed. R. Civ. P. 42(b) ..........................................................................................................3

Pursuant to Federal Rule of Civil Procedure 15(a), plaintiff Chicago Board Options Exchange, Incorporated ("CBOE") hereby moves for leave to file a second amended complaint ("Second Amended Complaint").[1] In the Second Amended Complaint, as in its current pleading, CBOE maintains its request for declaratory judgment that U.S. Patent No. 6,618,707 ("the '707 patent") is invalid, not infringed and unenforceable due to International Stock Exchange, LLC's ("ISE") acts of inequitable conduct before the United States Patent and Trademark Office (the "PTO"). The present amendments specify ISE's acts of inequitable conduct that were recently uncovered in discovery and detailed to ISE in interrogatory responses and other correspondence.

Specifically, the named inventor, Gary Katz, as well as other persons involved in the preparation and/or prosecution of the application for the '707 patent, intentionally withheld and misrepresented in the proceedings before the PTO prior art which would have been pertinent to the PTO's examination of the application that resulted in the issuance of the '707 patent. At all relevant times, the named applicant and other persons having a duty of candor to the PTO were aware of their duty to disclose to the PTO information material to the patentability of the subject matter claimed in the application for the '707 patent.

A copy of the proposed Second Amended Complaint and a blacklined copy of the Second Amended Complaint noting the proposed changes are attached hereto as Exhibit A and Exhibit B, respectively.

I.   SUMMARY OF THE ARGUMENT AND PERTINENT FACTS

CBOE seeks to amend its pleading to set out particular facts and circumstances ascertained during discovery regarding ISE's inequitable conduct which, once proven, is case dispositive.

Amendments to the pleadings are permitted if the movant satisfies Rules 15 and 16 of the Federal Rules of Civil Procedure. *See Connell v. KLn Steel Products Co.*, 2006 WL 1120514 at *4 (N.D. Ill. April 25, 2006). Rule 15 provides that amendments to the pleadings are to be liberally granted but may be denied where there is a showing of futility, undue prejudice, undue delay, or bad faith (*see Foman v. Davis,* 371 U.S. 178, 182 (1962)) while Rule 16 simply

---

[1] CBOE has requested that ISE consent to entry of the Second Amended Complaint. By an October 28, 2009 e-mail, counsel for ISE declined to consent.

requires a showing of good cause. None of the *Foman* factors militate against the entry of the amendment and there is good cause for this amendment.

CBOE's amendments are not futile. Through discovery, CBOE has learned that Gary Katz, the named inventor, derived his invention from prior art that he never disclosed to the PTO. Among other things, Mr. Katz has testified on deposition that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Moreover, Katherine Simmons, an attorney involved in preparing and prosecuting the application for the '707 patent, has testified that both she and Mr. Katz were aware that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*e.g.*, public customer priority and size-based allocation). None of this prior art was disclosed to the PTO. All of this prior art is material and non-cumulative to that which was before the patent examiner. ISE has offered no innocent explanation for its failure to make disclosure. Under Federal Circuit precedent, the circumstances surrounding the intentional withholding of these prior art references allow the Court to infer the requisite deceptive intent. Far from futile, the defense particularized in CBOE's amendments reflect facts that will likely result in the prompt disposal of this case, allowing the Court and the parties to avoid the time and cost of a jury trial on liability.

No undue prejudice will result from the amendment. CBOE does not need additional discovery. CBOE does not need to postpone the trial date; to the contrary, CBOE is ready to try this issue at the Court's early convenience. Moreover, had ISE perceived any undue prejudice, it should have opposed CBOE's motion for a prior trial on these very issues. It did not. ISE cannot now credibly argue that it did not realize that these issues were part of the case.

There has been no undue delay. ISE's inequitable conduct has long been an issue in this case. CBOE now simply seeks to conform the pleadings to the evidence of record. After pleading inequitable conduct in its Amended Complaint of May 11, 2007,[2] CBOE gathered facts relating to that defense throughout two and a half years of discovery. Mindful of its continuing duty to supplement disclosures, CBOE repeatedly amended and updated its responses to ISE's interrogatories that related to inequitable conduct.[3] Many of the most significant facts described

---

[2] *See* D.I. 37, paragraph 40.

