**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHICAGO BOARD OPTIONS EXCHANGE, INCORPORATED,<br><br>Plaintiff,<br><br>v.<br><br>INTERNATIONAL SECURITIES EXCHANGE, LLC,<br><br>Defendant. | Case No. 07-cv-00623<br><br>Hon. Joan H. Lefkow, U.S.D.J.<br>Hon. Jeffrey Cole, U.S.M.J. |

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHICAGO BOARD OPTIONS EXCHANGE, INCORPORATED,<br><br>Plaintiff,<br><br>v.<br><br>INTERNATIONAL SECURITIES EXCHANGE, LLC,<br><br>Defendant. | Civil Action No. 07-cv-00623<br><br>Hon. Joan H. Lefkow, U.S.D.J.<br>Hon. Jeffrey Cole, U.S.M.J. |

## SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Chicago Board Options Exchange, Incorporated ("CBOE"), for its Second Amended Complaint, alleges:

## THE PARTIES

1. Plaintiff CBOE is a Delaware corporation having its principal place of business at 400 South LaSalle Street, Chicago, Illinois 60605.

2. Defendant, International Securities Exchange, LLC ("ISE"), is a Delaware corporation having its principal place of business at 60 Broad Street, New York, New York 10004.

## JURISDICTION AND VENUE

3. This action arises under the Patent Laws of the United States, Title 35, United States Code, Section 1 et seq., and is for a declaratory judgment that United States ~~Patents Nos. 6,377,940 (the "'940 patent"); 6,405,180 (the "'180 patent"); and~~Patent No. 6,618,707 (the "'707 patent") ~~(collectively, the "ISE patents") are~~is not infringed and/or not valid and/or not enforceable against plaintiff.

4. This court has jurisdiction of the subject matter hereof under the provisions of Title 28, United States Code, Sections 1338(a), 2201 and 2202.

5. Venue in this judicial district is proper under Title 28, United States Code, 1391(b) and 1391(c) in that a substantial part of the property that is the subject of this action is situated in this judicial district.

**~~FACTS COMMON TO ALL CLAIMS~~**

**CLAIM FOR RELIEF**

6. CBOE operates a national securities exchange based in Chicago, Illinois that specializes in the trading of standardized securities options. Among other things, CBOE operates a trading floor in Chicago and maintains and operates a trading system (the "Hybrid System") in Chicago through which members can buy and sell options for their own account, for their employer's account, and for their customers. CBOE's Hybrid System provides members with the ability to trade options electronically and through an open outcry auction on its exchange.

7. ISE operates an all-electronic securities exchange that offers trading in securities options.

8. On November 22, 2006, ISE, by its counsel, sent to CBOE a letter entitled "Notice of Infringement of U.S. Patent No. 6,618,707," a copy of which is annexed hereto as Exhibit A.

9. In the November 22, 2006 letter, ISE informed CBOE that it owned the '~~940 patent, the '180 patent, and the '~~707 patent, ~~copies~~a copy of which ~~are~~is annexed hereto as ~~Exhibits B, C and D, respectively~~Exhibit B.

10. Also in the November 22, 2006 letter, ISE informed CBOE that it believed the CBOE Hybrid System infringed the '707 patent; that it had that day filed an action for infringement of the '707 patent in the United States District Court for the Southern District of

New York; and that it might be willing to license CBOE under the '707 patent~~, as well as the '940 patent and the '180 patent.~~

~~11. The filing by ISE of a patent infringement action in New York based on the '707 patent, the invitation to discuss licensing of the '940 patent and the '180 patent, and the then-existing and continuing adversarial relationship between ISE and CBOE which includes at least two active litigations, all taken together, raise a reasonable apprehension by CBOE of litigation with respect to the '940 patent and the '180 patent~~.

11. ~~12.~~ The November 22, 2006 letter referred to in Paragraphs 8, 9 and 10 hereof (Exhibit A) represents the first communication between the parties hereto regarding the '~~940 patent, the '180~~707 patent~~, or the '707 patent~~.

