**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

Chicago Board Options Exchange, Inc.,

      Plaintiff,

  v.

International Securities Exchange, LLC,

      Defendant.

Civil Action No. 07-cv-623

The Hon. Joan H. Lefkow, U.S.D.J.
The Hon. Jeffrey Cole, U.S.M.J.

**INTERNATIONAL SECURITIES EXCHANGE, LLC's MEMORANDUM**
**IN OPPOSITION TO CHICAGO BOARD OPTIONS EXCHANGE, INC.'s,**
**<u>MOTION TO AMEND THE COMPLAINT</u>**

# TABLE OF CONTENTS

**PAGE**

I.      **Introduction** .................................................................................................... 1

II.      **CBOE's Inequitable Conduct Allegations are Untimely As Well As Ill-Considered** ......................................................................................................... 4

     A.      CBOE Fails to Provide Evidence of its Diligence that Could Support a Finding of "Good Cause." ........................................................................... 4

         (1)      CBOE was not diligent in seeking to add inequitable conduct allegations based upon the OM Product Specification. ........................... 5

         (2)      CBOE was not diligent in seeking to add inequitable conduct allegations based upon unspecified "rules of other exchanges" and the unidentified "Project A document." ...................................................... 6

III.      **CBOE's Proposed Amendment Fails to Satisfy Rule 15(a)** .............................. 9

     A.      CBOE's Proposed Amendments would be Futile .................................. 10

     B.      CBOE's Proposed Amendments are the Result of Undue Delay and Would Unnecessarily Prejudice ISE. ................................................................. 11

IV.      **CBOE's New Allegations of Inequitable Conduct Fail to Meet the Pleading Requirements of Fed. R. Civ. P. 9(b)** ............................................................... 13

LIBNY/4864424.1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*,
  725 F.2d 1350 (Fed.Cir.1984)...........................................................................14

*Burlington Indus., Inc. v. Dayco Corp.*,
  849 F.2d 1418 (Fed. Cir. 1988)..........................................................................1

*Campania Mgmt. Co., Inc. v. Rooks, Pitts & Poust*,
  290 F.3d 843 (7th Cir. 2002) ........................................................................4, 10

*Cent. Admixture Pharm. Servs., Inc. v. Advanced Cardiovascular Solutions, P.C.*,
  482 F.3d 1347 (Fed. Cir. 2007)..................................................................8, 9, 15

*Connell v. KLN Steel Prods. Co., Ltd.*,
  No. 04-C-0194, 2006 WL 1120514 (N.D. Ill. Apr. 25, 2006)....................2, 4, 9, 10

*Doe v. Howe Military School*,
  227 F.3d 981 (7th Cir., 2000) ............................................................................2

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
  575 F.3d 1312 (Fed. Cir. 2009)...............................................................11, 14, 15

*FMC Corp. v. Manitowoc Co., Inc.*,
  835 F.2d 1411 (Fed. Cir. 1987)........................................................................11

*Glick v. Koenig*,
  766 F.2d 265 (7th Cir. 1985) ...........................................................................10

*In re Donaldson Company*,
  16 F.3d 1189 (Fed. Cir. 1994)........................................................................7, 8

*In re Neopharm, Inc. Sec. Litig.*,
  No. 02-C-2976, 2007 WL 625533 (N.D. Il1. Feb. 23, 2007) ...............................10

*Johnson v. Mammoth Recreations, Inc.*,
  975 F.2d 604 (9th Cir. 1992) .............................................................................4

*Johnson v. Methodist Med. Ctr. of Ill.*,
  10 F.3d 1300 (7th Cir. 1993) .............................................................................3

*Optivus Tech., Inc. v. Ion Beam Applications S.A.*,
   No. 03–C-2052, 2004 WL 5543277 (C.D. Cal. Dec. 29, 2004), *aff'd*, 469 F.3d 978
   (Fed.Cir. 2006) ......................................................................................................9

*Petersen v. Elmhurst Anes-thesiologists, P.C.*,
   No. 93-C-1468, 1993 WL 400286 (N.D. Ill. Oct. 6, 1993) ....................................................10

*Regents of Univ. of Cal. v. Eli Lilly & Co.*,
   119 F.3d 1559 (Fed. Cir. 1997)............................................................................15

*Remington Arms Co. v. Modern Muzzleloading, Inc.*,
   No. 97-C-660, 1998 WL 1040949 (M.D.N.C. Dec.17, 1998) ..............................................8, 9

*SmithKline Beacham Corp. v. Pentech Pharm., Inc.*,
   Nos. 00-C-2855, 00-C-5831, 2002 WL 1303137 (N.D. III. June 13, 2002) ...........................9

*Thomas & Betts Corp. v. Panduit Corp.*,
   No. 93-C-4017, 1999 WL 92894 (N.D. Ill. Feb. 17, 1999) ....................................................11

*Trustmark Ins. Co. v. General & Cologne Life Re of America*,
   424 F.3d 542 (7th Cir. 2005) ........................................................................... passim

*Tschantz v. McCann*,
   160 F.R.D. 568 (N.D. Ind. 1995) ............................................................................3

*Villa v. Chicago*,
   924 F.2d 629 (7th Cir. 1991) ............................................................................10

## OTHER AUTHORITIES

37 C.F.R. § 1.56(a)............................................................................15

FED. R. CIV. P. 9(b) ........................................................................... passim

Fed. R. Civ. P. 15............................................................................3, 9, 10

