# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

Chicago Board Options Exchange, Inc.,

      Plaintiff,

      v.

International Securities Exchange, LLC,

      Defendant.

Civil Action No. 07-cv-623

The Hon. Joan H. Lefkow, U.S.D.J.
The Hon. Jeffrey Cole, U.S.M.J.

## INTERNATIONAL SECURITIES EXCHANGE, LLC's MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT WITH RESPECT TO ALLEGATIONS IN CBOE'S PROPOSED AMENDED COMPLAINT

**TABLE OF CONTENTS**

PAGE

I.      INTRODUCTION.................................................................................................1

II.     SUMMARY JUDGMENT STANDARD .........................................................2

III.    INEQUITABLE CONDUCT STANDARD ......................................................2

IV.     CBOE'S ALLEGATIONS OF INEQUITABLE CONDUCT .......................4

V.      CBOE CANNOT PROVE INEQUITABLE CONDUCT BY CLEAR AND
        CONVINCING EVIDENCE WITH RESPECT TO THE OM PRODUCT
        SPECIFICATION...............................................................................................4

        A.      CBOE Cannot Prove by Clear and Convincing Evidence that Mr.
                Katz Intended to Deceive the PTO by Failing to Disclose the OM
                Product Specification.............................................................................4

        B.      CBOE Cannot Prove by Clear and Convincing Evidence that the OM
                Product Specification is Material to the Patentability of the '707
                Patent ......................................................................................................7

                1.      The OM Product Description is Not Prior Art to the Claims of
                        the '707 Patent............................................................................7

                2.      CBOE Lacks Clear and Convincing Evidence that the OM
                        Product Specification is Material to any Claim of the '707
                        Patent ...........................................................................................9

VI.     CBOE CANNOT PROVE INEQUITABLE CONDUCT BY CLEAR AND
        CONVINCING EVIDENCE WITH RESPECT TO THE UNIDENTIFIED
        "RULES OF OTHER EXCHANGES" ...........................................................11

        A.      CBOE Cannot Prove by Clear and Convincing Evidence that Mr.
                Katz and Ms. Simmons Intended to Deceive the PTO by Failing to
                Disclose the Unidentified Rules of Other Exchanges"........................11

        B.      CBOE Has Failed to Put Forth Clear and Convincing Evidence that
                CBOE Rule 8.80(c)(7) is Material to the '707 Patent .........................13

VII.    CBOE's ALLEGATIONS WITH RESPECT TO MR. LIEB ARE
        OBJECTIVELY BASELESS.............................................................................14

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).......................................................................................2

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
560 F.3d 1366 (Fed. Cir. 2009).......................................................................4

*AstraZeneca Pharms. LP v. Teva Pharms. USA, Inc.*,
583 F.3d 766 (Fed. Cir. 2009)................................................................3, 13, 15

*ATD Corp. v. Lydall, Inc.*,
159 F.3d 534 (Fed. Cir. 1998).......................................................................3

*Baxter Int'l, Inc. v. McGraw, Inc.*,
149 F.3d 1321 (Fed. Cir. 1998).....................................................................10

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).......................................................................................2

*Cent. Admixture Pharm. Servs., Inc. v. Advanced Cardiac Solutions*,
482 F.3d 1347 (Fed. Cir. 2007).....................................................................12

*Dimension One Spas, Inc. v. Coverplay, Inc.*,
2007 WL 2815042 (September 25, 2007, S.D.Cal. 2007).....................................11

*Dupuy, Inc. v. Zimmer Holdings, Inc.*,
343 F.Supp.2d 675 (N.D.Ill. 2004) ...............................................................12

*Environment Designs, Ltd. v. Union Co. of California*,
713 F.2d 693 (Fed. Cir. 1983)................................................................9, 14, 15

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
575 F.3d 1312 (Fed. Cir. 2009)............................................................... passim

*FMC Corp. v. Manitowoc Co., Inc.*,
835 F.2d 1411 (Fed.Cir.1987)....................................................................12, 13

*Graco Children's Products, Inc. v. Century Products*,
1996 WL 412966 (July 23, 1996 E.D. Pa.)......................................................8

ii

*Hebert v. Lisle Corp.*,
  99 F.3d 1109 (Fed. Cir. 1996)........................................................................4

*Hyatt v. Boone*,
  146 F.3d 1348 (Fed. Cir. 1998)......................................................................8

*In re Donaldson Company*,
  16 F.3d 1189 (Fed. Cir. 1994)......................................................................11

*Innogenetics, N.V. v. Abbott Labs.*,
  512 F.3d 1363 (Fed. Cir. 2008)......................................................................2

*Koito Manufacturing Co. Ltd. v. Turn-Key-Tech LLC*,
  381 F.3d 1142 (Fed. Cir. 2004)....................................................................10

*Larson Mfg. Co. of S.D. v. Aluminart Prods. Ltd.*,
  559 F.3d 1317 (Fed. Cir. 2009)....................................................................15

*M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co.*,
  439 F.3d 1335 (Fed. Cir. 2006)......................................................................4

*Multiform Desiccants, Inc. v. Medzam, Ltd.*,
  133 F.3d 1473 (Fed. Cir. 1998)......................................................................5

*Northern Telecom Inc. v. Datapoint Corp.*,
  908 F.2d 931 (Fed. Cir. 1990)...............................................................9, 14, 15

