UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO BOARD OPTIONS EXCHANGE, INCORPORATED, <br><br> Plaintiff, <br><br> v. <br><br> INTERNATIONAL SECURITIES EXCHANGE, LLC, <br><br><br> Defendant. | Case No. 07-cv-00623 <br><br> Hon. Joan H. Lefkow, U.S.D.J. <br> Hon. Jeffrey Cole, U.S.M.J. |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR CLARIFICATION

Plaintiff Chicago Board Options Exchange, Incorporated ("CBOE") hereby opposes the Motion for Clarification (D.I. 288) submitted by Defendant International Securities, Inc. ("ISE") on January 29, 2010.

## I. **Introduction**

The Court construed the term "automated exchange" in the phrase "automated exchange for trading a financial instrument" to mean "a fully computerized exchange in which no matching or allocating is performed manually in open outcry." D.I. 286.

ISE does not seek clarification of that construction. Rather, ISE now seeks to have the Court change the construction of the term "automated exchange" to a "fully computerized system which automatically matches and allocates trades without the use of open outcry." D.I. 290 at 7.[1] CBOE opposes ISE's proposed modification.

---

[1] Because ISE's motion explicitly requests the Court to change its ruling, it is merely a disguised Motion for Reconsideration. ISE's motion falls far short of meeting the high standard required for reconsideration, pointing to neither manifest errors of law or fact nor to newly discovered evidence. "This court's orders are not mere first drafts, subject to revision and reconsideration at a litigant's

The Court should deny ISE's motion because ISE's proposed change is in direct conflict with this Court's claim construction of the term "automated exchange" and because ISE's argument in support is based on a false premise.

The false premise is that the parties <u>agreed</u> that the term "exchange" was synonymous with the term "system."[2]  To the contrary, the testimony of CBOE's expert Dr. Steil and the testimony of ISE's own expert Dr. Ma was that the terms "exchange" and "<u>trading</u> system" were synonymous.  There was never any testimony by any witness, much less an agreement by the parties, that the term "exchange" was synonymous with the term "system."

ISE now attempts to set up a straw man argument that the Court <u>must</u> decide which term ("registered exchange" or "system") is applicable to the claim construction.  Neither construction is appropriate.  Substituting "registered exchange" for "exchange" narrows the claims in a manner not advocated by either party.  In fact, this construction would, contrary to the explicit wording of the '707 patent (col. 7:29-31), limit its scope to exchanges that have been registered

---

pleasure." *Trustmark Ins. Co. v. General Cologne Life Reinsurance of Am.*, No. 00-C-1926, 2002 U.S. Dist. LEXIS 9871, at *2-3 (N.D. Ill. May 23, 2002), *aff'd* 424 F.3d 542 (7th Cir. 2005). Rather, motions to reconsider will only be granted "in a narrow set of circumstances," Judge Lefkow's Case Management Procedures, Motion Practice, available at http://www.ilnd.uscourts.gov/home/Print_JudgePage.aspx, such as "to correct manifest errors of law or fact or to present newly discovered evidence," or to notify the court when it "has patently misunderstood a party, or has made a decision outside the adversarial issues presented . . . by the parties, or has made an error not of reasoning but of apprehension." *Whitten v. ARS Nat'l Servs., Inc.*, No. 00-C-6080, 2002 WL 1332001, at *1 (N.D. Ill. June 18, 2002) (Lefkow, J.). "[T]he rule does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could or should have been presented to the district court prior to judgment." *Spirk v. Sullivan*, No. 02-C-9228, 2003 U.S. Dist. LEXIS 15109, at *19-20 (N.D. Ill. Aug. 28, 2003) (*citing Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 730 (7th Cir. 1999)).  A manifest error "is not demonstrated by the disappointment of the losing party," but "is the wholesale disregard,
misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000).

