UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

Chicago Board Options Exchange, Inc.,

Plaintiff,

v.

International Securities Exchange, LLC,

Defendant.

Civil Action No. 07-cv-623

The Hon. Joan H. Lefkow, U.S.D.J.
The Hon. Jeffrey Cole, U.S.M.J.

**DEFENDANT INTERNATIONAL SECURITIES EXCHANGE, LLC'S
REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR
CLARIFICATION**

COUNSEL FOR DEFENDANT
<u>INTERNATIONAL SECURITIES EXCHANGE, LLC</u>

| | |
|---|---|
| Michael D. Huber | Parker H. Bagley |
| Cray Huber Horstman Heil & Van Ausdal LLC | Steven R. Gustavson |
| 303 W Madison, Suite 2200 | Michael S. DeVincenzo |
| Chicago, IL 60606 | GOODWIN PROCTER LLP |
| Telephone No.: (312) 332-8450 | The New York Times Building |
| Facsimile No.: (312) 332-8451 | 620 Eighth Avenue |
| | New York, New York 10018 |
| | Tel.: 212.813.8800 |
| | Fax: 212.355.3333 |

LIBNY/4886816.1

**TABLE OF CONTENTS**

PAGE

I. INTRODUCTION ..................................................................................................1

II. THIS COURT SHOULD CLARIFY THAT THE TERM "EXCHANGE" REFERS TO A "SYSTEM" FOR TRADING.................................................................3

III. THIS COURT SHOULD CLARIFY THAT HAVING AN AUTOMATED EXCHANGE (I.E. A COMPUTERIZED SYSTEM OR COMPUTERIZED TRADING SYSTEM) DOES NOT PRECLUDE THE EXISTENCE OF A TRADING FLOOR ..................................................................................................6

  A. CBOE Has Conceded That A Computerized Trading System Requires Matching By Computer But Does Not Preclude The Existence Of Floor-Based Trading ...............................................................................................6

  B. The '707 Patent Recognizes That An Automated Exchange (i.e. A Computerized System Or Computerized Trading System) Does Not Require "Every" Trade To Be Executed Automatically..........................................8

IV. CBOE'S NON-INFRINGEMENT ARGUMENTS DEMONSTRATE THE NEED FOR CLARIFICATION AT THE PRESENT TIME ............................................11

V. CONCLUSION.................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Epistar Corp. v. Int'l Trade Comm'n*,
  566 F.3d 1321 (Fed. Cir. 2009)..................................................................................13

*In re Am. Acad. of Sci. Tech. Ctr.*,
  367 F.3d 1359 (Fed. Cir. 2004)..................................................................................13

*KCJ Corp. v. Kinetic Concepts, Inc.*,
  223 F.3d 1351 (Fed. Cir. 2000)....................................................................................9

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ................................................................10

*SanDisk Corp. v. Memorex Prods., Inc.*,
  415 F.3d 1278 (Fed. Cir. 2005)..................................................................................10

*SunTiger, Inc. v. Scientific Research Funding Group*,
  189 F.3d 1327 (Fed. Cir. 1999)..................................................................................12

*Ventana Med. Sys., Inc. v. Biogenex Labs., Inc.*,
  473 F.3d 1173 (Fed. Cir. 2006)..................................................................................13

*Vitronics Corp. v. Conceptronic, Inc.*,
  90 F.3d 1576 (Fed. Cir. 1996)....................................................................................10

## I.     INTRODUCTION

Defendant International Securities Exchange, LLC ("ISE") respectfully submits this Reply in support of its motion for clarification of this Court's Final Claim Construction for U.S. Patent No. 6,618,707 ("Order"). (D.I. 286.)

The Order construes the term "automated exchange" as "a fully computerized exchange in which no matching or allocating is performed manually in open outcry." (D.I. 286 at 4.) ISE's motion for clarification is essentially unopposed, as CBOE does not dispute that the term "exchange" is not limited to a "registered exchange" and that it encompasses a "trading system," i.e., a "system which automatically matches and allocates trades."[1] (D.I. 292 at 2-5.) Contrary to CBOE's allegations, the insertion of the word "trading" into ISE's proposed clarified construction would not change its meaning. This is not just a distinction without a difference; it is redundant because all "systems" under discussion are "trading systems."

