**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHICAGO BOARD OPTIONS EXCHANGE, INCORPORATED,<br><br>    Plaintiff,<br><br> v.<br><br>INTERNATIONAL SECURITIES EXCHANGE, LLC,<br><br><br>    Defendant. | Case No. 07-cv-00623<br><br>Hon. Joan H. Lefkow, U.S.D.J.<br>Hon. Jeffrey Cole, U.S.M.J. |

**CHICAGO BOARD OPTIONS EXCHANGE'S STATEMENT OF**
**UNCONTESTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR**
**SUMMARY JUDGMENT OF NON-INFRINGEMENT**

   Pursuant to Local Rule 56.1, plaintiff Chicago Board Options Exchange, Incorporated

("CBOE") respectfully submits this statement of material facts as to which there is no genuine

issue of dispute and which entitle CBOE to a judgment of non-infringement as a matter of law.

**The Parties**

1.  Plaintiff CBOE is a Delaware corporation having its principal place of business at 400

South LaSalle Street, Chicago, Illinois 60605.  D.I. 1 at ¶ 1.

2.  Defendant International Securities Exchange, LLC ("ISE") is a Delaware corporation

having its principal place of business at 60 Broad Street, New York, New York 10004.  D.I. 1 at

¶ 2.

**Jurisdiction and Venue**

3.  This action arises under the Patent Laws of the United States, Title 35, United States

Code, Section 1 *et seq*.  D.I. 1 at ¶ 3.

4.      This Court has subject matter jurisdiction under the provisions of Title 28, United States Code, Sections 1338(a), 2201 and 2202.  D.I. 1 at ¶ 4.

5.      The venue in this judicial district is proper under Title 28, United States Code, 1391(b) and 1391(c), in that a substantial part of the property that is the subject of this action is situated in this judicial district and International Securities Exchange, Inc. is subject to personal jurisdiction in this district.  D.I. 1 at ¶ 5.

**<u>The Patent-in-Suit</u>**

6.      ISE asserts that claims 1, 2, 3, 4, 5, 6, 9, 10, 22, 23, 35, 36, 43, 45, 56, 57,  and 58 of U.S. Patent No. 6,618,707 ("the '707 patent," Exh. 1 to the Doyle Decl.) are infringed by CBOE's Hybrid Trading System ("Hybrid").  *See* Exh. 2 to the Declaration of Brian J. Doyle (hereinafter the "Doyle Decl."), ISE's [CORRECTED] Third Supplemental Response to Interrogatory No. 1 at 6.

7.      In its infringement contentions, ISE defines "Accused Exchange" to mean "CBOEdirect—CBOE's fully computerized method of executing trades—and CBOE's Hybrid Trading System, which comprises CBOEdirect" and accuses third-party exchanges of infringing the '707 patent.  Exh. 2 to Doyle Decl., ISE's [CORRECTED] Third Supplemental Response to Interrogatory No. 1 at 6.

8.      All of the claims asserted by ISE in this case either contain the limitation "automated exchange" or depend from claims that contain the limitation "automated exchange."  *See* Exh. 1 to the Doyle Decl. '707 patent.

9.      This Court construed the limitation "automated exchange" as follows:

> For purposes of the '707 patent, an "exchange" is a method for executing trades of financial instruments.  An institution that effects the trading of financial instruments may have one or more

"exchanges," or methods, for executing trades of financial instruments.

For purposes of the '707 patent, "automated" means fully computerized, such that its protocol does not include matching or allocating through use of open outcry in order to execute trades.[1] Stated conversely, a method that effects trades of financial instruments by automatically matching and allocating but also entails "oral communications between market professionals at a central location in open view of other market professionals" ('707 patent, col. 1, ll.24-29) is not fully computerized and therefore not "automated."

For purposes of the '707 patent, "automated exchange," is a method for executing trades of financial instruments that is fully computerized, such that it does not include matching or allocating through use of open outcry.

The Final Claim Construct For U.S. Patent No. 6, 618,707 (#286) as it pertains to "automated exchange" is modified accordingly.

1. The court accepts the argument of CBOE that the patent disavows floor-based trading.

*See* D.I. 300.

10.    The following is an excerpt from the status conference on April 1, 2010:

ISE Counsel: Yes, your Honor. Well, in reality hybrid, under your claim construction, is two methods of trading: a floor-based method of trading and a fully computerized method of trading.
* * *
The Court: Okay. Well, let's focus a little bit more narrowly here. I get the sense that you – I'm sure you disagree with my claim construction. But aren't you arguing that I should change my mind?

*See* Exh. 3 to Doyle Decl., April 1, 2010 Conference Tr. 10:15-12:12.

11.    Claims 1-6, 9, 10, 22 and 23 of the '707 patent contain the limitation "system memory means."  *See* Exh. 1 to Doyle Decl., '707 patent col. 29, l. 53 – col. 34, l. 5.