[3] ISE's interrogatory 2 relates to inequitable conduct. It states: "[i]f you contend that one or more claims of the ISE Patent-in-Suit is . . . unenforceable, then for each such claim please explain that contention."

2

in CBOE's Second Amended Complaint were adduced during the June 22-23, 2009 deposition of Gary Katz and, to a somewhat lesser extent, during the April 6, 2009 deposition of Katherine Simmons, an ISE attorney, and during the May 22, 2009 deposition of Stephen Lieb, the prosecuting attorney for the '707 patent. Moreover, on September 16, 2009, CBOE filed a motion for a prior and separate nonjury trial on inequitable conduct that was based on the very allegations that are the subject of the present amendment.[4] The Second Amended Complaint reflects CBOE's painstaking development of the relevant facts and promptly follows repeated notice to IES in corresponding discovery responses.

CBOE brings this motion in good faith and ISE cannot point to any evidence of bad faith.

CBOE has good cause for this amendment as demonstrated by the evidence and substantial proofs identified herein.

## II. ARGUMENT

CBOE's motion to amend should be granted because it complies with the liberal amendment standards of Fed. R. Civ. P. 15 (*see Connell,* 2006 WL 1120514 at *4) and satisfies the "good cause" requirement of Fed. R. Civ. P. 16(b).

Under Rule 15(a), a party may amend a pleading with the court's leave which should be "freely give[n]" "when justice so requires." Fed. R. Civ. P. 15(a). "The policy in favor of allowing amendments is extremely liberal." 3 James Wm. Moore et al., Moore's Federal Practice § 15.14 (3d ed. 1999) (herein after "Moore's Federal Practice). "Rule [15] allows for liberal amendment in the interests of resolving cases on the merits. . . Courts should allow amendments liberally when justice requires and in the absence of an apparent or declared reason to deny leave." 3 Moore's Federal Practice § 15.02. This liberal policy supports the notice function of complaints. "The Complaint merely serves to put the defendant on notice and is to be freely amended or constructively amended as case develops, as long as amendments do not unfairly surprise or prejudice defendant." *Toth v. USX Corp.*, 883 F.2d 1297, 1298 (7th Cir. 1989), *cert. denied* 493 U.S. 994.

---

CBOE initially responded to this interrogatory on March 2, 2007, and supplemented this response on May 11, 2009, June 19, 2009, August 4, 2009 and October 5, 2009.

[4] *See* D.I. 182, CBOE's memorandum in support of its motion under Rule 42(b) for a nonjury trial on the issue of inequitable conduct prior to a jury trial on the issues of validity, infringement and damages.

### A. CBOE's proposed amendments are not futile.

"Amending a complaint would be futile if the proposed amended complaint fails to satisfy the requirements of the federal rules." *U.S. ex rel. Fowler v. Caremark RX, L.L.C.*, 496 F.3d 730, 740 (7th Cir. 2007). Courts differ as to which federal rules they apply in a futility analysis. Some courts analyze whether the pleadings as amended would survive a motion for summary judgment. *See Heidelberg Harris, Inc. v. Mitsubishi Heavy Industries, Ltd.*, 1996 WL 680243 (N.D. Ill. Nov. 21, 1996). Other courts have considered whether the amended pleadings would survive a motion to dismiss. *See Vargas-Harrison v. Racine Unified School Dist.*, 272 F.3d 964, 974-75 (7th Cir. 1997); *see also Connetics Corp. v. Pentech Pharmaceuticals, Inc.*, 2009 WL 1089552, at *5-6 (N.D. Ill. April 16, 2009) (new claim of inequitable conduct not futile because it could withstand a motion to dismiss); *see also Krippelz v. Ford Motor Co.*, 2003 WL 466109, at *5 (N.D.Ill. Feb. 24, 2003).

CBOE's proposed amendment is sufficiently well-grounded to survive either a motion to dismiss or a motion for summary judgment. CBOE's proposed amendment can survive summary judgment because it is abundantly supported by the record which establishes inequitable conduct principally by reason of (i) Mr. Katz's failure to disclose to the PTO the "The OM CLICK Exchange Software Product Description" dated September 1996 ("the Product Description") which the starting point for and the basis of his invention and (ii) Mr. Katz's and Ms. Simmons' failure to disclose to the PTO their knowledge of the rules of other exchanges which are elements of the claims of the '707 patent. It is of no import that this Court has yet to construe the claims because for purposes of inequitable conduct, the relevant construction is the one that the PTO requires the examiners to use: the "*broadest* reasonable interpretation in light of the specification." *See FMC Corp. v. Hennessy Indust., Inc.*, 836 F.2d 521, 526 (Fed. Cir. 1987) (emphasis added).