## ~~FIRST CLAIM FOR RELIEF~~

~~13. Plaintiff CBOE repeats and realleges each and every allegation contained~~

12. By reason of the facts set forth in Paragraphs ~~1~~6 through ~~12,~~11, inclusive, hereof~~ as though fully set forth herein.~~

~~14. By reason of the facts set forth in Paragraphs 6 through 12, inclusive, hereof~~, a conflict of asserted rights has arisen between the parties and an actual controversy exists between plaintiff CBOE and defendant ISE with respect to the infringement, validity, scope and~~/or~~ enforceability of the '~~940~~707 patent, in that plaintiff claims the right to use its Hybrid System without further interference from defendant and ~~without~~free from any and all charges of infringement against it.

~~15. The '940 patent and each claim of such patent is, on information and belief, not infringed, and/or not valid and/or not enforceable against plaintiff under one or more of the provisions of Title 35, United States Code, Sections 101, 102, 103 or 112.~~

**~~SECOND CLAIM FOR RELIEF~~**

~~16. Plaintiff CBOE repeats and realleges each and every allegation contained in Paragraphs 1 through 12, inclusive, hereof as though fully set forth herein.~~

~~17. By reason of the facts set forth in Paragraphs 6 through 12, inclusive, hereof, a conflict of asserted rights has arisen between the parties and an actual controversy exists between plaintiff CBOE and defendant ISE with respect to the infringement, validity, scope and/or enforceability of the '180 patent, in that plaintiff claims the right to use its Hybrid System without further interference from defendant and any and all charges of infringement against it.~~

~~18. The '180 patent and each claim of such patent is, on information and belief, not infringed, and/or not valid and/or not enforceable against plaintiff under one or more of the provisions of Title 35, United States Code, Sections 101, 102, 103, or 112.~~

**~~THIRD CLAIM FOR RELIEF~~**

~~19. Plaintiff CBOE repeats and realleges each and every allegation contained in Paragraphs 1 through 12, inclusive, hereof as though fully set forth herein.~~

~~20. By reason of the facts set forth in Paragraphs 6 through 12, inclusive, hereof, a conflict of asserted rights has arisen between the parties and an actual controversy exists between plaintiff CBOE and defendant ISE with respect to the infringement, validity, scope and enforceability of the '707 patent, in that plaintiff claims the right to use its Hybrid System without further interference from defendant and any and all charges of infringement against it.~~

13. ~~21.~~ The '707 patent and each claim of such patent is, on information and belief, not infringed, and/or not valid and/or not enforceable against plaintiff under one or more of the provisions of Title 35, United States Code, Sections 101, 102, 103, or 112.

14. ~~22.~~ The '707 patent is further unenforceable by reason of inequitable conduct because, on information and belief, the applicant for such patent and/or his authorized representative and/or other persons associated with the preparation, filing and/or prosecution of Provisional Application No. 60/~~106935~~106,935 and/or Application No. 09/~~433,613 (the "application for the '707 patent"),~~433,613, all of whom had the duty to disclose to the United States Patent and Trademark Office (the "PTO") information material to the patentability of the subject matter claimed in the application for the '707 patent, willfully and knowingly withheld and misrepresented in the proceedings before the PTO, knowledge and information relating to material prior art which would have been pertinent to the examination and evaluation conducted by the PTO that resulted in the issuance of the '707 patent.

15. ~~23. On information and belief, the~~The applicant for the '707 patent, his authorized representatives, and other persons associated with the preparation~~ and/or~~, filing and/or prosecution before the PTO of the application for the '707 patent (collectively, "the applicant") were aware at all relevant times of their duty to cite material ~~prior art references~~information to the PTO during the prosecution of the application for the '707 patent. Despite this awareness, the applicant, with an intent to deceive the PTO, concealed from and/or misrepresented to the PTO material information during the prosecution of the application for the '707 patent as set forth in Paragraphs 17 through 47 hereof.

16. ~~24.~~ The knowing and willful concealment and/or misrepresentation of material information during the prosecution of the application for the '707 patent before the PTO, referred to in Paragraphs ~~16 and~~ 17 through 47 hereof, renders the '707 patent unenforceable ~~against plaintiff CBOE~~ by reason of inequitable conduct.