FED. R. CIV. P. 16............................................................................2, 4, 5, 9

iii

## I.     Introduction

Defendant International Securities Exchange, LLC ("ISE") respectfully submits this memorandum in opposition to Plaintiff Chicago Board Options Exchange, LLC's ("CBOE") Motion to Amend the Complaint ("CBOE's Motion").  Over two decades ago, the Federal Circuit stated:

> **The habit of charging inequitable conduct in almost every major patent case has become an absolute plague.**  Reputable lawyers seem to feel compelled to make the charge against other reputable lawyers on the slenderest grounds, to represent their client's interests adequately, perhaps.  They get anywhere with the accusation in but a small percentage of the cases, but such charges are not inconsequential on that account.  They destroy the respect for one another's integrity, for being fellow members of an honorable profession, that used to make the bar a valuable help to the courts in making a sound disposition of their cases, and to sustain the good name of the bar itself.  A patent litigant should be made to feel, therefore, that an unsupported charge of "inequitable conduct in the Patent Office" is a negative contribution to the rightful administration of justice.

*Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988) (emphasis added). CBOE seeks to add to this continuing "plague" by occupying a week of this Court's time with a trial on its own specious allegations.

On May 11, 2007, over two and a half years ago, CBOE filed an Amended Complaint in the Northern District of Illinois alleging that applicants for U.S. Patent No. 6,618,707 (the "'707 Patent") intentionally deceived the patent office by failing to disclose a 1981 SEC Report, a 1982 SEC Report, a 1985 SEC Report, a 1988 SEC Report and a 1995 CBOT Project A Article.  D.I. 37 at 4-10.  Per this Court's Scheduling Order, the deadline for filing a motion for summary judgment with respect to these claims is November 18, 2009.  D.I. at 141 at 3. With full knowledge of ISE's intention to move for summary judgment concerning CBOE's original baseless allegations of inequitable conduct, CBOE's [Proposed] Amended Complaint seeks in effect to dismiss each of its previous inequitable conduct allegations.  In their place, with fact discovery, expert discovery concerning this issue, and the Court's Markman Hearing all having long passed, CBOE seeks to belatedly add three new, different and similarly unsupported allegations of inequitable conduct.  CBOE's apparent tactic is to throw on the wall scurrilous and ever-changing charges of wilfull fraud against ISE's CEO and attorneys, and to see what, if anything sticks.

LIBNY/4864424.1

CBOE's new allegations of inequitable conduct, and its present motion, come almost two years after the deadline for amended pleadings, more than four months after the close of fact discovery, more than two months after this Court's two-day claim construction hearing, after the deadline for submission of expert discovery concerning inequitable conduct, and mere days prior to the deadline for filing summary judgment motions concerning inequitable conduct. CBOE makes no attempt to establish the "good cause" necessary to amend the Scheduling Order at the eleventh hour, and indeed CBOE's tactical delay precludes any such finding. Furthermore, as detailed below and in ISE's Memorandum in Support of its Cross-Motion for Summary Judgment of No Inequitable Conduct With Respect to Allegations in CBOE's Proposed Amended Complaint filed herewith and incorporated by reference, CBOE's new allegations of inequitable conduct, like the old, are demonstrably baseless and CBOE's belated attempt to inject them into the present action would be futile.

Both this Court's Scheduling Order and Federal Rule of Civil Procedure 16(b) require CBOE to establish "good cause"—judged by the diligence of CBOE in seeking to amend its pleadings—before any motion to amend may be granted. *See* D.I. 57 at 1 (requiring that pleading amendments after January 11, 2008 may be made "only on motion for good cause shown"); *Trustmark Ins. Co. v. General & Cologne Life Re of America*, 424 F.3d 542, 553 (7th Cir. 2005) (finding that "Rule 16(b) good cause standard primarily considers the diligence of the party seeking amendment"). Despite the fact that the burden is on CBOE to establish such "good cause" and diligence, CBOE fails to even attempt to meet this burden. Instead, in a conclusory manner CBOE asserts that it "has diligently sought amendment to the complaint" without identifying a single reason, a single fact, and/or a single circumstance to support or excuse CBOE's actions in seeking to amend the Complaint almost two years after the deadline has passed and months after the close of fact discovery. D.I. 211 at 11. CBOE's failure to present any evidence of diligence "should end [this inquiry] and [its] motion should be denied." *See Connell v. KLN Steel Prods. Co., Ltd.*, No. 04-C-0194, 2006 WL 1120514, at *4 (N.D. Ill. Apr. 25, 2006); *Doe v. Howe Military School*, 227 F.3d 981, 989-90 (7th Cir., 2000) (denying leave to amend the complaint where the plaintiffs did not provide any facts explaining the delay).

Initially, it is clear why CBOE did not present evidence of diligence; the evidence of a *lack* of diligence on the part of CBOE is overwhelming. Specifically, CBOE now alleges three individuals committed fraud: Ms. Simmons, deposed on April 23, 2009, Mr. Lieb, deposed on

May 22, 2009, and Mr. Katz, last deposed on June 23, 2009.  D.I. 211 at 9-16.   Furthermore, on August 6, 2009, a mere two days after receiving supplemental interrogatory answers containing many of CBOE's recent allegations for the first time, ISE specifically advised CBOE that its "new allegations are not part of the present action and any attempts by CBOE to amend its pleadings to add new allegations of inequitable conduct … would be fruitless." Ex. A.[1]  CBOE's response was to allow the Markman phase of this action to finish, to allow for the exchange of expert reports concerning inequitable conduct to finish, and then to move to amend just days before the deadline to file summary judgment motions on the issue of inequitable conduct—all with full knowledge that ISE was preparing to move on such issue.