*Novartis Corp. v. Ben Venue Labs., Inc.*,
  271 F.3d 1043 (Fed. Cir. 2001)......................................................................3

*OddzOn Prods., Inc. v. Just Toys, Inc.*,
  122 F.3d 1396 (Fed. Cir. 1997)......................................................................7

*Pannu v. Iolab Corp.*,
  155 F.3d 1344 (Fed. Cir. 1998)......................................................................6

*Pfizer Inc., v. Teva Pharmaceuticals USA, Inc.*,
  454 F.Supp.2d 390 (D.N.J. 2007) ..................................................................9

*Regents of Univ. of Cal. v. Eli Lilly & Co.*,
  119 F.3d 1559 (Fed. Cir. 1997)...............................................................7, 10, 14

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*,
  537 F.3d 1357 (Fed. Cir. 2008)..................................................................3, 5

*Stewart-Warner Corp. v. City of Pontiac, Michigan*,
  767 F.2d 1563 (Fed. Cir. 1985)......................................................................8

iii

*Technology Licensing Corp. v. Videotek, Inc.*,
  545 F.3d 1316 (Fed. Cir. 2008)..................................................................................11

*Vandenberg v. Dairy Equip. Co.*,
  740 F.2d 1560 (Fed. Cir. 1985)....................................................................................5

*Warner-Lambert Co. v. Teva Pharms. USA, Inc.*,
  418 F.3d 1326 (Fed. Cir. 2005)....................................................................................2


STATUTES

37 C.F.R. § 1.56 .................................................................................................... passim

35 U.S.C. § 102 .........................................................................................................6, 7

35 U.S.C. § 103 .........................................................................................................7, 9

35 U.S.C. § 112 ...........................................................................................................11

FED. R. CIV. P. 56(c) .....................................................................................................2


OTHER AUTHORITIES

MANUAL OF PATENT EXAMINING PROCEDURES § 2004.18 (8th ed. 2008)....................................15

LIBNY/4863871.4

## I.    INTRODUCTION

After more than two years of discovery, Chicago Board Options Exchange, Inc. ("CBOE") has failed to unearth a shred of evidence to support its inequitable conduct allegations contained in the May 11, 2007 Amended Complaint.  In light of its total failure of proof and the objectively baseless nature of its original allegations, CBOE now attempts to add entirely new allegations of inequitable conduct, based upon entirely different references and theories as identified in its Proposed Amended Complaint.  As such, International Securities Exchange, LLC ("ISE") submits this memorandum in support of ISE's Cross-Motion for Summary Judgment of No Inequitable Conduct, in the event this Court permits CBOE to belatedly amend its pleadings.

With respect to CBOE's attempt to add new allegations concerning the OM Click Exchange Software, in general, and the OM Product Specification in particular, the specification of the Patent-in-suit specifically discloses that "the exchange 1 is implemented on an Open VMS system running the OM Click Exchange™ software manufactured by OM Technology AB," and the prosecution history indicates that ISE's "system is based on the OM Click Exchange, supplied by OM Technology."  *See* S.O.F. ¶¶ 22, 25.[1]  This explicit disclosure of the OM Click Exchange renders CBOE's assertion that this Court should infer Mr. Katz's intent to deceive as to this reference completely illogical and fundamentally unsupportable.  Furthermore, contractual agreements between ISE and OM Technology demonstrate that, as a matter of law, the OM Product Description may not be used to invalidate any claim of the '707 Patent, rendering CBOE's allegations of materiality similarly unsupportable.

CBOE's new allegations concerning unidentified "rules of other exchanges" are likewise unsupported by evidence.  CBOE, in its Proposed Amended Complaint, fails to identify any specific rule of any specific exchange, let alone how such rule was material to the prosecution of the '707 Patent.  Furthermore, with respect to the only rule specifically identified in CBOE's earlier Motion for a Bench Trial on Inequitable Conduct, (D.I. 183, "CBOE's Motion for a Bench Trial"), there is no evidence to support CBOE's allegation that Mr. Katz was even aware of such rule.  Kathy Simmons', ISE's in-house regulatory counsel, mere indication that she "would have looked at these trading rules of CBOE" is insufficient as a matter of law to sustain

---

[1] "S.O.F. __" refers to the statement of uncontested material facts in support of ISE's Cross-Motion For Summary Judgment Of No Inequitable Conduct with Respect to Allegations in CBOE's Proposed Amended Complaint.

LIBNY/4863871.4

CBOE's burden to prove by clear and convincing evidence that Ms. Simmons intended to deceive the patent office.  *See* S.O.F. ¶ 42; *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1330 (Fed. Cir. 2009) ("One cannot assume that an individual who generally knew that a reference existed, also knew of the specific material information contained in a reference.").

Lastly, CBOE's new allegations with respect to ISE's outside patent counsel Stephen Lieb are particularly egregious.  CBOE asks this Court to "presume" that (a) an undated document describing CBOT's Project A, relating to the trading of futures, would be material to patentability and (b) Mr. Lieb intentionally attempted to deceive the examiner by failing to disclose this document.  CBOE again fails to adequately describe how this reference is supposedly material, and wholly ignores ████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████  *See* S.O.F. ¶¶ 46-48.