[2]  ISE resorts to misleading argument.  Despite all of the cited testimony explicitly stating "*trading* system" not "system," despite ISE knowing full well the pivotal distinction between a mere "system" of an exchange versus a "trading system," and despite ISE having already tried (unsuccessfully) in its original construction to capitalize on the distinction between a "trading system" and a "system," ISE makes its latest argument to the Court as if no such distinction exists.

with the Securities and Exchange Commission.[3]  Conversely, substituting "system" for "exchange" broadens the construction in a manner advocated (unsuccessfully) only by ISE, contrary to the clear and unambiguous disavowals in the '707 patent of trading systems that include open outcry.  As Dr. Steil testified, and the '707 patent confirms, the phrase "automated exchange for trading financial instruments" can refer to an exchange (registered or not) or to a trading system (but not to a component system within a trading system).  *E.g.*, Markman Tr. at 59:17-62:1; 72:7-12.

The Court heard almost two full days of testimony and argument on the "automated exchange" issue and both parties had the opportunity to brief the issue.  Never once did ISE assert that CBOE's proposed construction (accepted by this Court) was unclear or that CBOE had conceded that the word "exchange" is synonymous with the word "system."  ISE's position at the Markman hearing was that the term "automated exchange" meant "an exchange that *includes a system* that automatically matches incoming orders and quotations with stored orders and quotations."[4]  ISE's proposed construction was not adopted by the Court then, and should not be adopted now.  Although ISE is advancing a facially different claim phraseology than the one it raised earlier, it is the same concept the Court already rejected.  This issue has already been decided by the Court and should be properly raised (if at all) on appeal, not in the series of motions promised by ISE in its moving papers.  D.I. 290 at 3.

## II.    The Terms "Exchange" and Trading Systems" Are Synonymous, But Not the Terms "Exchange" and "System"

As ISE admits, the '707 patent specifically states that the term "exchange," as used in the patent, can be a "trading system."  Likewise, CBOE's expert Dr. Steil testified numerous times that the terms "exchange" and "trading system" were synonymous.  Thus, for example, Dr Steil

---

[3] The American Heritage Dictionary of Business Terms defines a "registered exchange" as "A securities exchange that has filed, and has had accepted, a registration statement with the SEC. All the larger securities exchanges in the United States are registered with the SEC, as required by the Securities Exchange Act of 1934." Doyle Decl., Exh. 1. As such, there are "exchanges" that are not "registered exchanges," and the '707 patent itself recognizes this possibility. Col. 7:29-33.

[4] ISE's current position that an "exchange" *is* a "system" is plainly contradicted by its proposed construction which stated that an "exchange *includes* a system." *See* D.I. 286 at 4.

testified: "An automated exchange would be a trading system in which all buy and sell orders are matched automatically by computer algorithm." Markman Tr. at 58:9-11.

> Dr. Steil also testified about the confusion within the industry about these terms:

>> [O]ne source of confusion that often comes up in discussions about exchanges and trading systems is that the term exchange can be used in common parlance to refer to a specific trading system. We often call trading systems exchanges. And it can also refer to the institution of an exchange as such.

>> And I explained earlier that the New York Stock Exchange, for example, has a portfolio of trading systems, a trading floor and multiple automated trading systems.

Markman Tr. at 72:7-15.

> Likewise, ISE's expert, Dr. Ma, agreed with Dr. Steil:

>> Q.      If [Steil] is using the term exchange as equivalent to trading system as you did - -
>> A.      Well, that's what [Steil] said in his testimony.
>> Q.      Correct. And you agree with that, right?
>> A.      I agree with that.

Markman Tr. at 232:20-24.

Both experts recognized that an exchange or a trading system for trading a financial instrument is an integrated entity through which trading is conducted. These terms are not synonymous with the term "system," which can be a separate system that is part of an exchange or part of trading system.[5] *See* '707 patent at 4:46-49 ("The disjointed nature of the various manual, and sometimes automated, *systems* which take place *on* floor-based *exchanges* … make it difficult to assess the true market depth and liquidity and ultimately impact that quality of the prices."). Dr. Steil's testimony about the RAES system, formerly used by CBOE, is instructive.