Despite CBOE's concession that the terms "exchange" and "trading system" are synonymous, CBOE argues that ISE is seeking reconsideration, and/or re-writing this Court's construction by requesting clarification of the term "exchange," to ensure it encompasses a "system which automatically matches and allocates trades [i.e., a trading system] without the use of open outcry."[2] (D.I. 290 at 6.) That is not the case. ISE's proposed clarification explicitly states that an "exchange" is a "system for automatically matching or allocating trades…." (D.I. 290 at 2.) A system for matching or allocating trades is by definition a "trading system." Hence, ISE's motion asks this Court to make clear that the term "exchange" is not limited to a "registered exchange," and instead encompasses computerized "systems" for trading. Such clarification will avoid potential jury confusion, as evidenced by CBOE's identified expert and this Court during the Markman hearing. (*See* Ex. A, Markman Hr'g Tr., Vol. 1A, 72:7-12, 92:14-18, Aug. 14, 2009.)

---

[1] CBOE concedes that "[e]xchange, as that term is used in the patent can be a trading system." (Ex. A 104:7-12.) While ISE would accept CBOE's proposed clarification, CBOE's stated non-infringement position based upon its novel interpretation of the term "trading system" is improper and demonstrates the need for further clarification at the present time.

[2] Until ISE's motion for clarification is decided, any motion for reconsideration is premature, as the issue of whether the term "exchange" refers to "system" or "trading system," or is limited to "registered exchange" is the critical issue regarding the parties' constructions, and this Court's Order does not explicate this issue.

CBOE admitted this precise issue is the "heart of the case." (*Id.* at 92:21-25.) ISE's requested clarification would preclude a finding of summary judgment in CBOE's favor with respect to this issue, because it should be undisputed that CBOE uses a trading system in which no matching or allocating is done in open outcry. In fact, CBOE admits that over 95% of its trades are executed using precisely such a trading system. (*Id.* at 35:7-8 ("It is true that CBOE does about 95 percent of its trades through an electronic system . . . .").) Unable to avoid its explicit admissions, CBOE merely argues semantics, focusing the majority of its opposition on ISE's use of the term "system" instead of "trading system."[3]

The non-infringement arguments in CBOE's opposition demonstrate the need for clarification. Unable to dispute the actual issue presented in ISE's motion, and faced with its unequivocal admissions that the term "exchange," as recited in the asserted claims refers to a "trading system," CBOE's opposition simply pretends that it never made the concessions and redefines the term "trading system" as an "an integrated **entity** through which trading is conducted," (D.I. 292 at 4 (emphasis added).) This formulation is at odds with CBOE's further concessions at the Markman hearing. (*See* Ex. A 104:7-11 ("[T]he patent indicates specifically that automated exchange did not limit use of the invention to **an entity** that is a registered exchange.").)

Also, those contradictory word games and attempts to redefine the term "trading system" demonstrate precisely the need for clarification of this Court's Order in the manner suggested by ISE. It is undisputed that a computerized trading system can operate in conjunction with a floor-based trading system.[4] And it also should not be disputed that an automated trading system does

---

[3] CBOE's suggestion, made for the first time in its opposition, that a "pivotal distinction" exists between a "trading system" and a "system" for automatically matching and allocating trades is preposterous. (D.I. 292 at 2.) What is a "system for matching and allocating trades" if not a "trading system"? The true pivotal question is whether the term "exchange" is limited to an entire "registered exchange." ISE's motion for clarification requests this Court make clear that CBOE's repeated concessions are a part of its Claim Construction Order. This will greatly assist the jury in understanding the terms at issue. CBOE's vigorous resistance is due to the fact that such a ruling will preclude CBOE from making precisely the type of baseless and confusing non-infringement arguments previewed in its opposition brief.

[4] CBOE's new argument that CBOE does not have an electronic "trading system" due to the existence of a floor as part of CBOE's Hybrid System directly contradicts its prior statements in this litigation. (*See, e.g,* Ex. E, Motion to Transfer Case (filed Feb. 27, 2007), at 1 ("As its name implies, CBOE's Hybrid System is a combination of an open-outcry auction and an **electronic trading system**.") (emphasis added)); (Ex. F Initial Disclosures (served Aug. 10, 2007), at 5 (referencing "CBOE's CBOEdirect **electronic trading system**.") (emphasis added).)