12.    Claims 35, 36, 43, 45 and 56-58 of the '707 patent contain the limitation "matching."  *See* Exh. 1 to Doyle Decl., '707 patent col. 35, l. 23 – col. 39, l. 40.

## BACKGROUND FACTS

**Trading at CBOE Before the Creation of the Hybrid Trading System**

13.     Trading at CBOE began in 1973.  *See* Exh. 28, ISE0261180-82 at 80.

14.     In October 2001, CBOE experimented with a fully electronic trading system that it had created.  Declaration of Eileen C. Smith (hereinafter the "Smith Decl.") at ¶¶ 16, 17; Exh. 31, SEC Release No. 34-47628 at § I.

15.     CBOE had been working to develop a Screen-Based Trading system at least since 1995. *See*, *e.g.*, Exh. 4 to Doyle Decl., "Screen-Based Trading Committee 1995 Report" at CBOE004400; *see also* Smith Decl. at ¶ 16.

16.     The founders of ISE did not begin to think about developing a fully electronic exchange until some point in 1996.  *See* Exh. 5 to Doyle Decl., Porter Dep. 28:9-21; 34:6-9; 35:19-36:8; Exh. 7 to Doyle Decl., Katz Dep. 155:21-24; Exh. 6 to Doyle Decl., Averbuch Dep. 56:6-19.

17.     Trading on the SBT System was discontinued permanently prior to the start of trading on the Hybrid Trading System, which began in June 2003.  *See* Exh. 8 to Doyle Decl., Rule 30(b)(6) Dep. of CBOE taken through Eileen Smith 105:13-18; 126:13-16; Smith Decl. at ¶ 17; Exh. 10, Montesano Dep. at 22:24-23:3.

18.     Some members of the SBT Committee believed that open outcry trading could effectively compete against wholly electronic trading.  *See* Exh. 9 to Doyle Decl., Angell Dep. 105:17-107:15.  Other members favored electronic trading.  *See id*. at 130:15-131:4.  Members of the CBOE Equity Floor Procedures Committee, which was involved in the development of exchange trading procedures, determined that fully electronic trading was unappealing and refrained from opposing the Hybrid Trading System only because it "preserved their open outcry model."  Exh. 8 to Doyle Decl., Rule 30(b)(6) Dep. of CBOE taken through Eileen Smith 101:17-102:14.

**Historic Development of the Hybrid Trading System**

19.     To create the Hybrid Trading System, CBOE had to substantially modify CBOEdirect to combine computerized trading with open outcry trading in one exchange.  These modifications included, among other things, alterations to the allocation algorithm and order routing capability such that CBOEdirect could route orders to various aspects of the open outcry trading floor including floor brokers and PAR stations.  *See* Smith Decl. ¶¶ 18, 19.

20.     Anthony Montesano is Vice President of Trading Systems Development at CBOE.  *See id.* at 29:17-19; Exh. 29 to Doyle Decl., CBOE Organizational Chart, CBOE001336-1381 at CBOE0011348.  Anthony Montesano testified as follows:

> I think our Hybrid development came out of a desire to advance our technology like we always have.  And I think the Hybrid was an effort to leverage some of what went into SBT system with our heritage as – as an open outcry exchange and all of the liquidity that we have, and it was an effort to get all of those liquidity providers to be able to represent our own interest rather than have an aggregate.

*See* Exh. 10 to Doyle Decl., Montesano Dep. 78:21-79:5.

> And, you know, our goal was to leverage all of our cumulative knowledge, our heritage of executing automatic – in electronic fashion small customer orders with our blending of all of the different liquidity providers that CBOE had and our brokerage community, which, you know, allows – some electronic executions were taking place on various ISE orders.

*See* Exh. 10 to Doyle Decl., Montesano Dep. 79:22-80:5.

21.     Philip Slocum is Executive Vice President for Trading Operations at CBOE.  *See* Exh. 11 to Doyle Declaration, Slocum Dep. 12:5-6.  Mr. Slocum testified as follows:

> Q:  Can you identify the other reasons besides political ones why the open outcry or floor-based trading was continued as part of the Hybrid system?
> A:  It's one of our strengths.  It was our heritage.  That's what we've done for years.  We were trying to enhance that, not replace

> it.  That where I came from on Hybrid  . . . to build from that, not
> take away from it.

*See id*. at 115:5-15.

22.     Eileen Smith is Director of Systems Planning and Corporate Statistics at CBOE and is

responsible for developing trading systems.  One of her main responsibilities involving CBOE's

Hybrid Trading System and its ongoing operation relates to improvements, enhancements and

modifications of the Hybrid Trading System.  *See* Exh. 14 to Doyle Decl., Smith Dep. 6:5-16;

Smith Decl. at ¶¶ 3, 20.