CBOE's amended pleadings also can withstand a motion to dismiss under Rule 12(b) because the allegations are pled with the particularity required by Rule 9(b). *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328-9 (Fed. Cir. 2009). *Exergen* requires that inequitable conduct be pled by identifying the "who, what, when, where, and how of the material misrepresentation or omission committed before the PTO" as well as "sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2)

withheld or misrepresented this information with a specific intent to deceive the PTO." CBOE's amended pleadings exceed this standard.

### 1. Mr. Katz's intentional failure to disclose to the PTO the Product Description is a basis for inequitable conduct.

Some of the most salient evidence of ISE's inequitable conduct relates to Mr. Katz's knowledge of the Product Description which discloses in detail the automated exchange that was commercially available in the United States from OM, a Swedish company.[5] Little more than two weeks after receiving the Product Description in May 1997, Mr. Katz studied it and prepared a list of modifications to it entitled "Functional Specification for Electronic Trading" which he sent to OM. ISE relies on that list of modifications as proof of conception of at least claims 1 and 35 of the '707 patent. Nevertheless, Mr. Katz failed to disclose the OM Product Description to the PTO – or even to his own patent attorney who had advised him of his duty of candor to the PTO and his obligation to cite relevant prior art.

#### (a) The Product Description is material and non-cumulative prior art.

There can be no reasonable dispute that the Product Description is material.[6] Information that a patent applicant uses to form the basis for his claimed invention is material. *See Baxter Int'l, Inc. v. McGraw, Inc.,* 149 F.3d 1321, 1329-30 (Fed. Cir. 1998) (finding art highly material that "formed the basis" for the claimed invention). Mr. Katz used the Product Description as the ███████████████████. Furthermore, he recognized that the Product Description ███████████████████████████████.[7] Because the examiner never issued a

---

[5] For the sake of brevity, CBOE omits citations for the facts in this section that are presented and thoroughly cited throughout its memorandum in support of its motion for a prior and separate nonjury trial on inequitable conduct. D.I. 182. CBOE incorporates by reference this memorandum and all of the materials cited therein.

[6] Information is material "where there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent" or if it meets the requirements of 37 C.F.R. § 1.56 (2007). *Digital Control Inc. v. Charles Machine Works,* 437 F.3d 1309, 1315-16 (Fed. Cir. 2006). Under 37 C.F.R. § 1.56, information is "material" if it "refutes, or is inconsistent with, a position the applicant takes in: (i) Opposing an argument of unpatentability relied on by the Office, or (ii) Asserting an argument of patentability."

[7] ███████████████████████████████████████████████████████████████████

5

rejection based on anticipation under § 102 during prosecution of the '707 patent, but could have if the Product Description had been made of record, it is material and non-cumulative. *See, e.g.*, *Semiconductor Energy Lab.*, 204 F.3d 1368, 1374 (Fed. Cir. 2000) ("A withheld reference may be highly material when it discloses a more complete combination of relevant features, even if those features are before the patent examiner in other references."); *see also GFI, Inc., v. Franklin Corp.*, 265 F.3d 1268, 1274 (Fed. Cir. 2001).

Materiality is firmly established by the testimony of Mr. Katz who admitted that arguments made by his patent attorney to distinguish prior art cited by the examiner ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌. Because the September 1996 Product Description admittedly "refutes, or is inconsistent with, a position" the applicant took in "opposing an argument of unpatentability relied on by the Office" *and* "asserting an argument of patentability," it is presumptively material. *See* 37 C.F.R. § 1.56.