17. OM Stockholm AB ("OMX") is a Swedish company that developed and commercialized an automated options exchange at least as early as 1990.

18. OMX developed the first such automated options exchange for use in its own options exchange in Stockholm, Sweden. By at least as early as 1996, OMX had begun licensing to third party customers its software system for implementing automated options exchanges. The OMX software system was known commercially as the "OM Click Exchange System."

19. By 1996, automated options exchanges running OM Click software were in operation in several countries including Austria, England, Hong Kong and Italy.

20. A 100- plus page document entitled "The OM CLICK Exchange Software Product Description" (the "OM Product Description") dated September 1996 was authored by OMX and distributed to potential customers. The OM Product Description is a description of the OM CLICK Exchange System and its subsystems that describes the automated financial exchange of the OM CLICK Exchange System and its functionality as it then existed.

21. On or about May 13, 1997, the head of technology sales at OMX, while in the United States, provided a copy of the OM Product Description to Gary Katz, the sole named inventor of the '707 patent in suit. Mr. Katz used the OM Product Description as the starting point for and the basis of the automated financial exchange disclosed and claimed in the '707 patent.

22. By no later than May 21, 1997, Mr. Katz had reviewed the OM Product Description, and had prepared and sent to OMX a two-page list of questions and comments about the automated financial exchange disclosed in the OM Product Description.

23. By no later than May 30, 1997, Mr. Katz had prepared and sent to OMX a fourteen-page document entitled "Functional Specification for Electronic Trading" which is relied upon by

ISE in this action as establishing May 30, 1997 as the date of conception of the subject matter claimed in at least claims 1 and 35 of the '707 patent in suit.

24. The OM Product Description is prior art to the subject matter of the claims of the '707 patent at least under 35 U.S.C. §102(f). It was the OM Product Description from which Mr. Katz derived the automated financial exchange disclosed and claimed in the '707 patent.

25. ~~A printed publication of the United States Securities and Exchange Commission ("SEC") entitled "A Monitoring Report on the Operation of the Cincinnati Stock Exchange National Securities Trading System" (the "1981 SEC Report") was published in or about May 1981. The 1981 SEC Report, which is a prior art reference to the claims of the '707 patent under 35 U.S.C. § 102, is attached to this Amended Complaint as Exhibit E.~~The OM Product Description is material to the claimed subject matter of the '707 patent. This is demonstrated by the following evidence adduced during discovery in this case, inter alia, through the admissions of Mr. Katz during his June 2009 deposition:

~~26. A printed publication of the SEC entitled "A Report on the Operation of the Cincinnati Stock Exchange National Securities Trading System 1978-1981 (the "1982 SEC Report") was published in or about May 1981. A copy of the 1982 SEC Report, which is prior art with respect to the claims of the '707 patent under 35 U.S.C. § 102, is attached to this Amended Complaint as Exhibit F.~~

~~27. A printed publication of the SEC, SEC Release No. 22330, entitled "Self-Regulatory Organization: Proposed Rule Change by the Cincinnati Stock Exchange (CSE) Relating to Small Order Execution Guarantee" (the "1985 SEC Release") was published in the Federal Register on or about August 15, 1985. A copy of the 1985 SEC Release, which is prior~~

art to the claims of the '707 patent under 35 U.S.C. § 102, is attached to this Amended Complaint as Exhibit G.

28. A printed publication of the SEC Release No. 34-25995, entitled "Self-Regulatory Organizations; Chicago Board Options Exchange, Inc.; Order Approving Proposed Rule Changes Relating to the Retail Automatic Execution System ("RAES")," (the "1988 SEC Release"), was published on or about August 19, 1988. A copy of the 1988 SEC Release, which is prior art to the claims of the '707 patent under 35 U.S.C. § 102, is attached to this Amended Complaint as Exhibit H.

29. A printed publication of the Chicago Board of Trade entitled "Impressive Project A® Provides Extended Opportunity in CBOT Financial Complex" (the "1995 CBOT Project A Article") was published in or about January 1995. A copy of the 1995 CBOT Project A Article, which is prior art to the claims of the '707 patent under 35 U.S.C. § 102, is attached to this Amended Complaint as Exhibit I.