CBOE's tactical decision to allow the various procedural deadlines to pass and to wait until the summary judgment phase of the proceedings to move to amend precludes a finding of "good faith."  *See Johnson v. Methodist Med. Ctr. of Ill.,* 10 F.3d 1300, 1304 (7th Cir. 1993) (finding lack of diligence where party "only sought [to amend] when faced with the likelihood that [defendant's] motion for summary judgment would succeed.")  As evidenced by CBOE's counsel's statements at two status conference before this Court, CBOE's strategy was to push for an early trial with unpled—let alone specifically pled—and ever-mutating accusations which would present moving targets for the victims of those accusations to attempt to fire back at.

Secondly, even if "good cause" could be established, CBOE "must [also] demonstrate that the amendment complies with the requirements of Rule 15."  *Tschantz v. McCann*, 160 F.R.D. 568, 571 (N.D. Ind. 1995).  CBOE's three new allegations of inequitable conduct are futile and cannot withstand ISE's Cross-Motion for Summary Judgment.  Specifically, despite the stringent pleading requirements for inequitable conduct and the high evidentiary burden that CBOE must meet, CBOE has failed to identify any evidence that could possibly support a finding of either materiality or intent.  With respect to the OM Specification, CBOE asks this Court to presume both materiality and intent from the alleged fact that Mr. Katz failed to disclose to the examiner that the inventions of the '707 Patent were "based upon" the OM Click Exchange software.  D.I. 211 at 5-6.  Not only can materiality and intent not be "presumed" under such circumstances, but Mr. Katz specifically informed the examiner that the inventions of the patented exchange were "based upon" the OM Click Exchange software, rendering CBOE's

---

[1] "Ex.__" refers to the Declaration of Brian J. Prew in Support of International Securities Exchange, LLP's Opposition to CBOE's Motion to Amend the Complaint.

3

allegations of inequitable conduct factually inaccurate as well as legally baseless.  Ex. B at
ISE0000490.  Similarly, CBOE's gauzy allegations of fraud against Mr. Katz and Ms. Simmons
with respect to various unidentified "rules," when parsed, fail to meet the pleading requirements
of FED. R. CIV. P. 9(b), let alone survive a motion for summary judgment.  Despite the fact that
depositions of relevant witnesses ended on June 23, 2009, CBOE still fails to identify which
individual was aware of which rule of what exchange, much less why any specific rule is
material to patentability.  Lastly, CBOE's allegations with respect to Mr. Lieb, which are
(prudently) not mentioned in its memorandum, are plainly baseless as CBOE fails to identify
which "Project A document" it intends to rely upon, and contemporaneous documents
unambiguously demonstrate Mr. Lieb's good faith.

   In short, CBOE's tactical delay and attempt to add baseless allegations of inequitable
conduct against ISE's CEO and two of its attorneys, as well as its attempts to remove its previous
place-holder allegations of fraud is precisely the reason that the Federal Circuit has described
allegations of inequitable conduct as an "absolute plague."  As such, CBOE's belated motion to
amend the Complaint should be denied.

## II.   CBOE's Inequitable Conduct Allegations are Untimely As Well As Ill-Considered

### A.   CBOE Fails to Provide Evidence of its Diligence that Could Support a Finding of "Good Cause."

   Pursuant to the parties' agreement, by Order dated October 25, 2007, this Court ruled that
no amendments to the pleadings are permitted after January 11, 2008 absent a "showing of good
cause."  D.I. 57.  Similarly, under Rule 16(b), a "schedule shall not be modified except upon a
showing of good cause and by leave of the district court." *Id*. (citing FED. R. CIV. P. 16(b)).
"Courts have a legitimate interest in ensuring that parties abide by scheduling orders to ensure
prompt and orderly litigation." *Campania Mgmt. Co., Inc. v. Rooks, Pitts & Poust*, 290 F.3d 843,
851 (7th Cir. 2002).

   "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party
seeking the amendment." *Trustmark*, 424 F.3d at 553 (*quoting Johnson v. Mammoth
Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)). If that party was not diligent, the inquiry
should end and the motion should be denied.  *See Connell*, 2006 WL 1120514, at *4 (N.D. Ill.
Apr. 25, 2006) (citing *Trustmark*, 424 F.3d at 553 (adopting *Johnson*, 975 F.2d at 609)).  In
*Trustmark*, the only case relied upon by CBOE addressing "good cause," the Court of Appeals

4

for the Seventh Circuit affirmed a finding of lack of diligence, and a denial of a motion to amend under FED. R. CIV. P. 16(b), where a party "harbored suspicions" regarding its allegations and/or knew or should have known of its allegations months earlier, and elected to wait until shortly after depositions on the subject matter to move to amend.  In contrast to *Trustmark,* in the present action, CBOE had actual knowledge of the facts underlying its present allegations for the past year and, despite being reminded of its obligation to amend the Complaint months ago, tactically delayed in attempting to add these allegations immediately prior to the deadline for summary judgment motions concerning inequitable conduct.

CBOE's bare allegation that the "present amendments specify acts of inequitable conduct that were only recently uncovered in discovery" is demonstrably baseless and misleading.  D.I. 211 at 1.  The last relevant deposition was taken June 23, 2009 and CBOE fails to identify a single fact and/or circumstance that was "recently uncovered."