## II.     SUMMARY JUDGMENT STANDARD

"[S]ummary judgment must be granted when, drawing all reasonable inferences in favor of the non-movant, there is no genuine issue as to any material fact and no reasonable jury could return a verdict for the non-movant."  *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1378 (Fed. Cir. 2008); *see also* FED. R. CIV. P. 56(c).  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden."  *Id.* at 254.  Thus, where the non-moving party's evidentiary burden is "clear and convincing evidence," that standard of proof must be taken into account when ruling on a motion for summary judgment.  *Id.* at 255.  Moreover, where the non-movant bears the burden of proof on the issue, "[t]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case . . . ."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.    INEQUITABLE CONDUCT STANDARD

Inventors, their attorneys and others substantively involved in the prosecution of a patent have a duty of candor to the PTO.  37 C.F.R. § 1.56.  "Inequitable conduct occurs when a patentee breaches his or her duty to the PTO of 'candor, good faith, and honesty.'"  *Warner-*

*Lambert Co. v. Teva Pharms. USA, Inc.*, 418 F.3d 1326, 1342 (Fed. Cir. 2005) (citation omitted). "The duty to disclose all information known to be material to patentability is deemed to be satisfied if all information known to be material to patentability of **any claim issued** in a patent was cited by the Office or submitted to the Office …" (emphasis added). 37 C.F.R. § 1.56. To successfully prove inequitable conduct, the accused infringer must present evidence that the applicant (1) made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information, and (2) intended to deceive the PTO. *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008). Further, a threshold level of both materiality and intent to deceive must be proven by clear and convincing evidence. *Id.* at 1365. If a party meets its elevated evidentiary burden for both elements, the district court must still balance the equities to determine whether the applicant's conduct before the PTO was egregious enough to warrant holding the entire patent unenforceable. *Id.* Thus, even if a threshold level of both materiality and intent to deceive are proven by clear and convincing evidence, the court may still decline to render the patent unenforceable. *Id.*

"Summary judgment must be granted against a party who has failed to introduce evidence sufficient to establish the existence of an essential element of that party's case, on which the party will bear the burden of proof at trial." *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001). This is particularly true in inequitable conduct cases, where the "need to strictly enforce the burden of proof and elevated standard of proof in the inequitable conduct context is paramount because the penalty for inequitable conduct is so severe." *Star Scientific*, 537 F.3d at 1365; *see also AstraZeneca Pharms. LP v. Teva Pharms. USA, Inc.*, 583 F.3d 766, 776-77 (Fed. Cir. 2009) (affirming grant of summary judgment of no inequitable conduct); *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 547 (Fed. Cir. 1998) (same). Thus, a moving party seeking to defeat an inequitable conduct claim at summary judgment must show that the non-moving party, who bears the burden of proof at trial, failed to produce clear and convincing evidence on an essential element of that defense. *See, e.g., AstraZeneca*, 583 F.3d at 773. Unlike the typical case in which Courts are hesitant to grant summary judgment where intent is an element, because of the heightened burden of proving "intent to deceive" by clear and convincing evidence, district courts regularly grant and the Federal Circuit regularly affirms summary judgment of no inequitable conduct. *See Star Scientific*, 537 F.3d at 1367 (If "intent to deceive … is not established by clear and convincing evidence, the district court does

3

not have any discretion to exercise and cannot hold the patent unenforceable regardless of the relative equities or how it might balance them."); *see also*, ISE's Memorandum in Support of its Motion for Summary Judgment of No Inequitable Conduct With Respect to Allegations in CBOE's Operative Complaint dated November 18, 2009, at 6-8.

## IV.   CBOE'S ALLEGATIONS OF INEQUITABLE CONDUCT

Following completion of fact and expert discovery concerning inequitable conduct, on November 4, 2009, CBOE filed a Proposed Amended Complaint seeking to add three new allegations of inequitable conduct, and to remove the allegations contained in its previous complaint. S.O.F. ¶¶ 13-17. These three new allegations are: 1) That Mr. Katz committed fraud on the PTO by intentionally failing to disclose a document entitled "[t]he OM Click Exchange Software Product Description" (the "OM Product Description"), S.O.F. ¶ 15; 2) That Mr. Katz and Ms. Simmons committed fraud on the PTO by intentionally failing to disclose unidentified "rules of other exchanges," S.O.F. ¶ 16; and 3) That Mr. Lieb committed fraud on the PTO by intentionally failing to disclose an unidentified "Project A document," S.O.F. ¶ 17.

## V.   CBOE CANNOT PROVE INEQUITABLE CONDUCT BY CLEAR AND CONVINCING EVIDENCE WITH RESPECT TO THE OM PRODUCT SPECIFICATION

### A.   CBOE Cannot Prove by Clear and Convincing Evidence that Mr. Katz Intended to Deceive the PTO by Failing to Disclose the OM Product Specification

CBOE's allegation in the Proposed Amended Complaint concerning an alleged intentional failure to disclose the OM Product Specification is baseless. The law has been well-settled by the Federal Circuit Court of Appeals that "[i]ntent to deceive cannot be inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent." *M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co.*, 439 F.3d 1335, 1340 (Fed. Cir. 2006); *see Hebert v. Lisle Corp.*, 99 F.3d 1109, 1116 (Fed. Cir. 1996) (same). Here, CBOE fails to identify any evidentiary basis indicating that the non-disclosure of the OM Product Specification was done by Mr. Katz with the specific and deliberate intent to deceive the PTO. *See Ariad Pharms., Inc. v. Eli Lilly & Co.*, 560 F.3d 1366, 1378 (Fed. Cir. 2009) ("such evidence must be clear and convincing, and inferences drawn from lesser evidence cannot satisfy the deceptive intent requirement.") Accordingly, "no inference can be drawn if there is no evidence, direct or indirect, that can support the inference. [The moving party's] lack of any

LIBNY/4863871.4

evidence at all on the crux of its theory, let alone clear and convincing evidence, demonstrates that it failed to carry its burden." *Star Scientific*, 537 F.3d at 1368; *see Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1482 (Fed. Cir. 1998).