> This system in 1985 was implemented to handle just small orders. And it was clearly an automated system. That is, if you shut down the trading floor of the CBOE, you could continue to operate RAES, and it will continue to execute orders. It was a self-contained system. … It [the CBOE Hybid Trading System] is

---

[5] By relying on the word "system" in the phrase "trading system," ISE seeks to create the misimpression that the experts agreed that the words "exchange" and "system" are synonymous.

quite different from RAES, which certainly was an automated trading system separate from the floor.

Markman Tr. at 74:3-21.

Further, ISE would ask this Court to ignore the manner in which the term "automated exchange" is used in all of the claims of the '707 patent:  "an automated exchange for trading a financial instrument..."  The term "automated exchange" is used in the '707 patent claims in a manner that contemplates a trading system having multiple component systems (*e.g.*, a system memory, book memory, etc.) in which all buy and sell orders are matched automatically.  As Dr. Steil testified:

> An automated exchange would be a trading system in which all buy and sell orders are matched automatically by computer algorithm.. . .  And that to me would indicate that the term automated exchange clearly refers only to trading systems in which the – all of the buy and sell orders are matched automatically; that is, one that does not involve the manual process of the trading floor.

Markman Hearing Tr. 58:9-11; 19-23.

By equating "exchange" or "trading system" with "system," ISE is attempting an end-run around the disavowal of trading systems with floor-based trading described in the '707 patent and the Court's claim construction of "automated exchange" in order to proceed with a viable infringement claim against CBOE's Hybrid Trading System.  ISE's infringement theory is impermissible in light of the well-established doctrine of claim scope disavowal.[6]

---

[6] *See, e.g., Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1332-3 (Fed. Cir. 2009) (holding that the claims cannot encompass "resilient wires" because "the inventors disparaged prior art resilient wires in their 'background art' section of the specification"); *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1368 (Fed. Cir. 2009) (noting that it is well-established that the specification may reveal an intentional disclaimer or disavowal of claim scope by the inventor); *Honeywell Int'l Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1320 (Fed. Cir. 2006) (holding that repeated derogatory statements in the specification denigrating one previously used material in favor of another is "the equivalent of disavowal of that subject matter from the scope of the patent claims"); *Astrazeneca AB v. Mut. Pharm. Co.*, 384 F.3d 1333, 1340 (Fed.Cir.2004) ("Where the general summary or description of the invention describes a feature of the invention ... and criticizes other products ... that lack that same feature, this operates as a clear disavowal of these other products...."); *Scimed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc.*, 242 F.3d 1337, 1344 (Fed. Cir. 2001) (holding that where the patentee had distinguished a prior art configuration as having disadvantages that were overcome by the patented invention, this is a

III.    **By Seeking Reconsideration Under the Guise of Clarification, ISE Is Prejudicing CBOE**

Briefing and a hearing on the proper claim construction for the asserted claims of the '707 patent was completed in August 2009. A final decision on claim construction was rendered in January 2010. As a result of the Court's claim construction, CBOE is now in a position to seek leave to file a summary judgment motion of non-infringement.[7]

By proposing a new claim construction disguised as a motion for clarification, ISE is lengthening the time before which CBOE can file its summary judgment motion. Moreover, if the present motion for clarification (or rather, reconsideration) is denied, ISE has promised to file a (second) motion for reconsideration. D.I. 290 at 2. The longer the delay before CBOE's summary judgment motion can be filed, the longer it will be before CBOE can remove the cloud of alleged infringement of the '707 patent that now hangs over CBOE.

ISE is not only delaying CBOE's summary judgment motion, it is also delaying the progress of this case as a whole. ISE has refused to supplement its contentions on infringement and validity until the Court adjudicates ISE's current and forthcoming motions on "automated exchange."

IV.    **ISE's Miscellaneous Arguments Regarding Claim Construction and Infringement are Groundless**

Revisiting an argument previously made at the *Markman* hearing, and rejected by the Court, ISE argues once again that the preferred embodiment in the '707 Patent discloses manual matching and allocating of certain trades in much the same manner as open outcry. D.I. 290 at 3. Although ISE does not cite to the portion of the '707 patent involving so-called manual matching and allocating of trades, the Court will recall the testimony of ISE expert Dr. Ma that the manual

---

"clear case of disclaimer of subject matter that, absent the disclaimer, could have been considered to fall within the scope of the claim language").