2

not require automatic matching or allocating of *every* trade, as U.S. Patent No. 6,618,707 (the "'707 Patent") explicitly discloses the manual matching and allocating of certain trades. The initial critical issue for the term "automated exchange," however, is whether it can encompass "systems" for trading [i.e. "trading systems"] or whether it is limited to "registered exchanges." CBOE concedes this most crucial clarification, but then nevertheless proceeds with new arguments which represent nothing more than an attempt to confuse, and thus avoid its explicit concessions.[5]

## II.   THIS COURT SHOULD CLARIFY THAT THE TERM "EXCHANGE" REFERS TO A "SYSTEM" FOR TRADING

There is no dispute that CBOE is a "registered exchange" with a floor-based system for manually matching and allocating trades, as well as a fully computerized system for automatically matching and allocating trades. CBOE's computerized trading system is largely identical to ISE's computerized trading system with respect to the issues presented by the '707 Patent, and it is this "system" (or "trading system") which ISE asserts infringes the patent. Hence, during the Markman hearing, CBOE recognized that the "heart of the case" was whether the term "exchange" was limited to a "registered exchange," or could be used to encompass "systems" for trading, such as CBOE's computerized trading system.

Eventually at the hearing, CBOE conceded that the '707 Patent's use of the term "exchange" is *not* limited to a "registered exchange," but rather refers to trading systems. (Ex. A 104:7-12.) As such, ISE's motion for clarification seeks to make clear that the term "exchange" in this Court's Order is being used in a consistent manner to refer to "systems" for trading and not a "registered exchange." Notably, CBOE does not dispute that the '707 Patent's use of the term "exchange" is synonymous with the term "trading system," and is not limited to a "registered exchange." (D.I. 292.) Therefore, ISE's motion for clarification should be granted.

---

[5] CBOE's arguments of prejudice and delay are disingenuous. (D.I. 292 at 6.) The deadline for filing summary judgment motions expired months ago. CBOE had every opportunity to move at that time but—likely in light of its concessions at the Markman hearing—chose not to. Similarly, despite receiving this Court's claim construction order, CBOE has elected not to move for summary judgment or move for relief from this Court's scheduling order so that it could file any such motion. With respect to the parties' contentions, ISE has not now, nor ever, "refused" to provide supplemental infringement contentions. (D.I. 292 at 6.) Instead, the parties agreed that CBOE would not provide its supplemental invalidity contentions and ISE would not provide its supplemental infringement contentions until after this Court had an opportunity to clarify its Markman Order.

ISE's proposed clarification reads a "fully computerized **system which automatically matches and allocates trades** without the use of open outcry." (D.I. 290 at 6 (emphasis added).) A "system which automatically matches and allocates trades" is a "system for trading," or a "trading system." Thus, CBOE's insistence that ISE is attempting to "re-write" the Court's Order, simply by requesting clarification, is mystifying. In fact, even though it is redundant, ISE would accept CBOE's modification of ISE's requested clarification such that the term "automated exchange" refers to a "fully computerized trading system for automatically matching and allocating trades without the use of open outcry."[6]

CBOE spends the majority of its opposition arguing that the term "trading system" is somehow different from a "system." For example, attempting to draw a distinction between a "trading system" and a "component system with a trading system." (D.I. 292 at 3.) This argument simply ignores the fact that ISE's requested clarification recognizes that the "system" must "automatically match and allocate trades." CBOE's opposition brief further ignores the record, in that CBOE did not dispute this Court's characterization of "exchange" as a "computerized system," when specifically asked at the Markman hearing:

> THE COURT: There are different kinds of automation, but what's referred to in here is the **computerized system, right, or exchange**? I mean, if I said that automated means -- I think both of you used the word automated in your definition of automated. But is it okay to say computerized?
>
> MR. FRANCESCANI: Yes. Yes, your Honor….[7]

(Ex. D, Markman Hr'g Tr., Vol. 2A, 352:17-23 (emphasis added).)

Whether a "trading system" is a "system for trading" was never, and ought not be, in dispute.[8] Instead, the "heart of the case" and the "key issue" for this Court to decide, in the

---

[6] This proposed modification is redundant because it essentially reads a 'trading system for trading.'

[7] CBOE's failure to mention a distinction between "trading system" and "system" when specifically asked whether an "exchange" is a "computerized system" speaks volumes as to its current suggestion that there is a "pivotal distinction" between the terms.