23.     CBOE is the assignee of U.S. Patent No. 7,552,083 ("the '083 patent") which is entitled

"Hybrid Trading System For Concurrently Trading Through Both Electronic and Open-Outcry

Trading Mechanisms."  Exh. 12 to Doyle Decl., '083 patent at cover.

24.     CBOE is the assignee of U.S. Patent No. 7,613,650 ("the '650 patent") which is entitled

"Hybrid Trading System For Concurrently Trading Securities or Derivatives Through Both

Electronic and Open-Outcry Trading Mechanisms."  Exh. 13 to Doyle Decl., '650 patent at

cover.

## MATERIAL FACTS

### The Hybrid Trading System Entails Open Outcry Trading and Electronic Trading in A Single Exchange

25.     Eileen Smith, Director of Systems Planning and Corporate Statistics at CBOE (*see* Exh.

14 to Doyle Decl., Smith Dep. 6:5-16), testified as follows:

> Q:  Do you know what is meant by ["Separate Engine"]?
> A:  Yeah. The idea we'd bring up – we have two exchanges**.**  One
> would be electronic, and one would be open-outcry or – yeah.  One
> would be the fully electronic exchange, like on the SBT system,
> and the other would be the – the exchange as it existed at the time.
> Q:  Okay.  How – how was that distinguished from – from the
> Hybrid system that ultimately was implemented?
> A:  *The Hybrid system is one exchange.*

*See* Exh. 8 to Doyle Decl., Rule 30(b)(6) Dep. taken through Smith 119:2-13 (emphasis added).

26.     Anthony Montesano, Vice President of Trading Systems Development at CBOE (*see*,

*e.g.*, Exh. 10 to Doyle Decl., Montesano Dep. 29:17-19), testified as follows:

> [M]y view of how we implement on Hybrid was to take a very
> small feature of the CBOEdirect screen-based trade engine, and
> that is, its matching technology, and we integrated that into a
> whole complex of systems.
>       In my mind, the CBOEdirect technology is totally separate,
> distinct and non-comparable to our screen-based technology [of the
> abandoned SBT System].   It's – it's not similar at all.   There was
> just a component of the CBOEdirect trade engine that is used in
> Hybrid, and the platform is built on the CBOE network, but it's --
> it doesn't resemble the SBT System at all.
>
> *                *                *
>
> The  Hybrid  system  blends  the  elements  of  open  outcry  and
> electronic execution in a way that's totally distinct from a Screen-
> Based Trading System**.**  And humans can place bids or offers in the
> Hybrid model from the pit, and they can represent bids and—bids
> and offers that are representative of orders, for example, that a
> broker might be holding.  And they could do that manually.
>       They can also trade interactively with pit members and the
> – the electronic bids and offers.   And there are also orders that
> require human intervention that are not contemplated in the
> Screen-Based Trading System, totally different.   Hybrid – the
> Hybrid market model would not work as a screen-based method.

Exh. 10 to Doyle Decl., Montesano Dep. 61:20-63:23.

27.     Along with Ms. Smith, Mr. Montesano was responsible for developing the Hybrid

Trading System.  *See* Smith Decl. ¶ 20.

28.     The Hybrid Trading System integrates open outcry and electronic trading such that

Hybrid Trading System's open outcry and electronic trading are interdependent.  For example, if

open outcry trading were to cease, the Hybrid Trading System would not function because orders

(including electronic orders) are routinely routed to open outcry for execution and would

continue to be so routed even in the absence of any open outcry trading.  *See* Smith Decl. ¶ 10.

29.     The Hybrid Trading System includes an electronic trade engine (CBOEdirect) that incorporates an order routing system and an electronic book ("eBook") for storing orders and quotations that come from both open outcry and sources remote from the trading floor.  *See* Smith Decl. ¶¶ 6, 15.

30.     Since its inception, the Hybrid Trading System has operated various algorithms to route electronically-received orders to the trading floor for execution through open outcry.  *See* Smith Decl. ¶ 14.

31.     An order that is electronically entered into the Hybrid Trading System can be matched and allocated electronically, or matched and allocated in open outcry, or matched and allocated with some portion of the order matched and allocated electronically and some portion of the order matched and allocated in open outcry.  *See* Smith Decl. ¶¶ 11, 15.

32.     An order that is entered into the Hybrid Trading System from open outcry can be matched and allocated electronically, or matched and allocated in open outcry, or matched and allocated with some portion of the order matched and allocated electronically and some portion of the order matched and allocated in open outcry.  *See* Smith Decl. ¶¶ 11, 12, 15.

33.     The electronic trade engine receives orders and/or quotations either from market makers who are on the floor or electronically from CBOE members.  *See* Smith Decl. ¶¶ 6-8, 12, 15.