**(b)** **Mr. Katz intentionally withheld the OM Product Description from the PTO with the intent to deceive the PTO.**

"'Smoking gun' evidence is not required in order to establish an intent to deceive." *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1345 (Fed. Cir. 2007). Absent a credible explanation, "intent to deceive is generally inferred from the facts and circumstances surrounding a knowing failure to disclose material information." *Bruno Independent Living Aids*, *Inc. v. Acorn Mobility Servs., Ltd.*, 394 F.3d 1348, 1354 (Fed. Cir. 2005); *Civix-DDI, LLC v. Cellco Partnership*, 387 F. Supp. 2d 869, 905 (N.D.Ill. 2005)(St. Eve, J.).

Where, as here, the withheld information is of the sort that the patent examiner has no way of obtaining on his own, deceptive intent can be inferred. *See Dippin' Dots*, 476 F.3d at 1346. The Product Description is not the type of document that patent examiners have access to in their databases. Moreover, because the Product Description qualifies as prior art under § 102(f), the examiner would have needed to know whether Mr. Katz had actual knowledge of it before he could have used it to reject the claims. *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1403 (Fed. Cir. 1997) (information is prior art under § 102(f) to the party who received it before conception). But the examiner had no chance to learn any of this because the applicant did not fulfill his duty of candor. Since (1) the examiner was completely dependent on

---

▌▌. This is particularly so given that the proper claim construction for purposes of inequitable conduct is the broadest reasonable interpretation in light of the specification. *See FMC Corp.*, 836 F.2d at 526.

6

the applicant to disclose the Product Description (as well the applicant's actual knowledge of it) and (2) the reference is highly material, deceptive intent can be inferred.

Moreover, where, as here, the withheld prior art "formed the basis of the claimed inventions," a culpable state of mind is to be inferred. *See, e.g., Baxter Int'l*, 149 F.3d at 1329-30; *Ripmax Ltd.v. Horizon Hobby, Inc.*, 2009 WL 1329142 at *11 (C.D. Ill. May 11, 2009) (McCuskey, C.J.) (*citing Baxter* as an instance where there "was strong evidence of intentional, misleading conduct" because it "was clear that the device not disclosed to the PTO formed the basis of the claimed inventions and that the inventors were clearly acquainted with the critical features of the undisclosed device"). Here, Mr. Katz has admitted basing his invention ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮. This is confirmed by ISE's admission that Mr. Katz's conception document is a list of modifications to OM's CLICK Exchange software.

Deceptive intent has also been inferred where, as here, an applicant withholds material information and makes an argument for patentability that could not have been made had the information been disclosed. *See*, *e.g.*, *GFI*, 265 F.3d at 1275. Again, Mr. Katz has admitted that arguments by his patent attorney to distinguish prior art (in attempts to overcome rejections) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

### 2. Mr. Katz's and Ms. Simmons' failure to disclose to the PTO their knowledge of the rules of other exchanges is a basis for inequitable conduct.

Katherine Simmons, an attorney for ISE, admitted that in preparing the application for the '707 patent, she and Mr. Katz reviewed the trading rules of numerous existing exchanges, including those of ▮▮▮▮▮. More importantly, Mr. Katz and Ms. Simmons knew of prior art related to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, all significant claim limitations in the application for the '707 patent, but failed to disclose such art to the patent examiner. Mr. Katz admitted that he did not invent the concept of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, that he knew other exchanges had practiced ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ at the time he filed his patent application and that, prior to his conception, options exchanges had ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ by exchange rule.

Similarly, Ms. Simmons admitted that customer priority not only existed before Katz's conception date, but also has been widely implemented at other exchanges. The record tells a similar story with respect to size-based allocation and pro rata allocation: Ms. Simmons and Mr.

7

Katz both knew that it too existed before Mr. Katz conceived his invention, yet failed to disclose it to the PTO. For example, Ms. Simmons has admitted to reviewing the rules of other exchanges, including ████, that implemented pro rata allocation in combination with ████ ██████████. Despite having been informed of their duty of candor, neither Ms. Simmons nor Mr. Katz disclosed any of this information to the PTO.

### (a) The rules of other exchanges are material and non-cumulative prior art.

The withheld information concerning the rules of other exchanges is material because it discloses that, prior to the conception of the '707 patent, (1) public customer priority and pro-rata allocation were well-known and in public use by exchanges in the United States and (2) that the features of public customer priority and pro rata allocation had been used together at least at CBOE. This information is relevant to at least issued claims 1, 35, 36 and (given its broadest reasonable interpretation) claim 2.[8] *None* of the art of record in the '707 patent discloses pro rata allocation *or* customer priority (let alone the combination of both as claimed); therefore, this information cannot be cumulative. *See GFI,* 265 F.3d at 1274.