30. The 1981 SEC Report, the 1982 SEC Report, and the 1985 SEC Release, referred to respectively in Paragraphs 19, 20, 21, and 22 hereof, each disclose an automated exchange for trading a financial instrument and a process for trading a financial instrument on an automated exchange wherein priority is determined first by price and, with respect to orders at the same price, by time of entry. Public customer orders have priority over other orders at the same price, regardless of time of entry.

31. The 1995 CBOT Project A Article referred to in Paragraph 23 hereof, discloses an automated exchange for trading a financial instrument and a process for trading a financial instrument on an automated exchange wherein priority is determined first by price and, with respect to orders at the same price, by time of entry. Non-priority orders are then matched by

~~"quantity allocation, based on the percentage of the total quantity of orders at that price," which rewards orders having a larger size.~~

~~32. The 1981 SEC Report, the 1982 SEC Report, the 1985 SEC Release, the 1988 SEC Release, and the CBOT Project A Article are all material to the patentability of at least claims 1 and 35 of the '707 patent under 37 C.F.R. § 1.56 ("Rule 56") and the applicable decisions of the United States Court of Appeals for the Federal Circuit.~~

~~33. Claims 1 and 35 of the '707 patent are the only claims currently being asserted by defendant against plaintiff CBOE.~~

- Claim 1 of the November 1999 application for the '707 patent (the "November 1999 application") as filed, was unpatentable as fully anticipated under 35 U.S.C. §102 by the OM Product Description. Moreover, the inventor's declaration signed by Mr. Katz is false because Mr. Katz did not himself invent the claimed subject matter.

- During the course of the prosecution of the November 1999 application, representations and arguments were made by the applicant to the examiner regarding certain deficiencies in the prior art of record. The purpose of such representations was to obtain allowance of at least claims 1 and 35 by distinguishing the subject matter of such claims from the disclosures in the prior art of record. Because the subject matter of at least claims 1 and 35 was not disclosed in the prior art of record but was disclosed in the OM Product Description, the representations and arguments referred to herein would not have succeeded in obtaining allowance of such claims had the examiner been aware of the OM Product Description.

26. ~~34. The 1981 SEC Report, the 1982 SEC Report, the 1985 SEC Release and/or the 1988 SEC Release, in combination with the CBOT Project A Article establish at least a prima facie case of unpatentability of such claims and/or~~The OM Product Description is material information because there is at least a substantial likelihood that a reasonable examiner would have considered ~~this information~~it important in deciding whether to allow ~~at least the claims of~~

~~the~~the November 1999 application ~~for the '707 patent that became claims 1 and 35 of the '707~~to issue as a patent.

27. The OM Product Description is material information because it establishes a prima facie case of unpatentability of at least claim 1 of the 1999 application as filed, as well as issued claims 1, 2, 35 and 36 of the '707 patent, and it refutes and is inconsistent with positions taken by the applicant during the prosecution of the November 1999 application in opposing arguments of unpatentability relied on by the PTO and in asserting arguments of patentability.

28. Nevertheless, the OM Product Description was never disclosed to the PTO by the applicant although, as set forth in Paragraphs 20 through 23 hereof, the sole named inventor, Gary Katz became fully aware of the OM Product Description prior to the time he conceived the automated financial exchange disclosed and claimed in the '707 patent in suit and had used the OM Product Description as the starting point for and the basis from which he derived such automated financial exchange.

29. At all relevant times, Mr. Katz was cognizant of his duty of candor to the PTO, particularly his duty to disclose to the PTO any relevant prior art of which he was aware. Notwithstanding such awareness, Mr. Katz did not disclose the material prior art OM Product Description to his patent attorney who prepared and prosecuted the November 1999 application in the PTO.

30. Although Mr. Katz knew when he filed the November 1999 application that the subject matter disclosed in the OM Product Description had been created prior to the time he made his invention and that he was not an inventor of any of the subject matter disclosed in the OM Product Description, testifying under oath he could offer no explanation as to why he failed to disclose the OM Product Description to his patent attorney or the PTO.