**(1)    CBOE was not diligent in seeking to add inequitable conduct allegations based upon the OM Product Specification.**

CBOE has been actually aware of the facts underlying its allegations of inequitable conduct with respect to the OM Product Specification since at least January 2009.  The OM Product Specification was produced on April 21, 2008.  Ex. C.  On January 15, 2009, CBOE deposed Mr. Martin Averbuch, and at least by that date was plainly aware that Mr. Katz knew of the OM Product Specification, that Mr. Katz was involved in preparing detailed questions concerning the OM Product Specification, and that the OM Product Specification itself was not disclosed to the patent examiner.  Ex. D, Averbuch Dep. at 202:1-206:9.  Furthermore, almost a year prior to the Averbuch deposition, on January 29, 2008, Mr. Katz had been deposed concerning the relationship between ISE and OM Technology, and on August 20, 2008, ISE identified communications with OM Technology as evidencing Mr. Katz's conception of certain claims of the '707 Patent.  *See* Ex. E at 3.

Despite being plainly aware of the facts that it now alleges constitute inequitable conduct since at the latest January 15, 2009, CBOE neither supplemented its interrogatory responses nor moved to amend the Complaint at that time.  In fact, CBOE did not amend its interrogatory responses to add new allegations of inequitable conduct with respect to Mr. Katz until August 4, 2009, well after the close of fact discovery and over six weeks after a second deposition of Mr. Katz.  Ex. F at 57-64.  In response, on August 6, 2009, two days after receiving CBOE's

5

amended interrogatory responses, ISE promptly informed CBOE that its new allegations were baseless and that "[t]hese new allegations are not part of the present action … any attempts by CBOE to amend its pleadings to add new allegations of inequitable conduct … would be fruitless." Ex. A. CBOE's response was a further tactical delay.

>   **(2)     CBOE was not diligent in seeking to add inequitable conduct allegations based upon unspecified "rules of other exchanges" and the unidentified "Project A document."**

CBOE's allegations concerning the "rules of other exchanges" and the "Project A document" fail to identify any particular reference that either Ms. Simmons, Mr. Katz or Mr. Lieb was aware of at any time.  They further fail to identify why any such rule or documents would be material and not cumulative of the prior art that was before the PTO examiner.  As such, as detailed below, CBOE's motion to amend must be denied for failing to comply with FED. R. CIV. P. 9(b).

On April 6, 2009 and May 22, 2009, respectively, CBOE deposed Ms. Simmons and Mr. Lieb.  D.I. 211 at 3.  Following those depositions, CBOE was fully aware of each of the facts that it now alleges constitutes inequitable conduct with respect to Mr. Lieb and Ms. Simmons. Despite this, CBOE waited six months to move to amend the complaint to add any allegations with respect to these individuals.  CBOE identifies no excuse and/or reason for its six month delay in moving to amend the Complaint, and it would strain credibility for CBOE to suggest that it did not "harbor suspicions" regarding its present allegations long before the above identified depositions. *See Trustmark,* 424 F.3d at 553.

CBOE's attempts to excuse its delay based upon "repeatedly amending and updating its responses"[2] to ISE's interrogatories that relate to inequitable conduct are demonstrably baseless and factually inaccurate.  In fact, CBOE failed to provide any substantive interrogatory answer concerning CBOE's inequitable conduct allegations until June 19, 2009, mere days before the close of fact discovery, and two and a half years after originally pleading inequitable conduct. Ex. H at 57-62;  D.I. 141.  Furthermore, this interrogatory response included no allegations with respect to the conduct of Mr. Katz.

On August 4, 2009, CBOE first supplemented its interrogatory response to include many

---

[2] On November 4, 2009, the same day CBOE filed its present motion, CBOE responded to ISE's own supplemental interrogatory response by indicating that "ISE cannot now add new claims to the case by supplementing an interrogatory response."  Ex. G.

of the allegations of inequitable conduct that it now seeks to inject into this action.  Ex. F at 57-64.  CBOE's three new allegations were but a small part of its panoply of over thirty other separate allegations of inequitable conduct that CBOE has now elected not to assert.  *Id.*  As indicated above, on August 6, 2009, two days later, ISE specifically notified CBOE of its obligation to amend its Complaint to the extent it intended to assert its new allegations. Ex. A.  Despite ISE's efforts to force the issue, CBOE failed to move to amend for another three months, allowing various critical procedural deadlines to pass.

> **B.      CBOE's Tactical Delay Precludes a Finding of Diligence.**

CBOE's decision to wait until after the close of fact and expert discovery and after the Markman Hearing to file the present motion precludes a finding of diligence.  Despite being fully aware of all of the facts that CBOE asserts were "recently discovered," CBOE waited months to file the present motion.  CBOE's calculated inaction through various procedural deadlines has plainly prejudiced ISE, and precludes a finding of diligence.  CBOE's present motion, if granted, would require additional briefing, and a hearing concerning claim construction, as well as a reopening of fact as well as expert discovery, all for a futile cause of action.