CBOE requests that this Court "infer" the necessary intent to deceive because Mr. Katz allegedly failed to disclose to the PTO that the exchange of the '707 Patent was "based upon" the OM Click Exchange Software.  D.I. at 211 at 17.  This incredible statement ignores that ISE did disclose the OM Click Exchange software to the PTO.  In fact, the examiner was expressly informed of the OM Click Exchange software, that such software was used for the '707 Patent, and that ISE's commercial embodiment of the '707 Patent was "based on" the OM Click Exchange software.  The specification of the '707 Patent states:

> According to one embodiment of the invention, data is exchanged with the exchange 1 using OMnet™ API software manufactured by OM Technology AB of Stockholm, Sweden . . . . the exchange 1 is implemented on an Open VMS system running the OM Click Exchange software manufactured by OM Technology AB.

S.O.F. ¶ 22.  Similarly, during prosecution of the '707 Patent, Mr. Katz submitted a declaration to the U.S. Patent and Trademark Office ("USPTO").  S.O.F. ¶ 23.  As part of this declaration, Mr. Katz attached articles explaining that ISE "selected OM to develop its trading system software," ISE's "system is based on the OM Click Exchange, supplied by OM Technology," and ISE's system was "jointly developed by ISE and Sweden's financial technology leader OM," and  S.O.F. ¶ 25-27.  Therefore, the fact that Mr. Katz disclosed the OM Click Exchange software and the fact that ISE's system was "based on" such software to the PTO cannot not be in dispute.  *Id.*  Mr. Katz's specific identification of the OM Click Exchange software in both the specification of the '707 Patent, and in three separate articles during the prosecution with the PTO, renders CBOE's suggestion that "intent" can be inferred simply implausible.  *Vandenberg v. Dairy Equip. Co.,* 740 F.2d 1560, 1568 (Fed. Cir. 1985) (finding identification of device in specification "inconsistent with intent to perpetuate fraud on the PTO").  It is simply not reasonable to suggest, as CBOE does, that someone intending to deceive the PTO by withholding information concerning the OM Click Exchange software would disclose (a) the existence of the software to the PTO, (b) the further fact that the "exchange 1 is implemented on … [a] system running the OM Click Exchange software" and (c) that the ISE system is "based on" the OM Click Exchange software. *See Star Scientific*, 537 F.3d at 1366 (summary judgment is required

unless intent to deceive is "the single most reasonable inference able to be drawn from the evidence.")

Furthermore, the suggestion that this Court can "infer" that Mr. Katz intended to deceive the patent office by illegitimately acquiring claims that cover the subject matter of the OM Product Specification are utterly illogical in light of the agreements between ISE and OM Technology. ███████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████. It logically follows that, even if CBOE could demonstrate that the OM Product Description was material prior art to a claim of the '707 Patent under 35 U.S.C. § 102(f) or 35 U.S.C. § 103—which it cannot—there would be no motivation to conceal OM Technology's involvement, as ████████████████████ *See Pannu v. Iolab Corp.*, 155 F.3d 1344 (Fed. Cir. 1998) (finding that invalidity under 35 U.S.C. § 102(f) is a technical defect that can be readily cured.)  Consistent with the parties' agreement, an employee of OM Technology was identified as an inventor on two other contemporaneous applications, and rights to those inventions were assigned to ISE.  S.O.F. ¶ 36-37 (Mr. Tilfors, identified as an inventor on each of these U.S. Patents, was an employee of OM Technology.)  In contrast to the other applications, and consistent with Mr. Katz's belief that he was the sole inventor of the '707 Patent, ███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████. S.O.F. ¶ 34.  CBOE took the 30(b)(6) deposition of OM Technology during discovery and no testimony was adduced which would support CBOE's specious claims.

Finally, the Federal Circuit has recently emphasized that, to sustain an inequitable-conduct defense even at the pleading stage, the inference of intent "must be 'the single most reasonable inference able to be drawn from the evidence to meet the clear and convincing standard.'" *Exergen*, 575 F.3d at 1329 (quoting *Star Scientific*, 537 F.3d at 1366).  The reasonableness of Mr. Katz's and OM Technology's belief that Mr. Katz was the sole inventor of the '707 Patent cannot be overcome by the mere requested inferences.  The '707 Patent discloses twenty-one detailed algorithms concerning the matching and allocating of previously received

orders.  *See* S.O.F ¶ 9.  None of the algorithms disclosed in these figures are disclosed in the OM Product Specification.  *Compare* S.O.F ¶¶ 9, 19.  In fact, as indicated by Mr. Katz, the OM Product Specification did not even distinguish between customer and professional orders.  S.O.F. ¶ 20.  Yet CBOE argues that this Court should infer Mr. Katz intended to deceive the patent office because the OM Product Specification is allegedly material to one of the sixty-seven originally filed claims, which claim was later amended.  D.I. 183 at 9-11.  Against this factual backdrop, an intent to deceive is the single most *unreasonable* inference to be drawn from the evidence, and CBOE's belated allegations should be dismissed.