[7] Under the current Scheduling Order in place, the time for filing dispositive motions expired on November 18, 2009. Unless the Court modifies the current Scheduling Order, CBOE must obtain leave of Court before filing such a motion.

trading disclosed in '707 Patent was only the <u>decisions</u> made by the traders who pushed the buttons to make trades.  As Dr. Ma testified about the system disclosed in the '707 patent:

> Q.  I said execution.  So once you push the button - - he makes his decision, he pushes a button, and it is done automatically, correct?
>
> A.  But that's not 100 percent automated because he pushed a button.
>
> Q.  Oh, the pushing of the button is what made it non- --
>
> A.  No, it is not 100 percent fully automated because he is sitting there deciding whether to participate in this customer order, and then he decides yes or no.
>
> And if he decides yes, he pushes a button to say yes.  And if not, he pushes another button that says no.  So that's clearly not - - you know, not automated,  Because if he decides no, there is no execution. Markman Hearing Tr. 241:24 – 242:11

Dr. Ma's testimony does not support ISE's argument that the fully automated trading system of '707 patent describes manual processes for trading.  Making a <u>decision</u> to trade or not to trade is a far cry from matching or allocating manually in open outcry. The Court took all of this into consideration in making its *Markman* ruling.

In footnote 2 at page 5 of its motion, ISE proposes an infringement argument.  Aside from having no relevance to the pending clarification motion, ISE misses one of the basic tenets of patent law: "Infringement occurs when a properly construed claim of an issued patent covers an accused device."  *DSW, Inc. v. Shoe Pavilion, Inc.*, 537 F.3d 1342, 1346 (Fed. Cir. 2008) Because CBOE's Hybrid Trading System is not a "fully computerized exchange [or trading system] in which no matching or allocating is performed manually in open outcry," none of the claims of the '707 Patent can be infringed.

## V.    <u>Conclusion</u>

ISE's proposed modification to the proper construction of the claim term "automated exchange" in the context of the phrase "automated exchange for trading a financial instrument"

is calculated to vitiate the Court's construction of the term and is a blatant attempt to re-write the claim. ISE claimed an automated exchange in the '707 patent, not a system within that automated exchange. The claim cannot now be re-written to suit ISE's current infringement theories. *See Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 647 (Fed. Cir. 1994) (a patentee "cannot, in effect, rewrite its patent claims to suit its needs in [] litigation"). There is no basis in law or fact for granting ISE's motion for clarification and it should be denied.

Respectfully submitted,

Dated: February 3, 2010

By:  s/ *David Francescani*
David Francescani
Jonathan A. Marshall
Michael T. Zoppo
Brian J. Doyle
**FISH & RICHARDSON P.C.**
601 Lexington Ave, 52nd Floor
New York, NY 10022
Telephone: (212) 765-5070
Facsimile: (212) 258-2291

*Attorneys for Plaintiff Chicago Board
Options Exchange, Incorporated*

Paul E. Dengel
Stacie R. Hartman
Mark E. Ashton
**SCHIFF HARDIN LLP**
6600 Sears Tower
233 South Wacker Drive
Chicago, IL 60606-6473
Telephone (312) 258-5500
Facsimile (312) 258-5600

Joanne Moffic-Silver
Jordan Newmark
**CHICAGO BOARD OPTIONS
EXCHANGE, INCORPORATED**
400 S. LaSalle Street
Chicago, IL 60605
Telephone: (312) 786-7909

## CERTIFICATE OF SERVICE

The undersigned certifies pursuant to Fed. R. Civ. P. 5 and L.R. 5.5, that a true and correct copy of the foregoing document was filed on February 3, 2010 with the Clerk of the Court using the CM/ECF system, which will send notice to counsel of record.

*/s/ David Francescani*
David Francescani