[8] As recognized by CBOE, ISE's original proposed construction acknowledges that an "exchange" includes a system." (D.I. 292 at 3.) ISE's original proposed construction would be most helpful to the jury as it recognizes an "exchange" that includes a "system that automatically matches" is an "automated exchange." It also avoids the confusion present in CBOE's construction, adopted by the Court, which does not presently make clear whether "automated exchange" encompasses a registered exchange that includes automated trading systems or is merely limited to a registered exchange. Contrary to the allegations in CBOE's opposition, ISE never argued that a distinction exists between a "system for matching and allocating trades" and a "trading system," as CBOE has never previously argued that any distinction exists between these terms.

4

words of CBOE's counsel, is whether the "exchange" recited in the asserted claims is limited to a "registered exchange":

> MR. FRANCESCANI: This claim automated exchange or this claim term appears as in the preamble of every single claim here so it is particularly important. **And the words used are automated exchange, not automated trading system, automated exchange**.
>
> \*\*\*
>
> THE COURT: I think Dr. Steil was saying that there can be an automatic -- an automated exchange, meaning system, within an institution, such as the CBOE, it is just -- **I mean I think you're using the term exchange in two ways. It could be used as an institution, and it could be used as a system.**
>
> **And what the patent is talking about is a system, is it not?**
>
> MR. FRANCESCANI: It is not, your Honor. They are talking about an exchange, and that's the whole issue. Explicitly, specifically they are talking about an entire exchange. And that's -- that's the heart of the case. That is the heart of the case.
>
> **They are talking about an exchange, not a system. If they were talking a trading system, they could have said trading system. If they were talking about an automated trading system, that could have been said.** But they didn't say that. They said, this is an automated exchange. ISE is an automated exchange or fully electronic exchange. They used those terms interchangeably throughout the prosecution history of this case.
>
> We'll go into the specifics of that to show you. But that is the issue.[9]

(Ex. A 91:1-5, 92:14-93:10 (emphasis added).) Counsel for CBOE and this Court both recognized there are "two ways" the term exchange can be used. (*Id*.) The first way refers to an institution or "registered exchange," and the second way refers to a "system" for trading (or "trading system"). There can be no legitimate dispute that CBOE's original construction and its disclaimer arguments were based upon the notion that the term "exchange" and "trading system" were **not** synonymous:

---

[9] Notably, CBOE's recently crafted distinction between "trading system" and a "system which automatically matches and allocates trades" (i.e. a "system for trading") was not mentioned in CBOE's response to this Court's direct question concerning this issue. The fact of the matter is there has never been a dispute that a "system that allocates and matches trades," as used in ISE's proposed clarification, is a "trading system."

5

> MR. FRANCESCANI: RAES in and of itself is not an exchange as that term is used and understood by people of skill in the art. It is a trading system. It is a trading system within CBOE, no question about it, and it always has been.
>
> And there are -- there is -- the hybrid system of CBOE is exactly as Dr. Steil testified. **But it is not correct to use those terms trading system and exchange interchangeably. An exchange is something that you have got to register with the SEC to become -- to become an exchange.**[10]

(Ex. A 93:15-23 (emphasis added).)

CBOE later reversed field, retracting the above-quoted statements, and conceded at the Markman hearing (Ex. A 104:2-12), and through the fog of its opposition *still* concedes, that this Court should decide this "key issue" in ISE's favor—an "automated exchange" and an "automated trading system" are synonymous. (D.I. 292 at 2-5; Ex. A 104:7-12.) Yet, CBOE still insists that it would be improper for this Court to make clear that an "exchange" refers to a "trading system" and not an "entity" or "registered exchange" and that the execution of a single trade on a trading floor would not avoid infringement. These arguments are untenable.

### III. THIS COURT SHOULD CLARIFY THAT HAVING AN AUTOMATED EXCHANGE (I.E. A COMPUTERIZED SYSTEM OR COMPUTERIZED TRADING SYSTEM) DOES NOT PRECLUDE THE EXISTENCE OF A TRADING FLOOR

#### A. CBOE Has Conceded That A Computerized Trading System Requires Matching By Computer But Does Not Preclude The Existence Of Floor-Based Trading

Although CBOE now concedes that a "trading system" and an "exchange" are synonymous, CBOE simply ignores the ramifications of this concession and argues that CBOE—which admittedly executes 95% of its trades on an fully computerized system—does not have an "automated trading system" because it also executes other trades "side by side" in an open outcry system. (D.I. 292 at 6; Ex A. 43:12.) But this ignores the fact that an "automated trading system" can co-exist with an open-outcry system, which CBOE admitted numerous times before it was forced to concede that the '707 Patent uses the term "automated exchange" to refer to "automated trading systems":

---

[10] CBOE's statement in its opposition that limiting the term "exchange" to a "registered exchange" was "not advocated by either party" is plainly untrue. (D.I. 292 at 2; Ex. A at 92:14-93:10; 93:15-23)

6

> So it is quite normal today for an exchange to have a portfolio of trading systems, **a trading floor and automated trading systems**.