34.     Certain orders for trading option contracts are routed in whole or in part to the open outcry component of the Hybrid Trading System for execution.  Orders may also be routed directly from open outcry to the trade engine component for execution or stored in the eBook containing orders and quotations.  *See* Smith Decl. ¶¶ 11, 12, 15.

35.     Orders in any class on the Hybrid Trading System, whether received from open outcry or electronically, are eligible to be executed, in whole or in part, in open outcry and electronically. *See* Smith Decl. ¶¶ 11-13.

36.     In its latest infringement contentions, ISE states:

> Under certain circumstances, CBOE matches and allocates trades using CBOE's open outcry method of trading. ISE does not assert that CBOE's open-outcry method of trading infringes the '707 Patent. The court determined that the '707 Patent disclaimed an open-outcry method of trading. Because the Accused Exchange entail [sic] a method that matches and allocates without the use of the open outcry method of trading, the Court's finding of disclaimer does not preclude a finding of either literal infringement or infringement under the doctrine of equivalents with respect to the Accused Exchange.

Exh. 2 to Doyle Decl., ISE's [CORRECTED] Third Supplemental Response to Interrogatory No. 1 dated April 6, 2010, Exh. A at 6.

37.     Exhibit A to the Smith Declaration, reproduced below, illustrates the interaction between the floor of the Hybrid Trading System and the CBOEdirect trade engine of the Hybrid Trading System.  The order routing system of CBOEdirect routes orders that are received from open outcry and electronically to the trading floor or the CBOEdirect trade engine (including the CBOEdirect eBook).  Orders are filled by a combination of open outcry and automatic matching and allocation in the CBOEdirect trade engine.  *See* Smith Decl. ¶ 14.



THE HYBRID TRADING SYSTEM

38.    Exhibit B to the Smith Declaration, reproduced below, is a schematic that illustrates how

the rules of the Hybrid Trading System handle incoming orders.  *See* Smith Decl. ¶ 15.

Handling of Incoming Orders on the Hybrid Trading System

NOTE:  Orders in the eBook include those from floor brokers, PAR Officials (i.e., people representing open outcry orders), and in-crowd market makers.  CBOE Rule 7.4.

39.     Equity options classes that trade at the CBOE are listed as trading on the Hybrid Trading System.  There are no options classes that are listed for trading solely on the electronic trade engine of the Hybrid Trading System.  *See* Smith Decl. ¶ 13.

**The SEC-Approved Trading Rules for CBOE's Hybrid Trading System Require Open Outcry Trading**

40.     CBOE operates the Hybrid Trading System under trading rules approved by the Securities and Exchange Commission ("SEC").  These rules were first submitted for approval in January 2002.  *See* Exh. 15 to Doyle Decl., SEC Approval Order at ISE0565104.

41.    Rule 6.45A, entitled "Priority and Allocation of Equity Options Trades on the CBOE

Hybrid System," governs the manner in which trades are allocated in the Hybrid Trading System.

*See* Exh. 16 to Doyle Decl., Smith Dep. 45:8-11.  Rule 6.45A reads, in part, as follows:

> The rules of priority and order allocation procedures set forth in
> this rule shall apply only to equity option classes designated by the
> Exchange to be traded on the CBOE Hybrid System…The term
> "market participant" as used throughout this rule refers to a
> Market-Maker, a DPM, an e-DPM, and *a floor broker or a PAR
> Official representing orders in the trading crowd*. The term *'in-
> crowd market participant' only includes an in-crowd Market-
> Maker, in-crowd DPM, and floor broker or PAR Official
> representing orders in the trading crowd.. . .*  The balance of the
> electronic order will be eligible to be filled at the refreshed quote
> either electronically (in accordance with paragraph (a)(i)(B)
> below) or *manually* (in accordance with Rule 6.45A(b)) and, as
> such, may receive a split price execution.

*See* Exh. 16 of Doyle Decl., ISE0261423-4 at 6.45A (emphasis added).

42.    The Hybrid Trading System allows market participants in open outcry to send orders or

quotations to Hybrid for electronic execution.  *See* Smith Decl. ¶¶ 8, 12, 15.   For example,

CBOE's Information Circular IC03-65 dated June 9, 2003 states:

> Each "In-Crowd Member" (ICM) can submit individual one-sided
> bids or offers, in the form of BUY and/or SELL orders,[] or a
> stream of two-sided auto-quotes into CBOEdirect, which is the
> trade engine for [the Hybrid Trading System]

Exh. 17 of Doyle Decl., CBOE000157500; *see also* Exh. 16 to Doyle Decl., ISE0261424 at Rule

6.45A(a)(i)(A)(2).

43.    Orders received electronically and from open outcry are entered into one electronic book,

the eBook, and are subsequently automatically matched and allocated against an incoming order.