The withheld information is material also because it refutes or is inconsistent with a position the applicant took in opposing an argument of unpatentability relied on by the PTO. *See* 37 C.F.R. § 1.56. In an amendment to the application for the '707 patent, the applicant distinguished the prior art for its failure to disclose a size-based allocation and public customer priority. Ms. Simmons and Mr. Katz knew that other exchanges had these features both alone and together, and therefore the applicant could not have made this argument if this information had been of record.

### (b) Ms. Simmons and Mr. Katz intentionally withheld rules of other exchanges from the PTO with intent to deceive the PTO.

Deceptive intent can be inferred from the facts and circumstances surrounding Mr. Katz's and Ms. Simmons' withholding of information concerning the operations of other exchanges in

---

[8] As the Court is aware, the parties dispute what is meant by "matching on a pro rata basis" in claim 2. However, given ISE's position that this means no more than "*allocating* on a pro rata basis," CBOE submits that ISE's construction should be encompassed within the broadest reasonable interpretation of the claim for purposes of inequitable conduct. *See FMC Corp.*, 836 F.2d at 526 ("for inequitable conduct purposes 'claims are given their broadest reasonable interpretation in light of the specification'").

8

the United States. There can be no reasonable dispute that this information was intentionally withheld: both Ms. Simmons and Mr. Katz have admitted that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ but have offered no explanation for why it was not disclosed.

In particular, deceptive intent can be inferred where, as here, the applicant disclosed material information to one government agency, but withheld it from the PTO. *E.g., Bruno Independent Living Aids*, 394 F.3d at 1352, 1354 ("The fact that an official … chose to disclose [the material reference] to the FDA, but not to the PTO, certainly supports a finding of deceptive intent to withhold the disclosure from the PTO."). To hasten approval of the new ISE exchange, Ms. Simmons was involved in representing to the SEC that ISE's exchange would have rules similar to then-existing exchanges, but none of the rules of those exchanges were ever disclosed to the PTO. Ms. Simmons's disclosing information to the SEC but withholding that information from the PTO raises a strong inference of deceptive intent. *See Merck & Co., Inc., v. Danbury Pharm., Inc.,* 873 F.2d. 1418, 1420-22 (Fed. Cir. 1989).

As noted earlier, deceptive intent can also be inferred where, as here, the withheld information is of the sort that the patent examiner has no way of obtaining on his own. *See Dippin' Dots*, 476 F.3d at 1346. The rules of existing financial exchanges are not the type of information that the patent examiners have access to in their databases. Because (1) the examiner was completely dependent on the applicant to disclose the rules of other exchanges and (2) the withheld information is highly material, deceptive intent can and should be inferred here.

Finally, deceptive intent can be inferred where, as here, an applicant withholds material information and makes an argument for patentability that could not have been made had the information been disclosed. *See GFI*, 265 F.3d at 1275; *LaBounty Mfg.*, *Inc, v. United States Int'l Trade Comm'n,* 958 F.2d 1066, 1076 (Fed. Cir 1992). Had Ms. Simmons or Mr. Katz disclosed the information about other exchanges to the PTO, the prior art could not have been distinguished on the basis of size-based allocation or customer priority.

B.     **There is no undue prejudice, undue delay or bad faith.**

Leave to amend should be freely granted in the absence of undue prejudice, undue delay, or bad faith. *Foman*, 371 U.S. at 182. This amendment satisfies the *Foman* factors.

### 1. Amending the complaint will not unduly prejudice ISE.

In determining whether leave to amend will result in undue prejudice, the "trial court, in exercising its discretion, must balance the general policy behind Rule 15 (that controversies be decided on the merits) against the prejudice that might result from amendment." *Hess v. Gray*, 85 F.R.D. 15, 20 (N.D. Ill. 1979). ISE will not be unduly prejudiced. *See King v. Cooke,* 26 F.3d 720, 724 (7th Cir.1994).