31. Absent disclosure by the applicant, the examiner had no way of learning of the existence of the OM Product Description let alone that the named inventor had used the OM Product Description as the starting point for and the basis of the invention claimed in the 1999 application and the '707 patent.

32. On information and belief, and by reason of the facts and circumstances set forth in Paragraphs 20 through 31 hereof, Mr. Katz, with the intent to mislead and deceive the PTO, withheld from the PTO both the material prior art OM Product Description and the fact that the OM Product Description constituted the starting point for and the basis of the invention claimed in the 1999 application and the '707 patent.

33. Prior to the date of conception of the subject matter disclosed and claimed in the '707 patent, financial exchanges in the United States operated in accordance with certain trading rules. Such trading rules, both as published and implemented in public use are prior art to the subject matter of the claims of the '707 patent under 35 U.S.C.§§102(a) and/or 102(b).

34. The prior art trading rules referred to in Paragraph 33 hereof include public customer priority, size-based allocation, and pro rata allocation, alone and in combination.

35. ~~During the prosecution of the application for the '707 patent, the applicant represented to the examiner in response to prior art rejections that:~~Katherine Simmons is an attorney at law who, beginning in 1996, represented ISE as outside counsel in connection with the efforts of ISE to obtain approval for its automated financial exchange from the United States Securities and Exchange Commission (the "SEC"). Prior to the filing of the November 1999 application, Ms. Simmons became employed by ISE.

> ~~[b]y providing a mechanism for allocating transactions, an exchange according to the present invention overcomes problems with known exchanges that allocate incoming orders through a rotation of assignment (Paper No. 11 at p. 35; May 21, 2001).~~

* * *

~~Minton [the prior art] does not, however, show or suggest allocating an incoming order among a plurality of previously received orders on the basis of a stored allocating parameter. Instead, Minton shows that individual orders between a buyer and seller are matched. (*Id.* at p. 36)(emphasis in original).~~

* * *

~~[C]laims 1 and 35, which recite the allocation of an incoming order or quotation among a plurality of previously received orders or quotations based on an allocating parameter, are not shown or suggested by Minton and are submitted a [sic] patentable over Minton. (*Id.* at p. 37).~~

* * *

~~The present invention is not shown or suggested by Minton at least because Minton does not show an exchange where portions of an incoming order are allocated among previously received orders or quotations based upon an allocating parameter or preference quantity. …There is also no suggestion in Minton that trade matching takes place based on a preference quantity that is determined by the type of entity placing an incoming order. Thus, claims 1 and 35, which quote the allocation of an order among a plurality of previously received orders based on an allocating parameter, are not shown or suggested by Minton (Paper No. 16 at p. 3; Jan. 14, 2002).~~

* * *

~~The deep liquid markets offered by ISE are a consequence of the claimed features of the invention. The exchange trading system automatically allocates incoming orders among previously received orders and quotations according to a predetermined parameter. *See* claim 1, 35 and 68 (reciting allocating orders based on stored allocation parameters and preference quantities). (Declaration of Gary Katz, Paper No. 22 at paragraph 12, pp. 5-6; July 19, 2002).~~

* * *

~~The present invention is directed to an automated exchange that receives orders and quotations for the purchase and sale of a financial instrument from public customers and professional traders and accumulates these orders and quotations in a memory. Accumulated orders and quotations are traded against incoming orders or quotations based on predetermined allocating parameters. According to one embodiment, the allocating parameters include parameters for "allocating a remaining portion of [an] incoming order or quotation preferentially against professional orders and quotations with larger size." *See* claims 1 and 35. (Paper No. 23 at p. 18; Aug. 2, 2002).~~

* * *

> Minton [the prior art] does not show or suggest allocating an incoming order among a plurality of previously received orders on the basis of a stored allocating parameter, or that such an allocating parameter includes parameters for allocating preferentially against professional orders or quotations with larger size, as required by claims 1 and 35. (Paper No. 23 at p. 19; Aug. 2, 2002).