CBOE relies upon originally filed Claim 1 in support of its argument that the OM Product Description is material to patentability.  D.I. 211 at 5.  Due to CBOE's delay, a separate claim construction hearing would be required with respect to the limitations of originally filed Claim 1.  Originally filed Claim 1 contains three separate means-plus-function elements that have not been identified for construction as part of the Markman process.  Ex. I at 57 ("means for storing a plurality of previously received orders …," "means for storing parameters …," and "means for allocating portions of the incoming order …").  ISE has had no opportunity to have these claims terms construed, and this would be necessary for a determination of materiality.  *See In re Donaldson Company*, 16 F.3d 1189, 1194-5 (Fed. Cir. 1994) (holding that the "'**broadest reasonable interpretation'** that an examiner may give **means-plus-function** language is that statutorily mandated in paragraph six.") (emphasis added).

In *In re Donaldson*, the Federal Circuit *expressly* addressed and rejected CBOE's argument that under the "broadest reasonable interpretation" claim terms do not have to be construed.  *Id.* (stating that the holding "sets a limit on how broadly the PTO may construe means-plus-function language under the rubric of 'reasonable interpretation'" and finding that such limit is "statutorily mandated in paragraph six.").  Thus, despite the fact that CBOE was

well aware of all the evidence it now relies upon long before this Court's two-day claim construction hearing, CBOE's present motion would require separate briefing on additional claim terms, and a separate hearing on claim construction issues, all pertaining to a clearly insufficient claim. CBOE's repeated demand that this Court rush to trial without providing ISE the opportunity to have the claim limitations of originally filed Claim 1 properly construed reveals, in part, the motivation for its delay.

In addition to a new claim construction hearing and supplemental briefing, CBOE's Proposed Amendment would require this Court to re-open fact and expert discovery. CBOE's assertion that "CBOE does not need additional discovery" does not end the inquiry on whether fact discovery should be reopened. D.I. 211 at 2. For example, ISE is entitled to ask interrogatories and requests for admissions concerning each of the specific references that CBOE belatedly seeks to inject into this action. Furthermore, ISE is entitled to information concerning the unidentified CBOT Project A document, as well as CBOE's contentions regarding the OM Product Specification. The evidence adduced to date suggests that these references are not even prior art, much less material prior art. To date, ISE has not been afforded an opportunity to request discovery from CBOE concerning this information, due to CBOE's delay. Furthermore, to preclude ISE from submitting an additional expert report based upon any new evidence identified during fact discovery would be plainly unjust. *See Cent. Admixture Pharm. Servs., Inc. v. Advanced Cardiovascular Solutions, P.C.*, 482 F.3d 1347, 1357 (Fed. Cir. 2007) (noting that to permit to add a new allegation of inequitable conduct after the close of discovery would "'require the parties to conduct new discovery, including entirely new expert discovery.'").

The courts are uniform in their decisions that any finding of diligence is precluded by failure to file a proposed amendment until after the passing of the procedural deadlines that CBOE has intentionally let slip past. For example, in *Remington Arms Co. v. Modern Muzzleloading, Inc.*, No. 97-C-660, 1998 WL 1040949, at *2 (M.D.N.C. Dec.17, 1998), the defendant sought to amend its answer and counterclaim to add a claim of inequitable conduct. *Id.* at *1. The defendant alleged that the patentee had withheld a particular document from the USPTO. *See id.* at *2. The district court noted that there was evidence that the defendant was aware of the document at issue as much as five or six months before it sought to amend its answer. *Id.* at *1-2. Similarly to our own case, extensive discovery had already closed, a Markman hearing had already been held, and a trial date had already been set. *Id.* at *1-3. The

district court found that the patentees' delay precluded a finding of "good faith."

Similarly, in *Optivus Tech., Inc. v. Ion Beam Applications S.A.*, No. 03–C-2052, 2004 WL 5543277 (C.D. Cal. Dec. 29, 2004), *aff'd*, 469 F.3d 978 (Fed.Cir. 2006)), the defendant sought to amend its answer to include a claim of inequitable conduct. *Id.* at *1. The defendant was aware of sufficient facts supporting an inference of inequitable conduct for nearly two and one half months. *Id.* at *5. The court found that delay "inexcusable." *Id.*; *see SmithKline Beacham Corp. v. Pentech Pharm., Inc.,* Nos. 00-C-2855, 00-C-5831, 2002 WL 1303137, at *2, 3 (N.D. Ill. June 13, 2002) (denying leave to amend where motion was filed six weeks before the end of fact discovery); *Cent. Admixture*, 482 F.3d at 1357 (affirming denial of motion to amend because allowing new claims would "require the parties to conduct new discovery, including entirely new expert discovery.").

Importantly, in contrast to the cases cited above, in the present action CBOE's decision to let each of the above enumerated deadlines pass was made with full knowledge of its obligation to amend the Complaint. *See* Ex. A. CBOE has frustrated ISE's ability to fully consider, investigate and promptly move to dismiss CBOE's latest allegations by serving interrogatory answers after the close of fact discovery which identify over thirty different theories of inequitable conduct, none of which were disclosed prior to June 19, 2009, and many of which are based upon long-known circumstances. When notified of the improper manner in which CBOE sought to add new allegations of inequitable conduct, CBOE waited until after the Markman Hearing and the close of fact and expert discovery and, at the same time, demanded an immediate trial on inequitable conduct. CBOE's memorandum presents no facts that explain its delay and makes no attempt to show "good cause" that could justify relief under this Court's Scheduling Order and/or FED. R. CIV. P. 16.[3] As such, "the inquiry should end and the motion should be denied." *See Connell*, 2006 WL 1120514, at *4 (N.D. Ill. Apr. 25, 2006).