**B.     CBOE Cannot Prove by Clear and Convincing Evidence that the OM Product Specification is Material to the Patentability of the '707 Patent**

**1.     The OM Product Description is Not Prior Art to the Claims of the '707 Patent**

CBOE's entire theory of materiality concerning the OM Product Specification rests on the mistaken presumption that the OM Product Specification is prior art to the claims of the '707 Patent.  *See* D.I. 183 at 11 (noting that the "September 1996 OM Click Exchange Product Description is withheld prior art.").[2]  CBOE alleges that the OM Product Specification qualifies as prior art under 35 U.S.C. § 102(f) and is material to the issued claims under 35 U.S.C. § 103.[3]  D.I. 183 at 17.  However, pursuant to 35 U.S.C. § 103(c) the OM Product Specification can not be utilized as prior art against the '707 patent under 35 U.S.C. § 103.  35 U.S.C. § 103(c) states:

> Subject matter developed by another person, which qualifies as prior art only under one or more of subsections (e), (f), and (g) of section 102 of this title, shall not preclude patentability under this section where the subject matter and the claimed invention were, at the time the claimed invention was made, owned by

---

[2] There is no requirement that one submit to the examiner the starting point of one's invention where it would not be material to the patentability of the claims, *i.e.*, prior art that may be used as the basis for a rejection.  *See OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1403 (Fed. Cir. 1997) (summarily dismissing allegations of inequitable conduct based upon reasonable dispute over whether withheld prior art under 35 U.S.C. § 102(f)  was prior art for purposes of rejection under 35 U.S.C. § 103); See *Regents of Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1570 (Fed. Cir. 1997) ("Information is material if a reasonable examiner would have considered it important to the **patentability of a claim**." (emphasis added)); 37 C.F.R. § 1.56(a) ("**The duty to disclose information exists with respect to each pending claim** until the claim is cancelled or withdrawn from consideration ..." (emphasis added)).

[3] CBOE's anticipation argument with respect to 35 U.S.C. § 102(f) only concerns originally filed claim 1.  However, as detailed below, CBOE's allegations concerning originally filed claim 1 cannot form the basis for a finding of materiality.  37 C.F.R. § 1.56(a) (""The duty to disclose all information known to be material to patentability is deemed to be satisfied if all information known to be material to patentability of **any claim issued** in a patent was cited by the Office or submitted to the Office …") (emphasis added).

7

<u>the same person or subject to an obligation of assignment to the same person</u>.

(emphasis added).  An invention is considered "made" at the time the invention is reduced to practice.  *See Graco Children's Products, Inc. v. Century Products Co.*, No. 93-6710, 1996 WL 412966, *18, (E.D. Pa. July 23, 1996); *Stewart-Warner Corp. v. City of Pontiac, Michigan*, 767 F.2d 1563, 1570 (Fed. Cir. 1985).  Reduction to practice may be an actual reduction or a constructive reduction to practice which occurs when a patent application on the claimed invention is filed.  *See Hyatt v. Boone*, 146 F.3d 1348, 1352 (Fed. Cir. 1998).  Here, constructive reduction to practice took place either on November 3, 1998, the filing date of provisional application no. 60/106,935, or on November 2, 1999, the date the original application was filed. Actual reduction to practice took place in 2000.  S.O.F. ¶¶ 7-8. ███████████████

████████████████████████████████████████████████████████

████████████████████████   See S.O.F. ¶¶ 31-35.  CBOE has adduced no evidence disputing the fact that on the date of constructive reduction to practice—either November 3, 1998 or November 2, 1999— ████████████████████████████████████████

████████████████████████████████.

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████   S.O.F. ¶ 29. ██████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████   S.O.F. ¶ 31. ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████   S.O.F. at ¶¶ 35 ██████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████



S.O.F. ¶¶ 31-35.

S.O.F. ¶ 35.  Accordingly, at all relevant periods of time after execution of the DLA, the subject matter that led to the '707 Patent, including any subject matter contained in the OM Product Specification was subject to an obligation of assignment to the same party, and the OM Product Specification is, therefore, not prior art that may be used for the purposes of a rejection under 35 U.S.C. § 103.  *See* 35 U.S.C. § 103(c).

CBOE's theory of materiality with respect to the issued claims of the '707 Patent is based solely upon the argument that the OM Product Specification is prior art that may be used to invalidate the issued claims under 35 U.S.C. § 103.  As the OM Product Specification is not prior art for this purpose, it is "not material to patentability" under 35 U.S.C. § 103.  *See Northern Telecom Inc. v. Datapoint Corp.*, 908 F.2d 931, 940 (Fed. Cir. 1990); *Environment Designs, Ltd. v. Union Co. of California*, 713 F.2d 693, 698 (Fed. Cir. 1983) ("Withheld information must be material, a condition we find here lacking. The disclosure not being prior art, it would not have been material to the patentability of the Beavon process.").[4]

### 2. CBOE Lacks Clear and Convincing Evidence that the OM Product Specification is Material to any Claim of the '707 Patent

CBOE's argument of materiality with respect to the OM Product Specification can be summarily rejected as well because CBOE has failed to present any evidence, let alone clear and convincing evidence, of why the OM Specification would be material to a claim of the '707 patent.  37 C.F.R. § 1.56(a) states:

---

[4] "By definition … information is only material if it is likely that a reasonable examiner would consider it important to patentability for some reason, and [CBOE] has offered no explanation of how the common content could possibly be relevant to patentability if it is not prior art." *Pfizer Inc., v. Teva Pharmaceuticals USA, Inc.*, 454 F.Supp.2d 390, 454-55 (D.N.J. 2007) (recognizing that in limited circumstances materials that are not "prior art" may be material to patentability but finding that for purposes of 35 U.S.C. § 103 such limited circumstances do not apply).