(Ex. A at 46:1-3 (emphasis added).)

> First, these automated systems, how they were introduced. In some cases the exchanges shut down their trading floors entirely. … **But in most cases the exchange did not eliminate the floor trading for one of two reasons or both.** One reason exchange management often used is that the floor provided some advantage in terms of price discovery, of facilitating trades, particularly for more complex trades that they felt couldn't be done as well in an electronic system. So they wanted to maintain the **trading floor side by side with the electronic system.**

(*Id*. at 43:1-13 (emphasis added).)

> The New York Stock Exchange, for example, **still operates a trading floor, but it also has a number of automated trading systems**.

(*Id*. at 45:14-15 (emphasis added).)

> So typically what the exchange did is they **introduced these automated trading systems** only on a limited basis for, say, very small orders, for low volume securities that **weren't traded very much on the floor**, for only new securities that might be brought in the market, not the existing securities or typically just for after hours trading.

(*Id*. at 43:18-23 (emphasis added).) Each of these statements explicitly recognizes that registered exchanges can simultaneously have an "automated trading system" for matching trades by computer working side-by-side with a floor-based system for manually matching and executing trades. Similarly, CBOE's identified expert Dr. Steil conceded that a system that automatically matches and executes orders entirely by computer is an "automated exchange":

> Q. Okay. And RAES, RAES was a trading platform in which the matching and execution of buy and sell orders was done entirely by computer, correct?
>
> A. Yes.
>
> Q. Okay. **And therefore the RAES system would meet your definition of an automated exchange, correct?**
>
> **A. It would.**

(*Id*. at 84:14-20 (emphasis added).) Importantly, despite Dr. Steil's critical admission that the computerized RAES "system" (not "trading system") was an "automated exchange," CBOE made no attempt to rehabilitate him on re-direct examination. Thus, if the RAES system was admittedly an "automated exchange" then CBOE's current "electronic trading system" is also an "automated exchange." (*See* Ex. E, Motion to Transfer Case (filed Feb. 27, 2007), at 1 ("As its

7

name implies, CBOE's Hybrid System is a combination of an open-outcry auction and an **electronic trading system**.") (emphasis added).)

Further illustrating consistent usage of the term "automated trading system," CBOE itself explained to the Court that "automated trading systems" are those in which matching and allocating can be done entirely by computer:

> Now starting in the late 1970s, accelerating into the 80s and 90s, exchanges started to introduce **automated trading systems** as computer technology advanced. **These were systems in which this order matching process** that [ISE] described to you, which is quite complicated on the floor, **could be done entirely within a computer.**

(*Id*. at 41:21-42:1 (emphasis added).)

In light of CBOE's unambiguous concessions, ISE's request seeks to make clear that an "automated exchange" encompasses a "system [or "trading system"] which automatically matches and allocates trades without the use of open outcry." This clarification is consistent with CBOE's repeated unambiguous representations indicating that an automated trading system is one that matches orders entirely by computer, i.e., without the use of a trading floor. CBOE's newly constructed argument that an "automated trading system" by definition precludes the very existence of a trading floor, and requires *every* trade to be executed automatically, not only contradicts its previous representations, it also contradicts the teachings of the '707 Patent.

**B.    The '707 Patent Recognizes That An Automated Exchange (i.e. A Computerized System Or Computerized Trading System) Does Not Require "Every" Trade To Be Executed Automatically**

Walking away from its numerous admissions and concessions—concerning whether an automated trading system requires every trade to be executed automatically—CBOE mischaracterizes the teachings of the '707 Patent in an attempt to craft a non-infringement theory based upon its own interpretation of the term "trading system." Because its interpretation of the term contradicts the language of the '707 Patent, CBOE's interpretation should be rejected, and this Court should instead adopt ISE's requested clarification.

Contrary to CBOE's allegations, the '707 Patent claims do not require an automated trading system in which "<u>all</u> buy and sell orders are matched automatically." (D.I. 292 at 4-5.) Instead, the claims are explicitly directed to trading "**a** financial instrument," "receiving **an** incoming order," "storing **a plurality** of previously received orders," and "for allocating portions of the incoming order among **the plurality** of previously received orders." (Ex. B, the '707

8

Patent at 29:53-30:45 (emphasis added).) The terms "all" and "every" appear nowhere in the claims and a finding that a "trading system" must execute "all buy and sell orders" automatically would contradict well-established Federal Circuit precedent. *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000) ("This court has repeatedly emphasized that an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transition phrase comprising.").