*See* Smith Decl. at ¶¶ 6, 8, 12, 14, 15; Exh. 18 of Doyle Decl., Rule 7.4 (stating that "[m]arket

participants, as defined in Rule 6.45A or 6.45B in Hybrid classes shall be eligible to submit order

for entry into the book").

44.     Rule 6.13 states:

> The CBOE Hybrid System is a trading platform that allows
> automatic executions to occur electronically and open outcry trades
> to occur on the floor of the Exchange pursuant to the priority and
> allocation principles contains in Rule 6.45A.

Exh. 19 to Doyle Decl., CBOE 003285, CBOE Rule 6.13.

45.     Rule 6.45A(b), entitled "Allocation of Orders Represented in Open Outcry," provides in

pertinent part:

> (A) Public customer orders in the electronic book shall have first
> priority.
> * * *
> (B) Bids (offers) of in-crowd market participants shall have second
> priority.
> * * *
> (C) Bids (offers) of broker-dealer orders in the electronic book and
> electronic quotes of Market-Makers shall have third priority.

Exh. 16 to Doyle Decl., ISE0261427, Rule 6.45A.

46.     An incoming electronic order cannot be marked for execution on only the electronic trade

engine.  An individual market participant on CBOE cannot prevent the Hybrid Trading System

from routing her orders to the floor for matching and allocation in open outcry.  Among other

reasons, this is because there are numerous situations where it is impossible to have electronic

execution, such as where the order is too complex or there is inadequate size available in the

electronic book.  *See* Smith Decl. ¶¶ 11, 13, 15.

**The Hybrid Trading System is Not Fully Computerized and Entails Open Outcry**

47.     Mark Novak, Vice President in CBOE's System Division (*see* Exh. 20 to Doyle Decl.,

Novak Dep. 10:1-4; Exh. 20 to Doyle Decl., CBOE001366), testified as follows:

> Q:  Is it fair to describe the current Hybrid system as an electronic execution system hooked up to a floor system?
>
> * * *
>
> A:  No.
> Q:  Why not?
> A:  Because its an integrated system.
>
> * * *
>
> Q:  Was there ever a time where classes – where any class of option could not be traded on the floor and could only be traded via either the Hybrid system or the extended trading hour system? . . . Presently, the Hybrid system allows for certain classes to be traded electronically in addition to being traded on the floor; would you agree with that?
> A:  Well, I – no, because to me it's an integrated system.  And electronically means, you know, I've got multiple participants through APIs, but the floor is always a component there.

Exh. 20 to Doyle Decl., Novak Dep. 161:16-163:11.

48.     Ed Tilly is Executive Vice-Chairman of CBOE.  *See* Exh. 21 to Doyle Decl., Tilly Dep.

16:12-14).  Mr. Tilly testified as follows:

> Q:  What – as a named inventor on the patent application we were looking at earlier, what is our understanding of your invention described in that patent application?
> A:  Where would you like to start?
> Q:  Just generally.
> A:  A Hybrid system [is] one that, you know, uses the benefits of open-outcry, still maintaining an open-outcry presence with electronics that allow[] for multiple streaming quotes, orders, other expressions of interest at given points to be consolidated in one, all consolidated together.  Not a side-by-side approach but one point of liquidity.
> It allows for a number of different algorithms ultimately to split up incoming trades or orders or quotes.
> I think that, you know, and in its concept, that is what it is.  It is open-outcry and some electronics all coming together in one place, not running side by side, really, I think is a defining point.

Exh. 21 to Doyle Decl., Tilly Dep. 72:13-73:10.

49.     Stephen Chodash, Director of Systems Planning at CBOE (*see* Exh. 22 to Doyle Decl.,

Chodash Dep. 14:5-7), testified as follows:

14

Q: Okay. On Page CBOE002411900, or Page 2 of the document, in "Hybrid Systems Overview," it says "The Hybrid system is a marriage of two trading environments. The floor based environment consists of a mainframe with distribute satellite systems that support open outcry trading. The screen based trading environment consists of a clusters of distributed processors with API access to support external electronic users." Do you agree that the Hybrid system is a marriage of these two trading environments?

* * *

A: I agree that the two systems were merged together to provide a new functionality called Hybrid.

Exh. 22 to Doyle Decl., Chodash Dep. 69:2-16.

## ISE Has Admitted That the Hybrid Trading System Is Not "Fully Computerized" and Uses Open Outcry

50.     In a comment letter to the SEC regarding the Hybrid Trading System, ISE stated:

> The Proposal [Hybrid Trading system proposed rules] provides that when competing market maker orders are not eligible for automatic execution they *must be routed to a floor broker in the firm's booth*. Upon receipt, *they are printed and handled by the broker manually*, rather than sent to BART, which is available for the routing of other broker-dealer orders and allows a broker to manage orders electronically. *As a result, the Proposal requires that orders for the account of a competing market maker be handled in the most inefficient an possibly most expensive (when including floor brokerage charges) of all alternatives otherwise available on the CBOE.*

Exh. 23 to Doyle Decl., ISE0001539-ISE0001543 at ISE0001542 (emphasis added).