CBOE pled inequitable conduct more than two years before discovery closed. ISE was well aware of CBOE's allegation and had ample time to conduct discovery. Since its initial pleadings, CBOE supplemented its interrogatory responses four times and clearly explained its position regarding inequitable conduct in its motion for a nonjury trial, a motion which ISE did not oppose. ISE's counsel represented all of their witnesses at their respective depositions without objecting to CBOE's line of inquiry. Moreover, by serving an expert report that purports to rebut the allegations in the Second Amended Complaint, ISE essentially admits that it had full knowledge of CBOE's defense of inequitable conduct particularized in the proposed amended pleading.

### 2. Amending the complaint will not unduly delay the proceedings.

"Whether a delay is undue is determined by the circumstances, not simply by the length of time at issue. . . Generally, undue delay occurs when a motion to amend would 'transform' or prolong the litigation unnecessarily." *Thomas & Betts Corp. v. Panduit Corp.*, 1999 WL 92894, *3 (N.D. Ill. Feb 17, 1999). "[A] delay is undue only if it causes prejudice to the opposing party." *Continental Leavitt Communications, Ltd. v. Painewebber, Inc.*, 1994 WL 710745, at *2 (N.D. Ill. Dec. 20, 1994) (*citing Tragarz v. Keene Corporation,* 980 F.2d 411, 431-32 (7th Cir.1992)).

CBOE's amendment will not delay this litigation. CBOE does not need additional fact discovery and does not need to postpone the trial date. To the contrary, CBOE is ready to try this issue at the Court's early convenience. All of the facts relevant to ISE's inequitable conduct have been available to ISE at least since the '707 patent issued. Accordingly, amending the pleadings to conform to the evidence of record will not produce *any* delay, let alone an undue delay.

### 3. CBOE's motion to amend is not in bad faith.

CBOE brings its motion to amend the complaint to conform the pleadings to the evidence now of record in this case. CBOE has clearly articulated the particularization of its inequitable conduct defense in its earlier discovery responses and in its memorandum in support of a motion for a prior and separate nonjury trial on inequitable conduct. These same particulars are the subjects of the allegations in the proposed amended complaint. ISE cannot point to any evidence of bad faith.

### C. CBOE has good cause to amend the complaint because it has been diligent in seeking an amendment.

Good cause under Rule 16(b) is shown largely through the diligence of the party seeking amendment. *Trustmark Ins. Co. v. General & Cologne Life Re of America*, 424 F.3d 542, 553 (7th Cir. 2005). CBOE has diligently sought amendment to its complaint and has identified clear and convincing evidence of ISE's inequitable conduct.

## CONCLUSION

CBOE asserted the defense of inequitable conduct more than two years before the close of fact discovery. CBOE then diligently conducted discovery and repeatedly updated its interrogatory responses. The amendment CBOE seeks can come as no surprise to ISE. For these reasons and the reasons set forth above, it is respectfully requested that the Court enter the proposed Second Amended Complaint annexed hereto as Exhibit A.

Dated: November 4, 2009

By: s/ Jonathan A. Marshall
Jonathan A. Marshall
David Francescani
Michael T. Zoppo
Brian J. Doyle
**FISH & RICHARDSON P.C.**
601 Lexington Ave, 52nd Floor
New York, NY 10022
Telephone: (212) 765-5070
Facsimile: (212) 258-2291

*Attorneys for Plaintiff Chicago Board Options Exchange, Incorporated*

11

OF COUNSEL:
Paul E. Dengel
Stacie R. Hartman
Mark E. Ashton
**SCHIFF HARDIN LLP**
660 Sears Tower
233 South Wacker Drive
Chicago, IL 60606-6473
Telephone (312) 258-5500
Facsimile (312) 258-5600

Joanne Moffic-Silver
Jordan Newmark
**CHICAGO BOARD OPTIONS EXCHANGE, INCORPORATED**
400S. LaSalle Street
Chicago, IL 60605
Telephone: (312) 786-7909

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies pursuant to Fed.R.Civ.P. 5 and L.R. 5.5 that a true and correct copy of the foregoing document was filed on November 4, 2009 with the Clerk of the Court using the CM/ECF system, which will send notice to counsel of record

                                                s/ Neil Ramsaroop
                                                    Neil Ramsaroop

on November 4, 2009.