36. The 1981 SEC Report, the 1982 SEC Report, and/or the 1985 SEC Release and/or the 1988 SEC Release, taken together with the 1995 CBOT Project A Article, disclose the very features of an automated exchange for trading a financial instrument and a process for trading a financial instrument on an automated exchange which the applicant for the '707 patent repeatedly represented to the PTO distinguished the subject matter of at least claims 1 and 35 of the application for the '707 patent from the prior art known to the examiner.Ms. Simmons was responsible for writing the trading rules for the ISE. Sections of the proposed trading rules were reviewed by Mr. Katz prior to finalization. At all relevant times, Ms. Simmons had knowledge of the trading rules of existing exchanges, particularly including material prior art trading rules relating to public customer priority, size-based allocation and pro rata allocation. Also, at all relevant times Mr. Katz had knowledge of the trading rules of existing exchanges, particularly including material prior art trading rules relating to public customer priority, size-based allocation and pro rata allocation. Mr. Katz was aware when he filed the November 1999 patent application that other exchanges were practicing customer priority by exchange rule. Moreover, prior to his conception of the subject matter claimed in the '707 patent, Mr. Katz had been an employee of the New York Stock Exchange ("NYSE") options exchange, which implemented and published rules concerning size-based allocation and pro rata allocation.

37. In particular, the prior art publications referred to in Paragraphs 19, 20, 21, 22, and 23 hereof, withheld from the PTO by the applicant, disclose an automated exchange for trading a financial instrument and a process for trading a financial instrument on an automated exchange

~~that includes, as provided in claims 1 and 35 of the '707 patent, parameters for first allocating a portion of an incoming order or quotation against previously received customer orders (public customer priority) and then allocating a remaining portion of the incoming order or quotation preferentially against professional orders and quotations with larger size.~~The withheld trading rules of other exchanges are material. None of the art of record in the '707 patent discloses pro rata allocation or customer priority (let alone the combination of both). Also, the trading rules withheld by Ms. Simmons and Mr. Katz refute and are inconsistent with positions taken by the applicant during the prosecution of the November 1999 application in opposing arguments of unpatentability relied on by the PTO and in asserting arguments of patentability at least because the applicant distinguished prior art for its failure to disclose a size-based allocation and customer priority. The applicant made arguments for patentability that could not have been made had the trading rules of other exchanges been disclosed.

38. ~~Nevertheless, neither the 1981 SEC Report, the 1982 SEC Report, the 1985 SEC Release, the 1988 SEC Release nor the 1995 CBOT Project A Article were ever disclosed to the PTO by the applicant, even though, on information and belief, the applicant and/or his authorized representative and/or other persons associated with the preparation, filing and/or prosecution were at all relevant times fully aware of each such report, release and article.~~Ms. Simmons participated in the preparation of the November 1998 provisional application for the '707 patent and the preparation of the November 1999 application. Ms. Simmons also participated in the prosecution of the November 1999 application in the PTO, including appearing in person at an interview with the examiner.

39. ~~On information and belief, the applicant withheld the 1981 SEC Report, the 1982 SEC Report, the 1985 SEC Release, the 1988 SEC Release, and the 1995 CBOE Project A~~

~~Article from the PTO with an intent to mislead and deceive the PTO.~~At all relevant times, Ms. Simmons and Mr. Katz were cognizant of their duty of candor to the PTO, particularly of their duty to disclose to the PTO any relevant prior art of which they were aware. Notwithstanding such awareness, Ms. Simmons and Mr. Katz did not disclose the material prior art trading rules of public customer priority, size-based allocation, and pro rata allocation to the PTO.

40. The strategy of ISE in obtaining SEC approval was to minimize the differences between the proposed ISE trading rules and the trading rules of the existing options exchanges.

41. As a representative of ISE before the SEC and a participant in the preparation of the 1998 provisional application, and the preparation and prosecution of the 1999 application for the '707 patent, Ms. Simmons was aware at all relevant times that ISE was representing to the SEC that its trading rules were similar to the trading rules of the existing exchanges while at the same time withholding that information from the PTO even though the claimed exchange features of public customer priority, size-based allocation, and pro rata allocation were being relied upon in arguments to obtain allowance of at least claims 1 and 35 of the 1999 application for the '707 patent.