### III.   CBOE's Proposed Amendment Fails to Satisfy Rule 15(a)

Even if CBOE could show good cause to amend the scheduling order, it "must also demonstrate that the amendment complies with the requirements of Rule 15(a)." *See Connell*, 2006 WL 1120514, at *4 (N.D. Ill. Apr. 25, 2006); *Petersen v. Elmhurst Anes-thesiologists,*

---

[3] In the event CBOE attempts to belatedly introduce any evidence and/or arguments concerning diligence on its part, ISE intends to move for a surreply, as any such evidence and/or arguments are not part of its present memorandum and would be improper if raised for the first time in a reply.

*P.C.*, No. 93-C-1468, 1993 WL 400286, *2-3 (N.D. Ill. Oct. 6, 1993). Although leave to amend shall be granted when justice so requires, leave is inappropriate where the amendment is futile, where there is undue delay in making the amendment, or where the nonmovant would be unduly prejudiced by the amendment. *Campania*, 290 F.3d at 849; *Villa v. Chicago*, 924 F.2d 629, 632 (7th Cir. 1991) (citing *Foman v. Davis*, 371 U.S. 178, 183 (1962)).

"The liberal amendment rules under Rule 15(a) do not require the courts to indulge in futile gestures." *Glick v. Koenig*, 766 F.2d 265, 268-9 (7th Cir. 1985). An amendment, at this stage of the pleadings, would be futile if it is incapable of surviving a motion for summary judgment. *Villa*, 924 F.2d at 632 (denying leave to amend); *In re Neopharm, Inc. Sec. Litig.*, No. 02-C-2976, 2007 WL 625533, at *12 (N.D. lI1. Feb. 23, 2007) (same).

A.      **CBOE's Proposed Amendments would be Futile.**

As demonstrated in ISE's Memorandum in Support of ISE Cross-Motion for Summary Judgment filed herewith and incorporated by reference, CBOE's new inequitable conduct allegations cannot withstand close scrutiny. Critically, CBOE has identified no evidence from which a finding of either materiality or intent may be inferred. While CBOE's Motion makes various baseless allegations concerning the admissions of Mr. Katz and Ms. Simmons,[4] and expounding its theories of materiality, CBOE cites to no evidence which actually supports these theories. CBOE's failure to cite to any such evidence in arguing for eight pages that its present motion is not futile is telling.

With respect to CBOE's attempt to add new allegations concerning the OM Click Exchange Software, in general, and the OM Product Specification in particular, the specification of the Patent-in-suit specifically discloses that "the exchange 1 is implemented on an Open VMS system running the OM Click Exchange software manufactured by OM Technology AB" and the prosecution history indicates that ISE's "system is based on the OM Click Exchange, supplied by OM Technology." Ex. J, Col. 8, ll. 46-49. This explicit disclosure of the OM Click Exchange renders CBOE's assertion that this Court should infer Mr. Katz's intent to deceive completely illogical and fundamentally unsupportable. Furthermore, agreements between ISE and OM Technology demonstrate that the OM Product Specification is not prior art to any claim of the '707 Patent, rendering CBOE's allegations of materiality similarly unsupportable.

---

[4] CBOE's Motion, and its Expert Report Concerning Inequitable Conduct, are silent with respect to the new allegations concerning Mr. Lieb.

CBOE's new allegations concerning unidentified "rules of other exchanges" are similarly unsupported by the evidence.  CBOE, in its Proposed Amended Complaint, fails to identify any specific rule of any specific exchange, let alone how such rule was material to the prosecution of the '707 Patent.  Furthermore, with respect to the only rule specifically identified in CBOE's Motion for a Bench Trial on Inequitable Conduct, there is no evidence to support CBOE's allegation that Mr. Katz was even aware of such rule, and Ms. Simmons' mere indication that she "would have looked at these trading rules of CBOE" is insufficient as a matter of law to sustain CBOE's burden to prove by clear and convincing evidence that Ms. Simmons intended to deceive the patent office.  Ex. K, Simmons Dep. at 203:4-8; *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1330 (Fed. Cir. 2009) ("One cannot assume that an individual who generally knew that a reference existed, also knew of the specific material information contained in a reference."); *see also FMC Corp. v. Manitowoc Co., Inc.*, 835 F.2d 1411, 1415 (Fed. Cir. 1987).  Moreover, Ms. Simmons, who is regulatory counsel for ISE's and not patent counsel, testified she would have "looked at" the rules in the context of drafting ISE rules for submission to the SEC not in the context of her limited involvement in prosecuting the '707 Patent.

Lastly, CBOE's new allegations with respect to Mr. Lieb are particularly outrageous.  Specifically, CBOE asks this Court to "presume" both that an undated document describing Project A would be material to patentability and that Mr. Lieb intentionally attempted to deceive the examiner by failing to disclose this document.  CBOE again fails to adequately describe how this reference is supposedly material, and wholly ignores a contemporaneous memorandum Mr. Lieb prepared in which he analyzed the reference and concluded it was not material because it was cumulative of other references already before the PTO.

**B.     CBOE's Proposed Amendments are the Result of Undue Delay and Would Unnecessarily Prejudice ISE**

CBOE's Proposed Complaint is the result of undue delay and will prejudice ISE.  "Generally, undue delay occurs when a motion to amend would 'transform' or prolong the litigation **unnecessarily**." *Thomas & Betts Corp. v. Panduit Corp.*, No. 93-C-4017, 1999 WL 92894, *2 (N.D. Ill. Feb. 17, 1999) (emphasis added).  As detailed above, CBOE's proposed amendment will open up unnecessary and futile claim construction briefing, an additional claim construction hearing, and give rise to additional and unnecessary fact and expert discovery on ultimately futile inquiries.  Had CBOE chosen to move to amend the Complaint when it became

11

aware of the facts that it now alleges constitute inequitable conduct, or even when ISE specifically informed CBOE of its obligation to amend the Complaint, any delay, and the additional expenses associated therewith, could have been minimized. At the very least, the new claim construction issues implicated by CBOE's proposed amendments could have been addressed at the Markman Hearing.