9

"The duty to disclose all information known to be material to patentability is deemed to be satisfied if all information known to be material to patentability of **any claim issued** in a patent was cited by the Office or submitted to the Office …"[5].

CBOE's assertion that the product description is "highly material to the issued claims (e.g., claims 1 and 35)," (D.I. 183 at 17), is unsupported by a single fact citation and is attorney argument, not evidence.  CBOE was required to disclose expert opinion evidence concerning inequitable conduct on October 14, 2009 and, despite this, CBOE has failed to put forth any evidence or opinion testimony concerning what is disclosed in the OM Product Specification and how such disclosure would relate to issued claims 1 and 35.  There is simply no evidence that the OM Product Specification is "material" to an issued claim of the '707 Patent—that it "[i]t alone or in combination with other information, presents a *prima facie* case of unpatentability of a claim." *See, e.g, Exergen*, 575 F.3d at 1327-29 (dismissing pleading which "which fail[ed] to identify which claims, and which limitations in those claims, the withheld references are relevant to, and *where in those references the material information is found*"); *Regents of Univ. of Cal.*, 119 F.3d at 1571 (reasonable examiner standard requires importance to the "patentability of a claim.").

In addition to ignoring the issued claims, CBOE lacks sufficient evidence to support any finding by clear and convincing evidence that the OM Product Specification is material because it anticipates originally filed claim 1.  "Typically, testimony concerning anticipation must be from one skilled in the art and must identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference."  *See Koito Manufacturing Co. Ltd. v. Turn-Key-Tech LLC*, 381 F.3d 1142, 1145 (Fed. Cir. 2004).  CBOE's entire evidence of materiality with respect to originally filed claim 1 is based upon the testimony of Mr. Katz, who unequivocally indicated that the "system memory means" and the "processor means" allocation in the '707 Patent were "different" than the elements in the OM Product Specification.  S.O.F. ¶ 28.  Mr. Katz further did not offer expert testimony and neither provided nor applied any construction to the means-plus

---

[5] The old rule, which was in affect for patents filed prior to January 1992, and which is relied on by CBOE, required disclosure of information "material to the examination of the application" in order for one to satisfy the duty of disclosure.  37 C.F.R. § 1.56 (1989); *see Baxter Int'l, Inc. v. McGraw, Inc.*, 149 F.3d 1321, 1328 (Fed. Cir. 1998) (recognizing change in rule for materiality purposes).

LIBNY/4863871.4

function elements let alone the proper construction.[6]  As CBOE has proffered no additional evidence concerning the application of the claims of the '707 Patent to the OM Product Specification, CBOE's evidence is insufficient to support a finding of materiality.

Lastly, CBOE has put forth no evidence, let alone clear and convincing evidence, concerning why the OM Product Specification would not be cumulative to the prior art that was before the examiner.  *See* 37 C.F.R. § 1.56(b); *Dimension One Spas, Inc. v. Coverplay, Inc.*, 2007 WL 2815042, *4-*5 (September 25, 2007, S.D.Cal. 2007) (burden on one asserting inequitable conduct to prove by clear and convincing evidence that identified reference is not cumulative).  In an office action dated January 4, 2001, the PTO rejected originally filed claims 1, 2, 35 and 36 and found that the prior art of record suggested each of the elements contained in these claims.  S.O.F. ¶ 11.  Although applicants attempted to distinguish the prior art of record on a number of grounds, the PTO found each of those arguments unpersuasive, and rejected the claims until, on August 2, 2002, ISE amended the claims and added various limitations which resulted in claim 1 reading as it does today.  S.O.F. ¶¶ 11-12.  These added limitations are not found in the OM Product Specification.  S.O.F. ¶ 12.  As such, even if CBOE could point to clear and convincing evidence that the OM Product Specification discloses each of the elements of originally filed claim 1–which it cannot–this alleged fact would merely render the OM Product Specification cumulative to the references that were before the examiner.  *See Technology Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1336-37 (Fed. Cir. 2008) (rejecting argument that "an anticipatory prior art reference is material as a matter of law, regardless of whether it was cumulative to other prior art of record in the patent application.").

## VI.    CBOE CANNOT PROVE INEQUITABLE CONDUCT BY CLEAR AND CONVINCING EVIDENCE WITH RESPECT TO THE UNIDENTIFIED "RULES OF OTHER EXCHANGES"

### A.    CBOE Cannot Prove by Clear and Convincing Evidence that Mr. Katz and Ms. Simmons Intended to Deceive the PTO by Failing to Disclose the Unidentified Rules of Other Exchanges"

The Federal Circuit requires more evidence and specificity at the *pleading* stage of an

---

[6] The Federal Circuit has specifically rejected the argument proposed by CBOE that the "broadest reasonable interpretation" does not require a construction of the identified means-plus-function elements. *See In re Donaldson Company*, 16 F.3d 1189, 1194-5 (Fed. Cir. 1994) (finding that the "broadest reasonable interpretation" of a means-plus-function term is that statutorily mandated by 35 U.S.C. § 112, ¶ 6, and no broader).