Despite the unambiguous claim language, CBOE argues that the claims use the term "'automated exchange' … in a manner that contemplates a trading system having multiple component systems (e.g., a system memory, book memory, etc.) in which all buy and sell orders are matched automatically." (D.I. 292 at 5.) CBOE fails to even cite to the language of the claims. Instead, CBOE relies solely upon the testimony of its identified expert, Dr. Steil, which fails to mention "multiple component systems," fails to distinguish between "trading systems" and "systems for trading" and fails to even mention the claims of the '707 Patent. This is not surprising, as CBOE did not put forth this tortured construction for the term "automated exchange" at the Markman hearing. To the contrary, until it was forced to concede the issue, CBOE vigorously disputed that an "automated exchange" could refer to a "system" for trading or a "trading system" at all. CBOE now attempts to carefully back away from its concession by re-defining a "trading system" in a manner inconsistent with the '707 Patent. (D.I. 292 at 5.)

Consistent with the plain language of the claims, the specification recognizes that an "automated exchange" refers to an "automated system" (or "trading system") for trading a financial instrument. As CBOE admits, the '707 Patent contemplates the term "exchange" may be used to refer to "trading systems" and is not limited to "registered exchanges." (Ex. A 104:2-18; D.I. 292 at 2.) Accordingly, a "registered exchange," such as CBOE, may have an automated trading system—i.e., an "automated exchange"—and still execute trades using an open-outcry system. The patent specifically recognizes this, noting floor-based exchanges may have various "manual, and sometimes automated, systems." (Ex. B at 4:47-49.)

In addition to disclosing that floor-based registered exchanges may have automated systems for trading, the specification recognizes that "automated exchanges" and "automated systems" do not require every trade to be matched and allocated automatically.[11] In discussing

---

[11] CBOE takes issue with the fact that the specification states that floor-based exchanges may have "automated systems," but does not explicitly state that they may have "automated trading systems." This

9

the execution of orders originating at an away market, the '707 Patent states that, under certain circumstances, if the best price for an incoming order is not on the "automated exchange," a market participant is alerted, and "the PMM 3 **can then decide** whether to trade the incoming order at the away market price." (*Id*. at 24:66–67 (emphasis added).) Similarly, when the "automated exchange" does not offer the best price for incoming public customer orders, those orders are stored for later execution; they are "executed if an incoming order or quotation can be matched with [one of them], the away market 17 no longer has a better price, **or the PMM chooses to execute the order**." (*Id*. at 9:54–57 (emphasis added).)

When a "PMM chooses to execute the order," the order is manually matched. (*See* Ex. C, Provisional Application for the '707 Patent, at ISE0871772 (recognizing that in the circumstances described the PMM "handle[s] the order **manually**.") (emphasis added).) As such, Dr. Steil's testimony, relied upon by CBOE, that an "automated exchange" is a "trading system in which **all** buy and sell orders are matched automatically by computer algorithm," (Ex. A 58:9-11(emphasis added); D.I. 292 at 5), is directly and unambiguously contradicted by the express language of the '707 Patent. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005) (*en banc*) ("[A] court should discount any expert testimony that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent.").

Furthermore, the manual matching of trades described above is directly disclosed as part of a preferred embodiment in the '707 Patent. (Ex. B at 24:15-17; 24:25-26; 24:66-67.) To the extent that CBOE asserts that this Court's construction should be interpreted to require that every trade must be automatically matched and allocated in an automated trading system, such construction would improperly "exclude a preferred embodiment," and "rarely, if ever, [be] correct." *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1285 (Fed. Cir. 2005) ("A claim construction that excludes a preferred embodiment, [] 'is rarely, if ever, correct.'") (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996)).

Consistent with the description of a preferred embodiment, the '707 Patent expressly recognizes that not every trade has to be executed automatically in an automated trading system. The specification states that "the invention [is] particularly advantageous over **less automated**

---

argument ignores that the "systems" and "automated systems" described in the '707 Patent are trading systems, as that is the subject matter of the '707 Patent.

systems because **many** of the routine decisions made by professionals in charge of a series of options **can be** defined in advance and applied automatically." (Ex. B at 6:53–58 (recognizing "many," but not "all" of the routine decisions can be defined in advance and applied automatically) (emphasis added).) Thus, while certain routine decisions by a professional can be made in advance and applied automatically, others cannot be, and are handled manually as described above.