51.     A patent application filed in September 2005 which is assigned to ISE states:

> Exchanges may be floor-based, fully electronic, or utilize a *hybrid model that incorporates some floor-based features and some electronic features*. An example of a floor-based exchange is the New York Stock Exchange ("NYSE"). An example of a fully-electronic exchange is the International Securities Exchange ("ISE"). *An example of a hybrid exchange is the Chicago Board Options Exchange ("CBOE").*

Exh. 24, U.S. Patent Application 2007/0055607at ¶ 4 (emphasis added).

## CBOE Has Obtained Patents Related To the Hybrid Trading System

52.     Both the '083 and '650 patents, assigned to CBOE, list the '707 patent as a "Reference

Cited." Exh. 12 and Exh. 13 to Doyle Decl., '083 patent and '650 patent at cover.

53.     In the Notice of Allowance for the '650 patent which is directed to a "Hybrid Trading

System For Concurrently Trading Securities or Derivatives Through Both Electronic and Open-

Outcry Trading Mechanisms," the patent examiner concludes:

> nothing in the prior art teaches or even suggests the *integration of traditional open-outcry methods with automated electronic order execution.* The instant invention is patentably distinct over the prior art because of the unique rule-based order routing algorithm which *integrates the features of open-outcry trade execution with electronic order trade execution.*

Exh. 25 to Doyle Decl., 9/22/09 Allowance in Ser. No. 10/423,201 (emphasis added).

**The Hybrid Trading System Does Not Include a "System Memory Means" As Required by the Asserted System Claims of the '707 Patent**

54.     The Court has construed the limitation "system memory means" as follows:

> Function:   Storing parameters of the entity administering the invention for allocating trades between the incoming order or quotation and the previously received orders and quotations.

> Structure:  System memory 26, bid matching process 34 and offer matching process 36.

*See* D.I. 286 at 5.

55.     The version of the CBOEdirect electronic trade engine of the Hybrid Trading System

stores rules for dividing an incoming order or quotation among orders and quotations in the

eBook in the mass storage (*e.g.*, hard disk drive) of one or more computers, and these rules are

loaded into memory during operation for use by CBOEdirect trade engine.  The rules for

allocating to customers as well as to professionals are stored together in the memory.  *See* Exh. 8

to Doyle Decl., Rule 30(b)(6) Deposition of Smith at 216:19–24, 288:5-289:1; s*ee* Smith Decl. ¶

21.

56.     In CBOEdirect, the rules for allocating to customers as well as to professionals are stored together in the memory.  *See* Exh. 8 to Doyle Decl., Rule 30(b)(6) Deposition of Smith at 216:19–24, 288:5-289:1; s*ee* Smith Decl. ¶ 21.

57.     The Hybrid Trading System does not include processes that perform the function of storing parameters of the entity administering the invention for allocating trades between the incoming order or quotation and the previously received orders and quotations.  *See* Smith Decl. at ¶ 21.

58.     In its latest infringement contentions, ISE states:

> The Accused Exchange satisfies the structure of the "system memory means" because it contains a memory and rules for matching and allocating bids and offers.  Those structures perform the identical function of the "system memory means" because the system memory of the Accused Exchange stores the allocating parameters, which are the bid matching process and the offer matching process, for allocating trades between the incoming order or quotation and the previously received orders and quotations.

Exh. 2 to Doyle Decl., ISE's [CORRECTED] Third Supplemental Response to Interrogatory No. 1 dated April 6, 2010, Exh. A at 8-9.

59.     ISE's opening claim construction brief states the following:

> Specifically, the prosecution history states that "parameters stored in the system memory are used to allocate portions of an incoming order or quotation, amended claims 1 and 35 recite this as an 'allocating' parameter." DeVincenzo Decl. Ex. H at ISE0000243 (emphasis added). *Thus, the structure disclosed for storing the allocating parameters is the memory of the general purpose computer* and not just the general purpose computer.

*See* D.I. 155 at 13-14 (emphasis added).

60.     The following are excerpts from the '707 patent:

> When the incoming order is for more than the predetermined PMM small order preference size, the bid matching process 34 and the offer matching process 36 allocate the trades among the professional orders and quotations at the best price according to an algorithm stored in the system memory 26.

17

Exh. 1 to Doyle Decl., '707 patent col. 15, ll. 26-31.

> The order process 25 initiates the bid matching process 34 and the offer matching process 36, which contain rules that give priority to public customer orders at the best price, then allocate any remaining part of an incoming order or quotation among the professional orders and quotations on a pro rata basis.

Exh. 1 to Doyle Decl., '707 patent col. 14, ll. 53-58.