42. On information and belief, and by reason of the facts and circumstances set forth in Paragraphs 33 through 41 hereof, the applicant, and in particular Ms. Simmons and Mr. Katz, with the intent to mislead and deceive the PTO, withheld from the PTO evidence of the material prior art trading rules of public customer priority, size-based allocation and pro rata allocation.

43. Prior to the date of conception of the subject matter disclosed and claimed in the '707 patent, the Chicago Board of Trade ("CBOT") operated an automated exchange named "Project A" which had the feature of pro rata allocation. The public use and knowledge of

Project A, as well as certain publications describing Project A, are prior art to the subject matter of the claims of the '707 patent under 35 U.S.C. §§102(a) and/or 102(b).

44. Stephen Lieb is an attorney at law who was responsible for prosecuting the application for the '707 patent.

45. Mr. Lieb, before issuance of the '707 patent, received a publication from ISE in-house counsel regarding Project A (the "Project A document"). Mr. Lieb testified that the Project A document disclosed a system which allocates orders based on size and has a pro rata allocation.

46. Mr. Lieb elected not to disclose the Project A document to the PTO. A memorandum, written by Mr. Lieb, indicates that he withheld the Project A document because it was allegedly cumulative to certain art of record in the application for the '707 patent.

47. The withheld Project A document is material prior art. None of the prior art of record in the '707 patent discloses pro rata allocation. Also, the Project A document withheld by Mr. Lieb refutes and is inconsistent with positions taken by the applicant during the prosecution of the November 1999 application in opposing arguments of unpatentability relied on by the PTO and in asserting arguments of patentability at least because the applicant distinguished prior art for its failure to disclose a size-based allocation. The applicant made arguments for patentability that could not have been made had the Project A document been disclosed.

48. ~~40.~~ By reason of the facts and circumstances ~~referred to~~set forth in Paragraphs ~~16~~17 through ~~33, inclusive,~~47 hereof, the '707 patent ~~is~~ unenforceable by reason of inequitable conduct.

**PRAYER FOR RELIEF**

~~41.~~ WHEREFORE, plaintiff CBOE demands judgment as follows:

a. The ~~ISE patents are~~'707 patent is invalid.

b. The ~~ISE patents are~~'707 patent is not infringed by plaintiff.

c. The ~~ISE patents are~~'707 patent is unenforceable against plaintiff.

d. Awarding plaintiff its costs and disbursements in this action.

e. Awarding plaintiff reasonable attorneys' fees.

f. For such other and further relief as the Court deems just and proper.

**JURY DEMAND**

CBOE respectfully requests a trial by jury as to all issues so triable.

Dated: ~~May 11, 2007~~October 22, 2009

By: ______________________________

Paul E. Dengel
Stacie R. Hartman
**SCHIFF HARDIN LLP**
6600 Sears Tower
233 South Wacker Drive
Chicago, Illinois 60606-6473
(312) 258-5500

Firm ID# 90219

*Attorneys for Plaintiff*
*Chicago Board Options Exchange, Incorporated*

OF COUNSEL:

Jonathan A. Marshall
David Francescani
~~John T. Johnson (N.D. Ill. Fed. Bar No. 2589182)~~
**FISH & RICHARDSON P.C.**
601 Lexington Avenue
~~Citigroup Center~~ — 52nd Floor
~~153 East 53rd Street~~
New York, NY 10022
Telephone: (212) 765-5070
Facsimile: (212) 258-2291

Joanne Moffic-Silver
Jordan Newmark
**CHICAGO BOARD OPTIONS EXCHANGE, INCORPORATED**
400 S. LaSalle Street
Chicago, IL 60605
Telephone: (312) 786-7909

30507260.doc

Document comparison done by DeltaView on Monday, November 02, 2009 11:53:59 AM

| Input: | |
|---|---|
| Document 1 | file://C:/Documents and Settings/yzt/Desktop/30341628.doc |
| Document 2 | file://C:/Documents and Settings/yzt/Desktop/30507260.doc |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| ~~Deletion~~ | |
| ~~Moved from~~ | |
| Moved to | |
| Style change | |
| Format change | |
| ~~Moved deletion~~ | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 98 |
| Deletions | 91 |
| Moved from | 4 |
| Moved to | 4 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 197 |