CBOE's strategy in attempting to rush to trial regarding its new allegations is part and parcel of its tactical delay with respect to the present motion. On August 6, 2009, prior to this Court's Markman Hearing, and a mere two-days after receiving CBOE's supplemental interrogatory responses containing, for the first time, many of CBOE's new allegations, ISE specifically reminded CBOE that these allegations were not part of the present action and would require an amendment. Ex. A. CBOE's response was to wait two months, move for a separate bench trial on inequitable conduct, and then to argue that such trial should occur immediately. October 9, 2009 Hearing Tr. at 9-10.

Mere days after this Court's Scheduling Conference wherein CBOE made its demands, ISE requested the meet and confer concerning CBOE's disregard of its obligation to amend the Complaint that led to the present motion. Ex. L (email from ISE's counsel to CBOE's counsel requesting meet and confer and noting that "CBOE has failed to timely amend its Complaint and it is presently unclear whether CBOE intends to assert the allegations of inequitable conduct that are contained in its pleadings and/or abandon those allegations for one or more of the myriad of other allegations of inequitable conduct contained in its recent motion and/or its interrogatory responses."). As such, CBOE's argument that ISE has somehow acquiesced to its present motion by not opposing its Motion for a Separate Bench Trial on Inequitable Conduct is simply disingenuous. D.I. 211 at 2. Had CBOE elected to meet and confer prior to filing its Motion for a Separate Bench Trial on Inequitable Conduct it would have known that ISE did not and does not oppose a separate bench trial on the inequitable conduct as ISE believes it would be prejudicial to have CBOE's baseless inequitable conduct allegations tried to a jury.

CBOE's efforts to obfuscate the issue of inequitable conduct has continued since the filing of its present motion. With a summary judgment deadline of November 18, 2009, ISE requested on two separate occasions for CBOE to confirm that it would not be asserting its previous allegations with respect to the five previously identified references removed from the Proposed Amended Complaint. Ex. N; Ex. O. In response, on November 10, 2009, CBOE

cryptically stated that it would pursue the inequitable conduct defense "pleaded generally in the May 2007 Amended Complaint and particularized in the proposed Amended Complaint."  Ex. M.  Of course, the Proposed Amended Complaint makes no mention of the previous allegations of inequitable conduct.  In fact, it wholesale deletes such place holder allegations of fraud and replaces them with new allegations that are, rather incredibly, pleaded with less particularity. D.I. 211-3.  The circumstances certainly demonstrate that CBOE intentionally delayed in an effort to prejudice ISE's abilty to fully investigate and move to dismiss CBOE's new allegations. In such circumstances, a denial of CBOE's Motion to Amend is appropriate.

## IV.    CBOE's New Allegations of Inequitable Conduct Fail to Meet the Pleading Requirements of Fed. R. Civ. P. 9(b)

With respect to each of CBOE's three new allegations of inequitable conduct, CBOE's Proposed Amended Complaint fails to plead such allegations with the requisite particularity required in allegations of fraud.  Specifically, with respect to the unidentified "rules of other exchanges" and the unidentified "Project A document" CBOE's Proposed Amended Complaint fails to identify any specific reference that was withheld by any specific individual, and further fails to identify any portion of any reference that is allegedly material to any claim at issue. Furthermore, with respect to each of CBOE's new allegations, CBOE fails to identify the specific portion of any withheld reference that even allegedly discloses any limitation of any claim.  As such, CBOE's Proposed Amended Complaint fails to meet the pleading requirement of FED. R. CIV. P. 9(b) and must be rejected.

CBOE bases an entire theory of inequitable conduct on Mr. Katz's and Ms. Simmons' alleged failure to disclose the trading "rules of other exchanges" which allegedly disclose pro rata allocation and customer priority.  D.I. 211 at 7-9; D.I. 211-2 ¶¶ 33-42.  Yet, nowhere does CBOE favor us with which rule of which exchange discloses pro rata allocation and/or customer priority.  Furthermore, CBOE coyly refrains from alleging which rule(s) either Mr. Katz or Ms. Simmons was aware of, when and how they became aware of any such rule, and why any particular rule is material to patentability. What CBOE does is set up a straw man, and ask this Court to assume that specific rules exist, assume that the specific rules disclose unidentified elements of the claims of the '707 Patent, assume that Mr. Katz and/or Ms. Simmons were aware of such specific rules and of their materiality to the '707 Patent, and assume they committed fraud by failing to disclose such unidentified rule.  FED. R. CIV. P. 9(b) simply does not allow

13

such assumptions to be made.  This is the antithesis of pleading under Rule 9(b).