inequitable conduct defense than CBOE is able to introduce after full discovery on the issue of Mr. Katz's and Ms. Simmons' alleged failures to disclosure the "rules of other exchanges." Under the heightened pleading standard, general allegations that applicants where aware of prior art are insufficient where the pleadings "did not identify the *specific prior art* that was allegedly known to the applicant and not disclosed." *Exergen*, 575 F.3d at 1328 (emphasis added); *Cent. Admixture Pharm. Servs., Inc. v. Advanced Cardiac Solutions*, 482 F.3d 1347, 1356-57 (Fed. Cir. 2007). Not only must "specific prior art" be identified but "a reference may be many pages long . . . [and] one cannot assume that an individual who generally knew that a reference existed, also knew of the specific material information contained in a reference." *See Exergen*, 575 F.3d at 1328*; FMC Corp. v. Manitowoc Co., Inc.*, 835 F.2d 1411, 1415 (Fed.Cir.1987).

With respect to Mr. Katz, CBOE's Proposed Amended Complaint, CBOE's Memorandum for a Bench Trial on Inequitable Conduct, and CBOE's Interrogatory answers all fail to identify a single rule of a single exchange of which Mr. Katz was even allegedly aware of. S.O.F. ¶ 40; D.I. 183. Furthermore, despite deposing Mr. Katz for three days, CBOE did not introduce a single rule of a single exchange at Mr. Katz's depositions. S.O.F. ¶ 38. There is simply no evidence to support (a) the allegation that Mr. Katz was actually aware of any particular rule of a particular exchange and of the materiality of any such rule, (b) and intentionally withheld such rule with the intent to deceive the patent office. As such, CBOE's allegations of inequitable conduct with respect to Mr. Katz's failure to disclose "rules of other exchanges" must be dismissed. *See Id.*; *Dupuy, Inc. v. Zimmer Holdings, Inc.*, 343 F.Supp.2d 675, 683 (N.D.Ill. 2004) (finding lack of evidence of "actual knowledge" dispositive for purposes of summary judgment of no inequitable conduct).

With respect to Ms. Simmons, although CBOE has included no specific allegations of inequitable conduct regarding the rules of any specific exchanges in its Proposed Amended Complaint, in its Motion for a Separate Bench Trial on Inequitable Conduct CBOE identifies just one specific rule—Rule 8.80(c)(7) from CBOE's February 1997 "Constitution and Rules"—as allegedly known to Ms. Simmons. D.I. 183 at 13-14.

The entirety of CBOE's evidence concerning Ms. Simmons' knowledge of Rule 8.80(c)(7), knowledge of its materiality, and her intent to deceive the patent office is her statement that "[I] would have looked at these trading rules of CBOE." S.O.F. ¶¶ 41-42. Based upon this alleged "admission," CBOE asks the Court to presume (a) that Ms. Simmons recalled

12

the substance of Rule 8.80(c)(7) from CBOE's constitution, one of dozens of operative rules, (b) that she knew it was material to the patentability of the '707 Patent and (c) that she intentionally deceived the patent office by failing to disclose such rule. CBOE's effort to pile presumption upon presumption cannot sustain its burden of proving inequitable conduct. It is black letter law that "[o]ne cannot assume that an individual who generally knew that a reference existed, also knew of the specific material information contained in a reference." *See Exergen*, 575 F.3d at 1328; *FMC Corp.*, 835 F.2d at 1415.

In an attempt to manufacture evidence that Ms. Simmons knew of the materiality of CBOE Rule 8.80(c)(7), CBOE relies upon a general statement ████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████ Instead, CBOE argues in effect that this general statement can be used to draw an inference that an "intent to deceive" exists with respect to every trading rule on all existing exchanges that Ms. Simmons' was aware. This is improper. *See Exergen*, 575 F.3d at 1328; *FMC Corp.*, 835 F.2d at 1415.

Secondly, Ms. Simmons testified in her deposition that the statement in question referred to regulatory and non-technical rules, as opposed to trading rules. S.O.F. ¶ 44. Indeed, Ms. Simmons went on to indicate that the trading rules "were unique comparative to other exchanges." S.O.F. ¶ 44. Thus, the evidence demonstrates that to the extent individuals at ISE referred to "minimiz[ing] the difference" between the rules of existing exchanges it had nothing to do with CBOE Rule 8.80(c)(7). *See AstraZeneca*, 583 F.3d at 777 (holding inequitable-conduct claim is not viable when record showed "no evidence or suggestion of deceptive intent, other than the fact that [ ] information was not provided.").

### B.     CBOE Has Failed to Put Forth Clear and Convincing Evidence that CBOE Rule 8.80(c)(7) is Material to the '707 Patent

There is no evidence, let alone clear and convincing evidence, that CBOE Rule 8.80(c)(7) is material to the patentability of any claim of the '707 Patent. Rule 8.80(c)(7) states:

> In executing transactions **for his own account as market-maker**, the DPM shall (i) accord priority to orders he presents on as floor broker **over his activities as market maker**, (ii) have a right to participate pro rata with the trading crowd in trades that take place at the DPM's principal bid or offer …"

D.I. 183 at 13 n.14. The only evidence concerning the materiality of this rule comes from the

testimony of Ms. Simmons.  She testified that it is not a "priority rule" of an exchange, but a "rule of agency."  Specifically, Ms. Simmons stated that "[t]here is public execution priority on the exchange level and then there are rules that talk about how individuals members have to act. This is about an individual member giving priority to any agency order."  S.O.F. ¶ 43.