CBOE's opposition recognizes that the '707 Patent discloses matching and allocating based upon "decisions made by the traders who pushed the buttons to make trades." (D.I. 292 at 7.) Importantly, this is the definition of a manual—and not an automated—match. If a trader has to decide whether to match a particular trade, as disclosed in the '707 Patent, then that specific trade is not matched automatically by a computer algorithm, regardless of whether such decision to trade is made by an individual at a terminal or an individual on a trading floor. The critical point is that an "automated exchange" (or "automated trading system") cannot be construed to require every single trade to be matched automatically because, that would be contrary to the specification, which expressly discloses and contemplates manual matching for some trades. Whether traders are on the same floor or, in remote locations connected via the internet, both encounter the manual step (as disclosed in a preferred embodiment) of *choosing* to execute a trade at a particular price and size. In both situations, the matching or allocating is not accomplished automatically through the use of a computer running an algorithm.

### IV. CBOE'S NON-INFRINGEMENT ARGUMENTS DEMONSTRATE THE NEED FOR CLARIFICATION AT THE PRESENT TIME

As demonstrated by CBOE's attempt to craft a new non-infringement rationale based upon an illogical and unsupported interpretation of the term "trading system," this Court should clarify its Order at the present time. The use of the term "exchange" is confusing, given the acknowledged multiple meanings of the term. (Ex. A 72:7-12, 92:14-18.) The '707 Patent admittedly uses this term to encompass "systems" for trading or "trading systems." (Ex. A 104:7-12.) ISE contends that the use of CBOE's electronic trading system, which executes 95% of CBOE's trades (*id*. at 35:7-8), infringes the '707 Patent. ISE does not claim that the 5% of manual trades infringe. The jurors should be instructed that the term "exchange" refers to and encompasses a "system which automatically matches and allocates trades" (or "trading systems"

11

for matching and allocating trades, according to CBOE) to prevent the precise confusion recognized by CBOE's identified expert and this Court.

Furthermore, as demonstrated above, this Court's Order should be clarified to preclude CBOE from reviving its argument that an "exchange" that has both a floor based system for matching and allocating trades and a computerized system (or computerized trading system) for matching and allocating trades, somehow avoids infringement because "exchange" means the entire "registered exchange." Given CBOE's concessions on this issue, ISE has requested this Court make clear that an "automated exchange" refers to a "fully computerized system which automatically matches and allocates trades without the use of open outcry."

This clarification and distinction will prevent CBOE from arguing that the matching of even a single trade manually, outside of its computerized trading system, would somehow avoid infringement. Without such clarification, CBOE's opposition indicates it will argue that it does not operate a fully computerized trading system for executing trades because—although 95% of its trades are matched and executed through its electronic trading system—this system is run "side by side" with its open-outcry system and these systems together must, for some unidentified reason, be looked at as a singular system for purposes of infringement under CBOE's interpretation of this Court's Order. Although this argument would be demonstrably baseless in light of established Federal Circuit precedent, CBOE's convoluted argument demonstrates the need for clarification. *See SunTiger, Inc. v. Scientific Research Funding Group*, 189 F.3d 1327, 1336 (Fed. Cir. 1999) (The Federal Circuit has "never required that a claim read on the entirety of an accused device in order to infringe. If a claim reads merely on a part of an accused device, that is enough for infringement….Any other reasoning would allow an infringer to avoid infringement merely by adding additional elements to an infringing device.").

CBOE's half-hearted attempt to re-raise its disclaimer arguments in its memorandum in support of its illogical 'interpretation' of the term "trading system" is improper. The fact of the matter is that CBOE's disclaimer argument was largely based upon the mistaken notion that an "exchange" referred to a "registered exchange."[12]

---

[12] Although CBOE attempts to revive its disclaimer argument in its opposition, CBOE wholly ignores that this Court's Order does not identify any disclaimer. Further, as demonstrated throughout ISE's briefing, the '707 Patent lacks any clear and unambiguous disclaimer that could be read to require every single trade to be matched automatically, as this would plainly contradict the specification, and read out a preferred embodiment of the '707 Patent. *See, e.g., Epistar Corp. v. Int'l Trade Comm'n*, 566 F.3d 1321,