61.    The following is an excerpt from the transcript of the *Markman* Hearing on August 21,

2009:

> ISE Counsel: Just real briefly.  The argument wasn't in their briefing so it's a little difficult but he seemed to be arguing that the function requires allocating to both customers and professionals even though that doesn't appear in either Parties' recited function. And then because apparently it does require that, then you got to look to the spec and see, okay, what's clearly linked to doing customer orders and what's clearly linked to doing professionals.
>
> First -- I mean, the claim language doesn't require that.
>
> Second, the specification clearly links the system memory for storing allocating parameters and for storing allocating parameters for allocating trades between the incoming order or a quotation in the previously received orders and quotations. The spec says that and the prosecution history says it abundantly clear. That's why the word allocating was added to the -- when allocating was added in front of allocating parameters, it's to make clear that the system memory -- not the system memory means – the system memory stores allocating parameters.
>
> Lastly, just on the inventor testimony, I know we got into this a little last week, the *Howmedica* case they tried to distinguish it by saying it's really narrow.  That case says in no uncertain terms that inventors subject to belief regarding the claim terms is irrelevant and it describes it in paragraphs on why.  He doesn't understand claim instruction law, he might not have reviewed the spec.  He might not have reviewed the prosecution so that would be irrelevant.
>
> That's it, your Honor. Thank you.
>
> CBOE Counsel: I just wanted to clarify one point on that and it requires looking at Claim One. And the reason that we're talking about this distinction between customer orders and professional orders, I'm going to read -- do you have that claim there -- this system memory means and then go back and pick up the rest of what's there.

So if we're looking at Claim One, which is in Column 30, Line 1, it reads as follows:  System memory means for storing allocating parameters for allocating trades between the incoming order or quotation and the –

* * *

-- for allocating trades between the incoming order or quotation and the previously received orders and quotations.

Later on in the paragraph in Claim One, it states -- and this is at about Column 30, Line 9 -- wherein the allocating parameters include parameters for allocating a first portion of the incoming order or quotation against previously received customer orders and allocating a remaining portion of the incoming order or quotation preferentially against professional orders and quotations with larger size.

So in the context of the claim, there are parameters both for -- and this is Claim One, a significant claim in the patent -- the parameters are for the customer orders and they are also for the professional orders.

Thank you, your Honor.

ISE Counsel: Your Honor, just before turning to the next claim term which is the means for matching on a pro rata basis starting at Slide 67 of our presentation, I'll just note briefly that Mr. Francescani, the language he just read was not part of the recited function from Claim One.

Exh. 26 to Doyle Decl., Markman Hearing Tr. 290:22-293:12.

**The Hybrid Trading System Does Not Include "Matching" As Required by the Asserted Method Claims of the '707 Patent**

62.      The Court has construed the limitation "matching" as follows:

Identifying a counterpart order or quotation for an incoming order or quotation based on price. "Matching" is a process that is distinct from "allocating."

*See* D.I. 286 at 5.

63.      The limitation "matching" appears in every method claim in the '707 patent asserted

against CBOE.  *See* '707 patent; Exh. 2, ISE's [CORRECTED] Third Supplemental Response to

Interrogatory No. 1 dated April 6, 2010 at 6.

64.    Claim 35 of the '707 patent (and consequently it its dependent claims 36, 43, and 45) recites, in pertinent part:

> *first matching* a first portion of the incoming order or quotation against the public customer order stored in the book memory based on the allocating parameter; and
>
> *second matching* a remaining portion of the incoming order or quotation *preferentially against professional orders and quotations with larger size based on the allocating parameter.*

*See* Exh. 1 to Doyle Decl., '707 patent col. 35, ll. 40-47 (emphasis added).

65.    The Court construed "allocating" to mean "[d]ividing all or portions of the incoming order or quotation among the previously received orders and quotations. 'Allocating' is a process that is distinct from 'matching.'" D.I. 286 at 4.

66.    The Court has construed "allocating parameters" to mean "[r]ules for dividing portions of the incoming order or quotation among the previously received orders and quotations." D.I. 286 at 2.

67.    ISE's infringement contentions with respect to claim 35 appear on pages 24-27 of the chart that ISE provided with its latest response to CBOE's Interrogatory No. 1.  *See* Exh. 2 to Doyle Decl., ISE's [CORRECTED] Third Supplemental Response to Interrogatory No. 1 dated April 6, 2010, Exh. A at 24-27.  ISE's infringement contentions with respect to the "matching" limitation in claim 35 appear on pages 26-27 of this same chart.  *See id*. at 26-27.  There is no text in the "Claim Construction" column of the portion of this chart pertaining to claim 35.

68.    Matching in the Hybrid Trading System is based solely on price, such that an incoming order or quotation is "matched" with all price compatible orders or quotations on the eBook. There are no distinct steps of matching against professionals and customers; the matching is performed in one step.  *See* Smith Decl. ¶ 23.