The Federal Circuit has recently elaborated on the need to plead inequitable conduct with particularity, holding that "[t]o plead the 'circumstances' of inequitable conduct with the requisite 'particularity' under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen*, 575 F.3d at 1328.  Under this standard, general allegations that applicants were aware of prior art is insufficient where the pleadings "did not identify the ***specific prior art*** that was allegedly known to the applicant and not disclosed."  *See Id.* at 1327 (emphasis added) (citing *Cent. Admixture*, 482 F.3d 1356-57).  Not only must "specific prior art" be identified but "a reference may be many pages long … [and] one cannot assume that an individual who generally knew that a reference existed, also knew of the specific material information contained in a reference."  *See Id.* at 1330 (pleadings insufficient wherein they identified the specific reference but failed to plead that individual was actually aware of material information in the reference).

CBOE's failure to "identify the ***specific prior art***" that was allegedly known to either Mr. Katz or Ms. Simmons renders its Proposed Amended Complaint plainly deficient.  *Id.* at 1327. Furthermore, as in *Exergen*, CBOE fails to identify any facts to support its allegation that either Mr. Katz or Ms. Simmons "knew of the specific [rule of any exchange] that is alleged to be material."  *Id.* at 1330; *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1362 (Fed.Cir.1984) ("Nor does an applicant for patent, who has no duty to conduct a prior art search, have an obligation to disclose any art of which, in the [district] court's words, he 'reasonably should be aware.'").  Importantly, in the present action, CBOE has produced and relied upon thousands of pages of rules from many different exchanges, many of which, in fact, are not even prior art to the '707 Patent.  CBOE's general allegation that knowledge of each rule of each exchange can be imputed to Mr. Katz and Ms. Simmons, and that deceptive intent can blithely be inferred because they admitted to reviewing some exchange rules, is plainly inadequate to support a pleading of inequitable conduct.  *See Exergen*, 575 F.3d at 1330.

Similarly to its allegations with respect to the unidentified "rules of other exchanges," CBOE's allegations with respect to the unspecified "Project A document" do not meet the stringent pleading requirements of FED. R. CIV. P. 9(b).  CBOE generally describes a "Project A document" but it fails to identify, attach and/or provide any information regarding such document other than its assertion that it discloses allocating based upon size and pro rata

14

allocation. D.I. 211-2 at ¶¶ 45-47.  In such circumstances, CBOE's pleading is plainly deficient. *See Exergen*, 575 F.3d at 1327-28 (noting that a pleading is deficient where it does not "identify the specific prior art" alleged to be withheld); *Cent. Admixture*, 482 F.3d 1356-57 (same).

With respect to each of its new allegations, CBOE's Proposed Amended Complaint "fails to identify which claims, and which limitations in those claims, the withheld references are relevant to, *and where in those references the material information is found*—i.e., the 'what' and 'where' of the material omissions." *Exergen*, 575 F.3d at 1327-29; *see Regents of Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1570 (Fed. Cir. 1997) ("Information is material if a reasonable examiner would have considered it important to the patentability of a <u>claim</u>." (emphasis added)); 37 C.F.R. § 1.56(a) ("The duty to disclose information exists with respect to each pending <u>claim</u> until the claim is cancelled or withdrawn from consideration, or the application becomes abandoned." (emphasis added)).  Incredibly, CBOE's Proposed Amended Complaint fails to identify a single claim that the allegedly withheld "rules of other exchanges" and "Project A document" are relevant to, and with respect to the OM Product Specification CBOE wholly ignores its obligation to disclose "where in [the OM Product Specifcation] reference the material information is found." *Exergen*, 575 F.3d at 1327-29.  Furthermore, with respect to each of its new allegations, CBOE's alleges that "[t]he applicants made arguments for patentability that could not have been made had the [reference] been disclosed" is likewise deficient.  D.I. 211-2 at ¶ 37, 41, and 41.  To the extent CBOE intends to rely upon any such arguments in support of materiality, it is required to identify them as part of its pleadings.  *Id.*  As such, CBOE's Proposed Amended Complaint is deficient under Fed. R. Civ. P. 9(b) and its motion is futile.

## CONCLUSION

CBOE's last-minute unveiling of unspecified and open-ended allegations of unethical behavior, dovetailed with of its request for an accelerated trial date for those hazy charges, is calculated to corner ISE into a situation where it must defend against a wide range of undefined possibilities on very short notice.  This whole episode is a textbook example of how such serious charges should <u>not</u> be pled and tried without strong supporting evidence.  CBOE's motion is dilatory and the amendment would be futile, and thus ISE moves for denial thereof.

LIBNY/4864424.1

Dated: November 18, 2009                    Respectfully submitted,


                                            /s/ Michael S. DeVincenzo
                                            Parker H. Bagley
                                            Steven R. Gustavson
                                            Michael S. DeVincenzo
                                            GOODWIN PROCTER LLP
                                            The New York Times Building
                                            620 Eighth Avenue
                                            New York, New York  10018
                                            Telephone No.:  (212) 813-8800
                                            Facsimile No.:   (212) 355-3333

                                            Michael D. Huber
                                            Cray Huber Horstman Heil & Van Ausdal LLC
                                            303 W Madison, Suite 2200
                                            Chicago, IL  60606
                                            Telephone No.:  (312) 332-8450
                                            Facsimile No.:   (312) 332-8451

                                            *Attorneys for Defendant International
                                            Securities Exchange, LLC*

LIBNY/4864424.1

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies pursuant to Fed.R.Civ.P. 5 and L.R. 5.5, that a true and correct copy of the foregoing document was filed on November 18, 2009 with the Clerk of the Court using the CM/ECF system, which will send notice to counsel of record.

<u>/s/ Michael S. DeVincenzo</u>
Michael S. DeVincenzo

17