Through fact and expert discovery CBOE has adduced no evidence that could support the proposition that CBOE Rule 8.80(c)(7) is an allocating parameter for an automated exchange, let alone evidence that it would be applied to allocating among previously received customer and professional orders stored in a book memory, as required by the claims of the '707 Patent.  The only evidence adduced to date demonstrates that CBOE Rule 8.80(c)(7) on its face has no bearing on the materiality of the '707 Patent, in the absence of some evidence of its relationship to an issued claim of the '707 Patent there can be no finding of materiality.  *See Regents of Univ. of Cal.*, 119 F.3d at 1570 ("Information is material if a reasonable examiner would have considered it important to the patentability of a **claim**." (emphasis added))

## VII.  CBOE's ALLEGATIONS WITH RESPECT TO MR. LIEB ARE OBJECTIVELY BASELESS

CBOE's assertion of unethical conduct with respect to the Project A document[7] proves to be unfounded.  CBOE neither provides evidence of materiality—concerning the patentability of any claim of the '707 Patent— nor provides any evidence of intent to deceive on the part of Mr. Lieb.  As initial matters, there is no evidence that the Project A document is prior art to the '707 Patent, or that Mr. Lieb was aware that it was prior art to the '707 Patent.  Rather, the evidence shows that the ████████████████████████████████████████████████████ ████████████████████████████████████ S.O.F. ¶¶ 46-47.  Moreover, CBOE has identified no evidence indicating that the Project A document is prior art, having declined to take the deposition of CBOT, located adjacent to CBOE.  *See Northern Telecom*, 908 F.2d at 940; *Environment Designs*, 713 F.2d at 698 ("The disclosure not being prior art, it would not have been material to the patentability of the Beavon process.").

In this case, despite the fact that the Project A document was undated, ████████████ ███████████████████████████████████████████████████████████████ ████████████████████████████████████████.O.F. ¶ 47-48.

---

[7] ISE presumes that the cursorily referenced document in CBOE's Proposed Amended Complaint is the one discussed in CBOE's Motion for a Bench Trial on Inequitable Conduct.  D.I. 183 at 14-15.

14

Specifically, 

.O.F. ¶ 48.

. CBOE's patent law expert Mr. Adelman does not even address the subject.

CBOE also fails to establish intent to deceive. "Given the ease with which a relatively routine act of patent prosecution can be portrayed as intended to mislead or deceive, clear and convincing evidence of conduct sufficient to support an inference of culpable intent is required." *See Northern Telecom*, 908 F.2d at 939.  To avoid such unfounded allegations, The Manual of Patent Examining Procedures ("MPEP") provides that "if information was specifically considered and discarded as not material, this fact might be recorded in an attorney's files . . . . If judgment might have been bad or something might have been overlooked inadvertently, a note at the time of evaluation might be an invaluable aid in explaining that the mistake was honest and excusable." MANUAL OF PATENT EXAMINING PROCEDURES § 2004.18 (8th ed. 2008).

48.  In such circumstances, the mere fact that Mr. Lieb did not disclose the Project A document is grossly insufficient to support a finding of intent to deceive, without some evidence other than Mr. Lieb's

*S*ee *AstraZeneca*, 583 F.3d at 777 (holding inequitable-conduct claim was not viable when record showed "no evidence or suggestion of deceptive intent, other than the fact that [ ] information was not provided" and finding that "[t]he law is clear inequitable conduct requires intent to deceive not intent to withhold"); *Larson Mfg. Co. of S.D. v. Aluminart Prods. Ltd.*, 559 F.3d 1317, 1340 (Fed. Cir. 2009).

## VIII.   Conclusion

For the reasons set forth herein, ISE's Cross-Motion for summary judgment of no inequitable conduct with respect to the allegations contained in the Proposed Amended Complaint should be granted, in the event this Court permits CBOE to belatedly amend its pleadings.  CBOE's latest crop of ethical allegations is as unfounded as its original crop, which has been tossed aside after having served its purpose of keeping the issue of inequitable conduct on the table, while CBOE came up with something, anything, to actually attempt to go to trial on.

15

Dated:  November 18, 2009                    Respectfully submitted,


                                             /s/ Michael S. DeVincenzo
                                             Parker H. Bagley
                                             Steven R. Gustavson
                                             Michael S. DeVincenzo
                                             GOODWIN PROCTER LLP
                                             The New York Times Building
                                             620 Eighth Avenue
                                             New York, New York  10018
                                             Telephone No.:  (212) 813-8800
                                             Facsimile No.:   (212) 355-3333

                                             Michael D. Huber
                                             Cray Huber Horstman Heil & Van Ausdal LLC
                                             303 W Madison, Suite 2200
                                             Chicago, IL  60606
                                             Telephone No.:  (312) 332-8450
                                             Facsimile No.:   (312) 332-8451

                                             *Attorneys for Defendant International
                                             Securities Exchange, LLC*

16

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies pursuant to Fed.R.Civ.P. 5 and L.R. 5.5, that a true and correct copy of the foregoing document was filed on November 18, 2009 with the Clerk of the Court using the CM/ECF system, which will send notice to counsel of record.

/s/ Michael S. DeVincenzo
Michael S. DeVincenzo