12

(Ex. A 92:14-93:10, 94:10-19, 98:17-21.)  This was the "heart of the case" and the "key issue."  As this house of cards has admittedly collapsed, CBOE's new argument that it does not have an "automated trading system" because CBOE also matches and allocates trades using an open-outcry system is completely illogical.  Tellingly, the only portion of the '707 Patent relied upon in the entirety of CBOE's opposition expressly recognizes that there are "various manual, and sometimes automated, systems which take place on floor based exchanges." (Ex. B at 4:46–51.)  Far from supporting CBOE's new argument, this portion of the specification explicitly recognizes that floor-based registered exchanges can actually have "automated systems."  Although CBOE points out that the '707 Patent does not expressly state that these "automated systems" are "automated trading systems," the systems described in the '707 Patent are unquestionably trading systems.  In fact, although not mentioned by name, CBOE has conceded that the RAES system—which, according to Dr. Steil, was an "automated exchange," or an "automated trading system"—is described in the '707 Patent as one of the automated systems used by floor-based registered exchanges.  (Ex. A 107:24-108:9.)

ISE recognizes that its requested clarification would preclude a finding of summary judgment in CBOE's favor as to this particular line of argument.  However, CBOE concedes the term "automated exchange" as used in the '707 Patent refers to a "trading system" (or a "system" for trading) and is not limited to "registered exchanges," and therefore ISE's motion should be granted.  Furthermore, if clarification is not provided, it will resurface in the form of a summary judgment motion.  Despite having allowed the dispositive motion date to pass, CBOE has expressed its intention to file a motion for summary judgment based on its own 'interpretation' of the term "trading system." [13]  (D.I. 292 at 3.)  To permit the parties to use the clarified

---

1334-36 (Fed. Cir. 2009)(finding criticism does not rise to the level of disavowal, absent "expressions of manifest exclusion and restriction" and noting "[a] patentee's discussion of the shortcoming of certain techniques is not a disavowal of the use of those techniques in a manner consistent with the claimed invention."); *Ventana Med. Sys., Inc. v. Biogenex Labs., Inc.*, 473 F.3d 1173, 1180-1181 (Fed. Cir. 2006) (finding that "general statements, without more, will not be interpreted to disclaim every feature of every prior art device discussed in the 'BACKGROUND ART' section of the patent" and refusing to limit claims in light of general criticisms); *In re Am. Acad. of Sci. Tech. Ctr.*, 367 F.3d 1359, 1367-69 (Fed. Cir. 2004) (refusing to limit claim terms despite statements in the Background of the Invention that "when viewed in isolation, might lead a reader" to a narrow construction absent "words or expressions of manifest exclusion or restriction.").

[13] As demonstrated above, CBOE's new interpretation of "trading system" contradicts the plain language of the claims and the specification, as well as CBOE's representations to this Court.

13

construction in expert discovery concerning infringement and invalidity, and to avoid the unnecessary expense and waste of judicial resources due to CBOE's misguided interpretation of this Court's Order, which directly contradicts the language of the '707 Patent, as well as its own admissions, ISE believes that the appropriate time for clarification is now.

## V. CONCLUSION

For the foregoing reasons, this Court should make clear that an "automated exchange" is a "fully computerized system which automatically matches and allocates trades without the use of open outcry."

Dated: February 8, 2010

| | |
|---|---|
| Michael D. Huber<br>Cray Huber Horstman Heil & Van Ausdal LLC<br>303 W Madison, Suite 2200<br>Chicago, IL  60606<br>Telephone No.:  (312) 332-8450<br>Facsimile No.:   (312) 332-8451 | s/Michael S. DeVincenzo<br>Parker H. Bagley<br>Steven R. Gustavson<br>Michael S. DeVincenzo<br>GOODWIN PROCTER LLP<br>The New York Times Building<br>620 Eighth Avenue<br>New York, New York  10018<br>Tel.:  212.813.8800<br>Fax:  212.355.3333<br>*Attorneys for Defendant International Securities Exchange, LLC* |

## **CERTIFICATE OF SERVICE**

      The undersigned certifies pursuant to Fed. R. Civ. P. 5 and L.R. 5.5, that a true and correct copy of the foregoing document was filed on February 8, 2010 with the Clerk of the Court using the CM/ECF system, which will send notice to counsel of record.

                                                /s/ Michael S. DeVincenzo
                                                Michael S. DeVincenzo