69.     Because an incoming order or quotation is "matched" with all price-compatible orders or quotations on the eBook, it is common for some orders or quotations that "match" an incoming order or quotation not to receive an allocation, or portion of the incoming order or quotation. The allocation process occurs after matching, and is accomplished based on rules for dividing an incoming order or quotation among orders and quotations in the eBook.  For example, allocation in the Hybrid Trading System can be based on the size of the orders and quotations in the eBook. *See* Smith Decl. ¶ 24.

70.     The following is an excerpt from the prosecution history of the '707 patent:

> Reconsideration is respectfully requested of the rejection of claims 62 and 64 under 35 U.S.C. § 112, second paragraph.  Applicant respectfully disagrees that these claims are indefinite.  With regard to claim 62, the terms 'first selecting,' 'first predicting,' 'second selecting,' and 'second predicting' are not intended to recite a temporal order to these steps.  The terms 'first' and 'second' are used only to distinguish selecting and predicting based on bids and offers, respectively, as distinct steps.

Exh 27 to Doyle Decl., '707 patent prosecution history, ISE0000096-ISE0000734 at ISE0000242.

71.     Hybrid determines if the eBook is at the national best bid or offer ("NBBO") and, if so, matches the incoming order against orders and/or quotations resting in the eBook.  *See* Smith Decl. ¶ 22; Exh. 8 to Doyle Decl., Rule 30(b)(6) Dep. of CBOE taken through Eileen Smith 318:10-320:23.

72.     With respect to the limitation "executing the step of matching," ISE's infringement contention consists of the statement that "[t]he Accused Process executes the step of matching." Exh. 2 to Doyle Decl., ISE's [CORRECTED] Third Supplemental Response to Interrogatory No. 1 dated April 6, 2010, Exh. A at 31.

73.    The following are excerpts from the transcript of the *Markman* Hearing on August 21,

2009:

> The Court:  [I]t doesn't make a lot of sense to talk about . . .
> matching on a pro rata basis.

Exh. 26 to Doyle Decl., Markman Hearing Tr. 303:10-13.

> ISE counsel:  If you define it as match based on price, then how
> can it be matched on a pro rata basis?

Exh. 26 to Doyle Decl., Markman Hearing Tr. 306:10-11.

74.    Claim 56 of the '707 patent (and, consequently, its dependent claims 57 and 58) recites,

in pertinent part:

> *matching* the incoming order or quotation against the orders and
> quotations stored in the book memory *based on the allocating
> parameter*; . . .
>
> and, if the best market price [on the automated exchange] is as
> good or better than the away market price, *executing the step of
> matching*.

*See* Exh. 1 to Doyle Decl., '707 patent col. 39, ll. 18-26.

75.    ISE's infringement contentions with respect to claim 56 appear on pages 29-30 of the

chart that ISE provided with its latest (April 6, 2010) response to CBOE's Interrogatory No. 1.

*See* Exh. 2 to Doyle Decl., ISE's [CORRECTED] Third Supplemental Response to Interrogatory

No. 1 dated April 6, 2010, Exh. A at 29-30.  ISE's infringement contentions with respect to the

"matching" limitation in claim 56 appear on page 30 of this same chart.  *See id*. at 26-27.  There

is no text in the "Claim Construction" column of the portion of this chart pertaining to claim 56.

76.    Rule 6.45A(a)(i)(B)(2) states "When more than one market participant is quoting at the

BBO, inbound electronic orders shall be allocated pursuant to the following allocation algorithm.

. ." Exh. 16 to Doyle Decl., Rule 6.45A at ISE00261424.

Respectfully submitted,

Dated:  April 15, 2010

By:   s/ *Jonathan A. Marshall*
Jonathan A. Marshall
David Francescani
Michael T. Zoppo
Brian J. Doyle
**FISH & RICHARDSON P.C.**
601 Lexington Ave., 52nd fl.
New York, NY 10022
Telephone: (212) 765-5070
Facsimile: (212) 258-2291

Paul E. Dengel
Stacie R. Hartman
Ayad P. Jacob
**SCHIFF HARDIN LLP**
6600 Sears Tower
233 South Wacker Drive
Chicago, IL 60606-6473
(312) 258-5500
(312) 258-5600 (*facsimile*)

*Attorneys for Plaintiff Chicago Board*
*Options Exchange, Incorporated*

Joanne Moffic-Silver
Jordan Newmark
**CHICAGO BOARD OPTIONS**
**EXCHANGE, INCORPORATED**
400S. LaSalle Street
Chicago, IL 60605
Telephone: (312) 786-7909

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2010, I electronically filed CHICAGO BOARD OPTIONS EXCHANGE, INC.'S CBOE'S STATEMENT OF UNCONTESTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

_s/  Jonathan A. Marshall_____