UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHICAGO BOARD OPTIONS EXCHANGE,
INCORPORATED,

                    Plaintiff,

        v.

INTERNATIONAL SECURITIES
EXCHANGE, LLC,


                    Defendant.

Case No. 07-cv-00623

Hon. Joan H. Lefkow, U.S.D.J.
Hon. Jeffrey Cole, U.S.M.J.

**REPLY MEMORANDUM OF CHICAGO BOARD OPTIONS EXCHANGE,
INCORPORATED IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF
NON-INFRINGEMENT**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................. 1

II. Legal Standard ................................................................................................ 2

III. Argument ........................................................................................................ 3

A. The accused Hybrid Trading System is a single exchange, and it is not "automated." ......................................................................................... 3

    1. The '707 patent claims are not limited to trade execution. .......................................................................................... 4

    2. The evidence establishes beyond genuine dispute that the Hybrid Trading System is one exchange, not two. ............. 5

    3. Hybrid's CBOEdirect trade engine is not an exchange. .......... 12

B. There is no genuine dispute that Hybrid does not include a "system memory means" as required by the system claims of the '707 patent. ........................................................................................... 16

    1. ISE offers two claim construction arguments, one of which the Court already rejected, the other of which rewrites the Court's construction. ........................................... 17

    2. ISE does not dispute that, as a matter of law, it cannot rely on equivalents. ............................................................ 19

    3. Summary judgment on this issue must be granted because ISE does not prove the existence of the "system memory means." ............................................................... 19

C. Hybrid Does Not Perform the "Matching" Steps of Claims 35 and 56 ............................................................................................. 21

    1. Hybrid does not "match . . . based on an allocating parameter." ......................................................................... 22

    2. Hybrid matches in one step. ...................................................... 24

IV. Conclusion ...................................................................................................... 25

## TABLE OF AUTHORITIES

Page(s)

CASES

*Creo Prods v. Presstek, Inc.*,
   305 F.3d 1337 (Fed. Cir. 2002)...........................................................................19

*Interactive Pictures Corp. v. Infinite Pictures, Inc.*,
   274 F.3d 1371 (Fed. Cir. 2001)...........................................................................19

*Nomos Corp. v. Brainlab USA, Inc.*,
   357 F.3d 1364 (Fed. Cir. 2004)......................................................................17, 19

*O.I. Corp. v. Tekmar Co., Inc.*,
   115 F.3d 1576 (Fed. Cir. 1997)...........................................................................16

*Odectics, Inc. v. Storage Tech. Corp.*,
   185 F.3d 1259 (Fed. Cir. 1999)...........................................................................19

*TechSearch, LLC v. Intel Corp.*,
   286 F.3d 1360 (Fed. Cir. 2002)...........................................................................20

STATUTES

35 U.S.C. § 112, ¶ 6................................................................................................19

OTHER AUTHORITIES

Local Rule 56.1.......................................................................................................20

## I.   INTRODUCTION

CBOE seeks summary judgment of non-infringement because its Hybrid Trading System ("Hybrid") (1) is not an "automated exchange" as required by all claims of the '707 patent asserted by ISE; (2) does not include a "system memory means" as required by all systems claims asserted by ISE; and (3) does not perform the "matching" steps required by all method claims in this case.

In attempting to create the illusion of a *genuine* issue of *material* fact, ISE must recycle arguments that have previously been rejected by the Court, ignore or rewrite the Court's construction of claim terms at issue, as well as some language of the claims themselves, play fast and loose with the facts, and, for the first time, accuse additional exchanges of infringement while failing to establish any genuine issue of material fact with respect to any of such newly-accused exchanges.

With respect to the issue of whether Hybrid is an "automated exchange," ISE again asserts that Hybrid is actually two exchanges rather than one. In doing so, ISE repeats an argument that the Court rejected during the *Markman* process and was considered by the Court to be a reargument of the *Markman* ruling when presented again by ISE at the April 1, 2010 status conference. To make this recycled, failed argument, ISE had to rewrite the claims at issue and ignore or rewrite the bulk of the Court's *Markman* Order. ISE has also been unable to decide whether CBOEdirect is part of Hybrid or an "automated exchange" on its own, so it makes both assertions, ignoring the impossibility of that proposition. Moreover, to make its case, ISE must conflate the abandoned Screen Based Trading system ("SBT system") of CBOE, which contained a past version of CBOEdirect, with the modified electronic trade engine of the same name which *is* part of Hybrid. Even with all this, ISE still fails to rebut the proofs adduced by

1

CBOE that Hybrid is a single exchange, with a single electronic order book, for trading a financial instrument that fully merges electronic components and open outcry in a manner that the Court has found was disavowed by the '707 patent.

Regarding the issue of whether Hybrid has a "system memory means" as required by all the systems claims in suit, ISE does not dispute any material facts or that, as a matter of law, it cannot rely upon the doctrine of equivalents. Rather, it comes up with two different claim constructions. The first is a brand new claim construction that has never before seen the light of day. Alternatively, ISE offers a claim construction that surreptitiously rewrites the Court's construction by changing the conjunctive to a disjunctive. ISE also neglects to inform that this second offering has already been rejected by the Court during the *Markman* proceedings. In any event, because it fails to apply the Court's construction, ISE's "opposition" is a non-starter.

Finally, as to the question of whether Hybrid performs the "matching" steps required by all the method claims asserted by ISE, the opposition pointedly ignores the distinction made in the *Markman* Order between the terms "matching" and "allocating." Because ISE's opposition is based upon its own construction rather than the Court's, it too must fail in the face of the proofs offered by CBOE.

## II.    LEGAL STANDARD

ISE's opposition ignores certain basic propositions of law which are critical to the determination of this motion, notably that "[i]t is axiomatic that the patentee bears the burden of proving infringement." *Ultra-Tex Surfaces, Inc. v. Hill Bros. Chemical Co.,* 204 F.3d 1360, 1364 (Fed. Cir. 2000). The Federal Circuit takes seriously a patentee's obligation to bring proof of infringement to rebut a motion for summary judgment of non-infringement: "If our previous opinions have not made clear the landscape of summary judgment law in infringement litigation,

2

we do so here.  Summary judgment is a trap for the unwary plaintiff." *Novartis Corp. v. Ben Venue*, 271 F.3d 1043, 1054 (Fed. Cir. 2001).  Disproving the existence of an infringing product is not the responsibility of the accused infringer; instead, the patentee must show that it can prove infringement at trial.  *Id.* at 1050.  Indeed, "[u]nder modern summary judgment law, a patentee who fails to provide probative evidence of infringement runs the risk of being peremptorily nonsuited."  *Id.*

Where an alleged infringer moves for summary judgment of non-infringement, the burden of going forward to establish that there are genuine issues of material fact on the issue of non-infringement rests with the patentee.  *See Ricoh Co., Ltd. v. Quanta Computer Inc.,* 550 F.3d 1325, 1344 (Fed. Cir. 2008).  However, "[s]ummary judgment of noninfringement is also appropriate where the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, because such failure will render all other facts immaterial." *TechSearch, L.L.C. v. Intel, Corp.,* 286 F.3d 1360, 1369 (Fed. Cir. 2002).

## III.   ARGUMENT

### A.   The accused Hybrid Trading System is a single exchange, and it is not "automated."

In seeking to conjure up a genuine issue of material fact to defeat CBOE's summary judgment motion, ISE has created the following argument:

1.   The claims of the '707 patent are limited to the manner in which trades are *executed*.

2.   Electronic trade execution and open outcry trade execution are different methods of executing trades.

3.   Since Hybrid can accomplish both methods of trade execution, Hybrid has two exchanges, one of which is an "automated exchange."

ISE's argument is premised on the unsupportable proposition that the '707 patent claims are limited to trade execution, a stubborn refusal to acknowledge that Hybrid's electronic and open outcry components together form a single trading system, and a selective, skewed reading of the Court's *Markman* Orders as well as the '707 patent itself.[1]   ISE's opposition is fatally flawed because the Court's Order explicitly provides that the two "methods of trade execution" pointed to by ISE can - - consistent with the disavowals in the '707 patent - - be part of a single exchange. *See* D.I. 300.

1.     **The '707 patent claims are not limited to trade execution.**

All of the asserted claims of the '707 patent contain one of the two following phrases: "an automated exchange for *trading* a financial instrument" or "a process for *trading* a financial instrument[2] on an automated exchange." [3]   There can be no dispute that the term in the claims is "trading," not "executing."

The claims of the '707 patent do not recite to *executing* a trade of a financial instrument, but  rather to an automated exchange for *trading* a financial instrument and a process for *trading* a financial instrument on an automated exchange.   To stave off summary judgment, however, ISE has had to resort to rewriting the claim language in the '707 patent.   Thus, ISE represents to the Court:

---

[1] Aside from being completely immaterial to any issue raised by CBOE's summary judgment motion, it is irresponsible and absurd for ISE to speculate without proof in footnote 3 of its Opposition that there is any connection between the amount of money CBOE may seek to raise through a potential IPO and ISE's damages claim.

[2] ISE uses the term "executing" as a term of art that refers to the process of finalizing a trade that takes place *after* matching and allocating.   In contrast, however, the Court's Order makes clear that "executing" refers to the entire process of executing a trade, including receiving an incoming order or qutoation, matching, and allocating.

[3] An exception is non-asserted claim 68 that is directed to "a process for trading option contracts on an automatic exchange..."

4

> The asserted claims recite "an automated exchange for *executing* a trade of
> a financial instrument".

D.I. 317 at 12–13.

This is simply a misrepresentation. The asserted claims do not use the phrase "executing a trade of a financial instrument." So ISE must rewrite the '707 claim language to enable its argument that summary judgment should not be granted because Hybrid can execute trades in two ways (open outcry and electronic execution) and that there is an issue of infringement because the '707 claims are directed to an automated method of execution. This is simply not the case. The '707 patent claims are directed to an automated exchange for *trading* a financial instrument. As noted in the Court's *Markman* clarification Order, an exchange "that *effects trades* of financial instruments by automatically matching and allocating but also entails [open outcry] is not fully computerized and therefore not 'automated.'" *See* D.I. 300.

Based on the Court's construction of "automated exchange" and the fact that the claims are directed to an automated exchange for trading a financial instrument, ISE's attempt to recast the *Markman* decisions as applying to a method of trade execution that occurs *within* an exchange is meritless.

> 2.   **The evidence establishes beyond genuine dispute that the Hybrid Trading System is one exchange, not two.**

ISE seeks to create a genuine issue of material fact by arguing that Hybrid is really two exchanges because trades can be executed through a computerized system and through open outcry. In reality, Hybrid combines electronic and open outcry trading into a single exchange.

Thus, in its May 30, 2003 order approving the Hybrid Trading System, the SEC declared that Hybrid is "an options trading *platform* that would *combine the features of electronic and*

*open outcry*... while, at the same time providing market makers the ability to electronically stream their own quotes." *See* D.I. 320, Exh. 52 at ISE0565105 (emphasis added).

Also, Eileen Smith, CBOE Director of Systems Planning and Corporate Statistics, stated in her declaration in support of summary judgment of non-infringement:

> The Hybrid Trading System *merges* open outcry and electronic trading such that Hybrid Trading System's open outcry and electronic trading are *interdependent*. For example, if open outcry trading were to cease, the Hybrid Trading System would not function because orders (including electronic orders) are routinely routed to open outcry for execution and would continue to be so routed even after open outcry trading ceased. The orders that route to open outcry in such a situation would not get executed. An exchange is not considered operable if it is unable to execute orders.

D.I. 311, ¶ 10 (emphasis added).

Further evidence that Hybrid is one exchange in which open outcry and electronic trading are merged is that there is only one electronic book in Hybrid for storing orders submitted electronically and from open outcry. D.I. 311, ¶ 6; D.I. 320, Exh. 52 at ISE0565107 ("Orders represented in the trading crowd would first be executed against public customer orders in the electronic book.").

In addition to the unrefuted, detailed description of the merger of open outcry and electronic matching and allocating in Hybrid that appears in paragraphs 6 through 15 of the Smith Declaration (as well as the SEC approval order for Hybrid), Ms. Smith provided Exhibits A and B that illustrate diagrammatically how Hybrid fully combines open outcry and electronic trading. ISE does not question the accuracy of those illustrations, but rather dismisses them as irrelevant on the basis that the '707 patent is infringed as long as there is any way within Hybrid to provide electronic execution, even if the executed orders originate from open outcry.

To reach this conclusion, however, ISE must completely ignore the Court's ruling that ISE has disavowed trading systems that entail open-outcry component and are not fully

6

computerized.[4] Ignoring its arguments to the contrary during the *Markman* process, ISE now seeks to sidestep the consequences of its disavowal, arguing that the claims are really directed to a component system within Hybrid.

ISE does not challenge the accuracy of the Smith Declaration. Rather, ISE argues that regardless of whether interdependent open outcry and electronic components—including the electronic book that stores orders from open outcry—have been merged into one exchange, because some trades execute in open outcry and others electronically means that there are two exchanges.

ISE ignores the merger of open outcry and electronic trading in one exchange, focusing instead only on the unclaimed end result – how the trades are executed.  All that matters in ISE's black box view is how an individual trade is executed.  But ISE's flawed analysis is contradicted by the express claim language which provides that trading a financial instrument on an automated exchange involves receiving an incoming order or quotation. *See, e.g.,* claims 1 and 35.  Further, although ISE would exclude CBOE's order routing process from the overall process of trading a financial instrument on an automated exchange, receiving incoming orders and quotations is a required element of trading.  That is why the order routing system of CBOEdirect described in paragraphs 11-15 of the Smith declaration, which receives incoming orders and quotations, is critical to understanding how Hybrid operates such that the CBOEdirect electronic trade engine is merged with open-outcry trading.

Even ISE originally urged that Hybrid was a single exchange having two trading platforms. *See* D.I. 320, Exh. 66 at 80:15-20.  But the Court's subsequent rejection of ISE's

---

[4] In the Court's clarification of its *Markman* order, the Court accepted "the argument of CBOE that the patent disavows floor-based trading." D.I. 300.

7

proposed construction, together with the ruling on disavowal, has caused ISE to reverse course and adopt the exact opposite view of the world which it now advocates with equal seriousness.

> (a)     **ISE's two-exchange argument was rejected by the Court during the *Markman* proceedings.**

ISE's argument that there is a genuine issue of material fact because certain trades on Hybrid are executed electronically is a recycled version of the argument rejected by the Court during the *Markman* process.

There, ISE argued that the claim term "automated exchange" meant "An exchange that *includes* a system that automatically matches incoming orders….." But in the initial *Markman* Order (D.I. 286), the Court instead accepted CBOE's proposal that an "automated exchange" was "a fully computerized exchange in which no matching or allocating is performed manually… ." ISE then filed a motion for clarification in which it argued that automated exchange should be a "fully computerized system [rather than exchange] which automatically matches…." *See* D.I. 290 at 6.

The Court granted ISE's motion for clarification but stated that for purposes of the '707 patent, the term "automated exchange" is a method for executing trades of financial instruments that is fully computerized, such that it does not include matching or allocating through the use of open outcry. D.I. 300. The Court also noted that "a method that effects trades of financial instruments by automatically matching and allocating but also entails 'oral communications between market professionals…' is not fully computerized and therefore not 'automated.'" D.I. 300. The Hybrid trading system fits that description—it entails open outcry.

ISE now seeks to manufacture an issue of fact by interpreting the clarified *Markman* Order to mean that any automated system for executing trades is an "automated exchange." To do that ISE has had to ignore the portion of the clarified *Markman* Order that states that "a

method that effects trades of financial instruments by automatically matching and allocating but also entails 'oral communications between market professionals...' is not fully computerized and therefore not 'automated.'" D.I. 300.

(b)   <b>ISE's two exchange "evidence" is illusory.</b>

In support of its two exchange argument, ISE cites to a newspaper editorial authored by CBOE Chairman Brodsky and CBOE Executive Vice Chairman Tilly, a recent SEC filing and CBOE annual reports. *See* D.I. 317 at 4-5. The editorial indicates that CBOE Hybrid provides customers a choice between an electronic system and open outcry. Because the editorial refers to two methods of executing trades, ISE asserts this is evidence that Hybrid has two exchanges. ISE, in addition to misquoting the article in a way that advances its cause, misses the point of the article: CBOE customers have a choice on how they *place* their orders with the exchange (electronically or open outcry), but, as explained in detail in paragraphs 11-15 of the Smith Declaration, the manner in which the trades are *executed* depends on a number of factors. Indeed, there is nothing inconsistent in the editorial with the fundamental fact that Hybrid merges open outcry and electronic components in one exchange.[5]

Again, although customers have a choice as to the manner in which orders are submitted to the exchange, once the orders have been submitted, the Hybrid trading rules determine the manner in which a trade is to be executed.[6] As Ms. Smith states:

---

[5] Although Mr. Tilly was never confronted with this newspaper editorial at his deposition, his testimony is clear that Hybrid is a single exchange that combines the benefits of electronic and open-outcry trading:

> A Hybrid system...uses the benefits of open-outcry...with electronics...all consolidated together. Not a side-by-side approach but one point of liquidity.

D.I. 316 at ¶ 48.

[6] The only exception involves certain option contracts that can be traded only in open outcry.

9

11.    Under numerous circumstances, CBOEdirect sends incoming electronic orders to the trading floor for matching and allocating in open outcry.... An incoming electronic order *cannot* be marked for execution only on the CBOEdirect electronic trade engine.  An individual market participant on CBOE *cannot* prevent the Hybrid Trading System from routing her orders to the floor for matching and allocation in open outcry.

12.  Moreover, an order that is entered into the Hybrid Trading System from open outcry can be matched and allocated electronically . . .

D.I. 311, ¶¶ 11-12.

Thus, the quoted editorial that merely refers to the manner in which orders and quotations may be submitted to Hybrid provides no support for ISE's position that Hybrid includes two exchanges.  Likewise, the other "evidence" lends no credence to ISE's position that ignores the reality of Hybrid being a single exchange governed by a single set of trading rules.

ISE further argues that there are two exchanges in Hybrid because CBOEdirect processes trades electronically and trades are processed manually in open outcry.  Although it is an irrelevant inquiry, in fact, some orders placed electronically through CBOEdirect are processed electronically while others are processed in open-outcry.  Likewise, some of the orders placed through open-outcry are processed through open outcry while others or portions of others are processed electronically through CBOEdirect.  Under ISE's proposed paradigm, this would mean that there are four exchanges.  This is nonsense.  Hybrid is one exchange which, under the Court's *Markman* construction, is not an "automated exchange."

During the April 1, 2010 status conference, ISE's counsel argued that the "[H]ybrid trading system identifies two methods of order execution."  *See* D.I. 320, Exh. 65 at 11:11-12.  In response, the Court queried whether ISE was arguing for a change in the Court's construction of "automated exchange."  ISE's opposition to CBOE's summary judgment motion is a rehash of the argument made on April 1 which continues to disregard the part of the Court's claim

10

construction that expressly states that a method that effects trades by automatically matching and

allocating *but also entails open-outcry* is not fully computerized and is therefore not automated.

At page 12 of its opposition, ISE makes the incredible statement that "[N]either the

claims nor the Court's construction require an automated method for executing trades in which

every single order is entirely executed." It is meritless under the Court's claim construction for

ISE to suggest that an exchange in which some, but not all, trades are executed automatically can

be an "automated exchange." Simply stated, if only some of the orders flowing through an

exchange are executed electronically while others are executed in open-outcry, that exchange

cannot be an "automated exchange" as the Court has construed that term.

(c)   <strong>The United States Patent Office has agreed that Hybrid is<br>distinct from the '707 patent.</strong>

CBOE has been granted two patents directed to its Hybrid Trading System: U.S. Patents

7,613,650 for "Hybrid Trading system for concurrently trading securities or derivatives through

both electronic and open-outcry trading mechanisms and 7,552,083 for "Hybrid trading system

for concurrently trading through both electronic and open-outcry trading mechanisms. *See* D.I.

312, Exh. 12 & Exh. 13.

The Katz '707 patent was cited as prior art of record by the Patent Office during the

prosecution of both patent applications. In granting the CBOE Hybrid patents over the '707

patent, the Patent Office made the following statements in its reasons for allowance:

> 7,613,650: Prior art trading systems contain various disclosures of methods and
> systems for allocating and executing securities and derivatives trades . . .
> However, nothing in the prior art teaches or even suggests the integration of
> traditional open-outcry methods with automated electronic order execution. (D.I.
> 312, Exh. 25 at 6).

> 7,552,083: The closest patent prior art of record . . . fails to teach the hybrid
> aspect . . . (Second Declaration of Brian J. Doyle (hereinafter "Doyle Decl.") Exh.
> B at 2).

11

This is yet further evidence that Hybrid is one exchange for trading financial instruments.

ISE's point that the CBOE patents may claim a different allocation methodology is beside the

point: the Patent Office recognized a patentable distinction between "the integration of

traditional open-outcry methods with automated electronic order execution" and the '707 patent.

### 3.   Hybrid's CBOEdirect trade engine is not an exchange.

ISE asserts that CBOE fails to address why a reasonable jury could not find that

CBOEdirect employs a fully computerized method for executing trades. D.I. 317 at 8.  The

reason is that CBOEdirect is not at issue in this litigation – Hybrid is.  CBOEdirect is the

electronic trade engine for Hybrid; however, in Hybrid, it has been merged with open-outcry.[7]

In any event, the issue of whether CBOEdirect is an "automated exchange" within the

meaning of the '707 patent is a red herring because in the Hybrid trading system, CBOEdirect

cannot operate to trade financial instruments without open outcry.  As Ms. Smith stated in her

unchallenged declaration, "[i]f open outcry trading were to cease, the Hybrid Trading System

would not function because orders (including electronic orders) are routinely routed to open

outcry for execution." D.I. 311 at ¶ 10.  Without open-outcry, Hybrid, and thus CBOEdirect,

simply could not function as an exchange.  As Ms. Smith further stated, "[a]n exchange is not

considered operable if it is unable to execute orders." D.I. 311 at ¶ 10.

In seeking to summon up an issue of fact, ISE submitted the Ilyevsky declaration.  Mr.

Ilyevsky is an ISE employee involved in gathering intelligence about ISE's competitors,

including CBOE, Mr. Ilyevsky was asked to provide "certain technical analysis concerning the

configuration and operation of CBOE's exchange . . . " *See* D.I. 319 at ¶ 2.  But what is most

---

[7] ISE keeps referring to CBOE as a "registered" exchange.  That is irrelevant to any issue in this motion.
The only relevant inquiry is whether there is a genuine issue of material fact that the accused Hybrid
Trading system is within the Court's construction of the claim term "automated exchange."

notable about the Ilyevsky declaration is what it does *not* say. Although it is ISE's position that Hybrid is composed of two exchanges, nowhere in the Ilyevsky declaration is there any support for that proposition. On the contrary, Mr. Ilyevsky states only that he was asked to provide certain technical analysis concerning the configuration and operation of "CBOE's exchange." *See id.* The absence of any support for ISE's two exchange theory, from an ISE employee involved in gathering competitive intelligence, speaks for itself.

> (a)     **ISE never accused Hybrid's CBOEdirect trade engine of infringement.**

There was never an allegation by ISE in the pleadings in the New York case or the Chicago case that "CBOEdirect" infringed the '707 patent. *See* Doyle Decl., Exh. A; D.I. 1; D.I. 37. Only the Hybrid Trading System was accused of infringement.

ISE's argument that it has accused CBOEdirect of infringement in this case is yet another misrepresentation. *See, e.g,* D. I. 15 at 5. ISE's asserts that "CBOEdirect was first accused of infringement on January 27, 2009." *See* D.I. 317 at 2, n.1. In fact, as shown below, the "CBOEdirect" that ISE accused of infringement in its interrogatory contentions was actually part of CBOE's fully electronic Screen Based Trading ("SBT") system that was abandoned by CBOE before the '707 patent issued.[8]

In its January 27, 2009 interrogatory response, ISE included a chart which compares purported features of "CBOE's *Screen-Based Trading System*" to various limitations of each asserted claim. *See* D.I. 313 , Exh. A at 1 (emphasis in original). But ISE cites essentially one document to factually support its allegation against SBT—the "Screen Based Trading System

---

[8] This misrepresentation was repeated at the April 1, 2010 status conference during which ISE's counsel asserted that "CBOEdirect has been alleged to infringe the claims of the patent, very clearly, since we supplement our infringement contentions back in January of '09…" *See* D.I. 320, Exh. 65 at 10:19-23.

Functional Specification" which was prepared by the SBT Committee and dated October 29, 2002, nearly a year before the '707 patent issued. *See id.* This document does not refer to the CBOEdirect electronic trade engine that is part of Hybrid[9] but rather refers to an earlier and different version of CBOEdirect that was part of CBOE's SBT system. *See* D.I. 310 at 9-11.[10] Furthermore, ISE plainly indicated that it was comparing the asserted claims with the version of CBOEdirect that was part of SBT: *"Screen-Based Trading Systems* includes, but is not limited to, CBOEDirect and the Hybrid Trading System." D.I. 320, Exh. 62 at Exh. A at 1 (italics in original).

        ISE supplemented its interrogatory response on March 19, 2010 and April 6, 2010. These responses, produced nine months after the close of fact discovery, three months after final claim construction,[11] and more than three years after this case began, are untimely at best and do nothing to cure ISE's failure to allege during the course of this litigation that the Hybrid-related version of CBOEdirect infringes the '707 patent.

                (b)     **ISE has never accused any trading system other than Hybrid of infringement.**

        In its opposition brief, ISE alleges for the first time, after almost three-and-a-half years of litigation, that CBOE's making or selling CBOEdirect for "use by OneChicago Exchange, CBOE Futures Exchange and CBOE Stock Exchange" "constitute[s] infringement." *See* D.I. 317 at 9. And in its statement of additional facts ISE alleges - again for the first time - that "CBOE's use of CBOEdirect as its back-up trading system is also accused of infringement in this action." *See* D.I. 318 at 35. ISE's exceedingly belated allegations are completely absent from any complaint

---

[9] There is no dispute that a previous version of CBOEdirect was substantially modified to be made part of Hybrid. *See* D.I. 318 at 5-6.
[10] ISE has not even attempted to show that the two versions share much more than the same name.

14

related to this case. *See* Doyle Decl., Exh. A at 3; *see also* D.I. 1 and D.I. 37. Further, ISE's

infringement contentions were devoid of any reference to this subject matter until only two

months ago, and even its latest claim charts point *only* to alleged evidence of infringement by

Hybrid.[12] *See* D.I. 313, Exh. A. Notably, ISE's infringement contentions make no reference

whatsoever to the "CBOE Stock Exchange." *See* Exh. D.I. 313, Exh. 2. Tellingly, in deposing

sixteen CBOE witnesses, ISE took almost no discovery related to the OneChicago Exchange, the

CBOE Futures Exchange and CBOE Stock Exchange or CBOE's supposed use of CBOEdirect

as its back-up trading system.[13] It is simply too late for these allegations to be raised for the first

time now.

  As shown above, ISE's argument that as early as January 2009 it had accused the

CBOEdirect trade engine in Hybrid of infringing the '707 patent is false. However, even if ISE

had accused the CBOEdirect trade engine in Hybrid of infringing the '707 patent, ISE's

argument that the CBOEdirect trade engine infringes the '707 patent is flawed because it is based

on the faulty premise that electronically placed orders must be executed electronically. This is

not the case. "Under numerous circumstances, CBOEdirect sends incoming electronic orders to

the trading floor for matching and allocating in open outcry." D.I. 311 at ¶ 11. ISE's argument

also ignores the Court's *Markman* Order clarification that "a method that effects trades of

financial instruments by automatically matching and allocating but also entails 'oral

communications between market professionals . . .' is not fully computerized and therefore not

---

[11] Fact discovery closed on June 23, 2009 (*see* D.I. 141 at 1) and the Court's claim construction ruling issued on January 25, 2010 (*see* D.I. 286).

[12] ISE's March 19, 2010 interrogatory response states, "CBOE has made, used and/or sold CBOEdirect as part of CBOE's Hybrid Trading System, CBOE's backup recovery system for the Hybrid Trading System, the OneChicago Exchange, and CBOE's Futures Exchange." *See* Exh. D.I. 313, Exh. 2 at 6.

'automated.'" *See* D.I. 300.  Hybrid, and even CBOEdirect by itself, fall squarely within the

Court's determination of systems and methods that do not comprise an "automated exchange," as

that term is used in the claims of the '707 patent.

**B.   There is no genuine dispute that Hybrid does not include a "system memory means" as required by the system claims of the '707 patent.**

ISE's response to CBOE's motion for summary judgment of non-infringement on the

issue of "system memory means" is an "opposition" in name only.  ISE does not dispute any

material facts. *See* D.I. 318 at ¶¶ 54-61.  ISE does not dispute that, as a matter of law, it cannot

rely on equivalents. *See* D.I. 317 at 14-18 (failing to rebut reasons why equivalents are

unavailable).  ISE does not even attempt to prove existence of the "system memory means," the

essential task that it must achieve to avoid summary judgment.  Left with nothing else, ISE

merely argues for a change in the Court's claim construction.

The Court construed the corresponding structure of the "system memory means" to be the

"system memory 26, bid matching process 34 and offer matching process 36." *See* D.I. 316,

SOF ¶ 54. [14]  Because this is a means-plus-function limitation, to prove infringement, ISE must

prove that Hybrid performs the identical function of the "system memory means," *i.e., "storing*

parameters of the entity administering the invention for allocating trades between the incoming

order or quotation and the previously received orders and quotations," using the Court's

---

[13] Although ISE cursorily touched upon some of this subject matter in several depositions, the most in-depth discovery it performed is found in a mere three pages of testimony. *See* D.I. 315, Exh. 21 at 154:4-156:24.

[14] As discussed at the *Markman* hearing and in CBOE's opening brief on this motion, this peculiar use of the term "process" arises because the '707 patent was poorly drafted, but nonetheless is necessitated by its disclosure. This fault in the patent renders claims having this limitation invalid as indefinite because for an apparatus element such as "system memory means," a patentee must disclose corresponding *structure*, not steps or a process. *See O.I. Corp. v. Tekmar Co., Inc.*, 115 F.3d 1576, 1582-83 (Fed. Cir. 1997). ISE's unsupported assertions to the contrary notwithstanding, CBOE makes no admission that the "processes" are appropriate structures.

16

identified structure, or its equivalent. *See Nomos Corp. v. Brainlab USA, Inc.*, 357 F.3d 1364, 1369 (Fed. Cir. 2004). Since ISE cannot meet its burden, summary judgment of non-infringement of claims 1-6, 9-10, and 22-23 is appropriate.

     1.     **ISE offers two claim construction arguments, one of which the Court already rejected, the other of which rewrites the Court's construction.[15]**

ISE's first argument is that the Court's claim construction means that the corresponding structure is a "system memory 26," which stores the "bid matching process 34 and offer matching process 36." *See* D.I. 317 at 14-15. That is not what the Court's construction says, and for good reasons. First, *nowhere* does the '707 patent disclose that the "bid matching process 34 and offer matching process 36" are stored in the "system memory 26." ISE can point to no evidence to the contrary. Second, neither party has ever advocated the construction as now rewritten by ISE. ISE's suggestion that CBOE advocated this construction is a plain mischaracterization of the proceedings at the *Markman* hearing, and cannot be reconciled with the facts.[16] ISE's argument that a reasonable jury could find that memory in Hybrid stores a "bid

---

[15] Although offering nothing aside from conjecture, ISE proposes a third claim construction argument. Sensing now that the '707 patent does not properly support the "system memory means" as a means plus function limitation, ISE casually posits that "*in response to CBOE's invalidity argument, ISE planned* to argue that [system memory means] is not a means-plus-function element." *See* D.I. 317 at 14. Putting aside that ISE did not actually make that argument, that it is too late to do so, and that it was *ISE* who first proposed that "system memory means" is a means-plus-function limitation, what is most revealing is ISE's tacit acknowledgment of what appears throughout its opposition: that it will make any argument that comes to mind that it thinks may save its infringement theory.

[16] To the contrary, CBOE made very clear at the *Markman* hearing that (1) the corresponding structure for performing the claimed function of the system memory means is the "system memory 26, bid matching process 34, *and* offer matching process 36" because parameters for professionals are stored in the system memory 26 and parameters for public customers are stored in processes 34 and 36 and (2) the fact that these claims rely on processes as corresponding structure renders them invalid:

> CBOE Counsel: For the [system memory means] *the structure we're saying is the system memory 26, the bid matching process 34 and the offer matching process 36 because the customer stuff is in the bid-and-offer matching process 34 and 36.*

D.I. 320, Exh. 66 at 288:15-22.

matching process 34 and [an] offer matching process 36" cannot create a genuine dispute of

material fact because it is not premised on the Court's claim construction. *See* D.I. 317 at 15-16.

ISE's second claim construction argument is one that ISE raised in its opening *Markman*

brief (D.I. 155 at 13-14) and argued again at the *Markman* hearing (D.I. 320, Exh. 66 at 291:8-

17). *See* D.I. 317 at 18. In short, ISE argues that '707 patent and its file history adequately

provide that the "system memory 26" stores parameters for allocating to customers. The Court

has already deemed this argument unpersuasive. Otherwise, this being the key distinction

between the parties' proposed constructions, the Court would have adopted ISE's construction

rather than CBOE's. Nonetheless, ISE uses this fantastic premise to argue that the Court's

construction—which requires in the *conjunctive* that the corresponding structure "system

memory 26, bid matching process 34 *and* offer matching process 36"—is met by the *disjunctive*:

"system memory 26 *or* bid matching process 34 *or* offer matching process 36." *See* D.I. 317 at

19. To use ISE's figure of speech, if there is a "Hail Mary" anywhere in the briefing on the

instant motion, there it is.[17] Consequently, ISE's argument that a reasonable jury could find that

Hybrid includes a "system memory 26 *or* bid matching process 34 *or* offer matching process 36"

---

CBOE Counsel: So there is no question, I think, that the algorithm stored in the system memory takes care of the professional orders and that *the parameters for allocating to the customer are in the bid matching process 34 and the offer matching process 36.* The reason why this claim is so difficult, your Honor -- *the reason why the claim is so difficult is because it's an indefinite claim because it says system memory means but the system memory means is not the bid matching process and the offer matching process....There is nothing in the specification linking the storage of the customer parameters to the system memory 26.*

D.I. 320, Exh. 66 at 289:18-290:7.

[17] Contrary to ISE's assertion, *Creo Prods v. Presstek, Inc.*, 305 F.3d 1337, 1345 (Fed. Cir. 2002) does not authorize ISE's revision of the Court's construction. In *Creo*, the patent at issue disclosed several alternative structures for performing the claimed function. That is not the case here where the *combination* of the system memory 26, bid matching process 34 *and* offer matching process 36 is the only disclosed "structure" for performing the claimed function.

18

does not create a genuine dispute of material fact because it is not premised on the Court's claim construction.

    2.    **ISE does not dispute that, as a matter of law, it cannot rely on equivalents.**

ISE principally offers speculative attorney argument as to how there might be an issue of fact concerning whether Hybrid includes a structure equivalent to that of the "system memory means" using the function-way-result test.[18]  What ISE cannot respond to, however, is that as a matter of law, ISE cannot resort to the function-way-result test.  CBOE offered two rationales for why equivalents are simply unavailable as a matter of law (*see* D.I. 310 at 18-20) but ISE fails to oppose (or even address) either one.  On an issue where ISE bears the burden of proof, no conclusion can be drawn except that ISE concedes that equivalents are unavailable as a matter of law.[19]

    3.    **Summary judgment on this issue must be granted because ISE does not prove the existence of the "system memory means."**

ISE fails to prove the existence of the "system memory means" in Hybrid, the essential object that it must achieve to avoid summary judgment.  ISE also fails to dispute material facts that demand summary judgment.

---

[18] ISE asserts that CBOE's analysis of 35 U.S.C. § 112, ¶ 6 equivalents was conducted improperly.  ISE does not explain exactly why CBOE's analysis was improper—which would be particularly helpful given that CBOE's analysis was informed by the same case law that ISE relies on to suggest that CBOE's analysis was improper (*Odectics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259 (Fed. Cir. 1999)).  Notwithstanding, CBOE notes that its analysis also tracks that of *Nomos Corp. v. Brainlab USA, Inc.*, 357 F.3d 1364, 1369 (Fed. Cir. 2004), an after-arising Federal Circuit case finding no 35 U.S.C. § 112, ¶ 6 equivalents as a matter of law.

[19] Aside from agreeing that it may not rely on structural equivalents under 35 U.S.C. § 112, ¶ 6, ISE agrees that it may not rely on the doctrine of equivalents because "memory" is not an after-arising technology.  *See Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1381 (Fed. Cir. 2001) ("[A] finding that a component of an accused product is not a structure 'equivalent' to the corresponding structure of a means-plus-function limitation for purposes of literal infringement analysis *precludes* a finding that the same structure is equivalent for purposes of the doctrine of equivalents, unless the component constitutes technology arising after the issuance of the patent.")  (emphasis added).

19

ISE does not dispute that (1) Hybrid does not include processes that perform the function of storing parameters of the entity administering the invention for allocating trades between the incoming order or quotation and the previously received orders[20] and (2) Hybrid stores rules for allocating to customers as well as professionals together in the memory.[21]  The parties do not dispute that Hybrid does not include the claimed "system memory means."

Aside from failing to dispute the absence of the "system memory means," ISE does not meet its burden of proving its existence.  A threshold requirement for proving existence of the "system memory means" is to show that Hybrid includes the "bid matching process 34 and offer matching process 36," illustrated in Figures 4A-B and 5A-B,[22] respectively, of the '707 patent, for performing the claimed function of "storing parameters...."  ISE offers no such proof.  Rather, ISE merely (1) improperly compares a CBOE patent application (as opposed to Hybrid itself) to figures in the '707 patent without reference to any CBOE testimony that the patent drawings accurately represent Hybrid[23] and (2) offers a declaration of *ISE employee Boris*

---

[20] *Compare* D.I. 316 CBOE SOF at ¶ 57 with D.I. 318 ISE Response at ¶ 57.  ISE offers the following carefully-worded denial that fails to actually dispute CBOE's SOF ¶ 57: "ISE disputes that [Hybrid] does not include processes *that contain* the parameters for allocating trades."  This denial is irrelevant because (1) this is not what CBOE's SOF ¶ 57 says and (2) the issue is not what certain alleged processes in Hybrid "contain."  The issue is whether Hybrid includes processes *that perform the function of storing parameters* of the entity administering the invention for allocating trades between the incoming order or quotation and the previously received orders.  ISE does not dispute CBOE SOF ¶57, and thus it is deemed admitted that Hybrid is missing this feature.  *See* Local Rule 56.1.  Summary judgment is proper on the undisputed facts.  *TechSearch, LLC v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002).

[21] *Compare* D.I. 316 CBOE SOF at ¶ 56 with D.I. 318 ISE Response at ¶ 56.  Ignoring the Court's claim construction, ISE boldly asserts in its Rule 56.1 statement that "the system memory means stores the matching rules and allocating parameters for both customers and professionals."  But as the Court has already held, ISE failed to describe the "system memory 26" as being adequate to accomplish the entire claimed function.  *See* D.I. 316, CBOE SOF ¶ 54.

[22] It is ISE's position that the bid matching process and offer matching process are illustrated in Figures 4A-5B.  *See* D.I. 318, ISE SOF at ¶ 25.  ISE therefore must offer proof of the existence of the features set out in all of these figures (or their equivalents), a task ISE does not even attempt.

[23] ISE cites to general testimony of Anthony Carone, a *third party* without firsthand knowledge of the technical aspects of Hybrid relevant to this motion.  For example, Mr. Carone gave testimony "to the best of [his] knowledge" on the issue of whether certain figures in the CBOE patent application accurately

Ilyevsky—who ISE has never before identified as knowledgeable about any issue in this litigation—that purports to compare Hybrid to ISE's *exchange,* rather than to the '707 patent in suit as the law requires.  Glaringly absent is a comparison of Hybrid to Figures 4A-5B,[24] or even the assertion that processes that the same or equivalent to these figures accomplish the claimed function of "storing parameters...."  That may be because Mr. Ilyevsky has never read the '707 patent.  There is no allegation or other proof that he has.

### C.    Hybrid Does Not Perform the "Matching" Steps of Claims 35 and 56

Independent claims 35 and 56 are limited by the step of "matching."  *See* D.I. 316 at 20, 22; *see also* D.I. 318 at 21, 26.  The Court has construed "matching" to mean "[i]dentifying a counterpart order or quotation for an incoming order or quotation based on price.  'Matching' is a process that is distinct from 'allocating.'"  *See* D.I. 286 at 5.  The Court has further construed "allocating" to mean "[d]ividing portions of the incoming order or quotation among the previously received orders and quotations.  'Allocating' is a process that is distinct from 'matching.'"  D.I. 286 at 4.

Hybrid does not perform the step of "matching" as it is defined in the '707 patent and as construed by the Court.  In arguing that Hybrid performs the step of "matching," ISE ignores the Court's ruling that "matching" and "allocating" are distinct and, in particular, that "matching" "*identif[ies]* a counterpart or quotation. . ." whereas "allocating" "*divid[es]* portions of the incoming order or quotation. . ."

---

described Hybrid as of the application's filing date, but ISE did not bother to explore the nature or extent of Mr. Carone's knowledge.  *See* D.I. 318, ISE SOF ¶ 22 (*citing* ISE Exh. 56, Carone Dep. at 172:11-175:2).

[24] This failure means that summary judgment is proper even under ISE's unilateral revision of the Court's construction.  ISE's construction requires that, contrary to the '707 patent, the "system memory 26" merely stores the "bid matching process 34 and offer matching process 36."  But under either the Court's

1.      **Hybrid does not "match . . . based on an allocating parameter."**

Claims 35, 36, 43 and 45 recite the steps of "first matching . . . based on the allocating

parameter" and "second matching . . . based on the allocating parameter." *See* D.I. 316 at 20; *see*

*also* D.I. 318 at 21.  Similarly, claims 56, 57 and 58 recite the step of "matching . . . based on the

allocating parameter." *See* D.I. 316 at 22; *see also* D.I. 318 at 26.  *All* of the evidence

purportedly showing that Hybrid "match[es] . . . based on an allocating parameter" is premised

on the unsupportable notion that matching and allocating are—contrary to the Court's

construction—the same, *i.e.*, ISE points to how Hybrid "*divid[es]* portions of the incoming order

or quotation . . ." (*i.e.*, how Hybrid *allocates*) and argues that this shows how Hybrid

"*identif[ies]* a counterpart order or quotation . . ." (*i.e.*, how Hybrid *matches*).  Specifically, ISE

argues that Hybrid performs a first *matching* step *by allocating* orders to customers and performs

a second *matching* step *by allocating* orders according to CBOE's Ultimate Matching Algorithm

("UMA").  *See* D.I. 317 at 19-20.

(a)     **"Customer priority" in Hybrid is accomplished by allocating,
        not matching.**

To support its theory that customer priority is matching based on an allocating parameter,

ISE improperly compares the '707 patent to a CBOE patent application rather than to Hybrid

itself.[25]  *See id.* at 20.  Even then, ISE relies upon the disclosure in CBOE's patent application

that customer priority relates to how orders or quotations are *divided* first among customers, *i.e.*,

how orders or quotations are *allocated* first among customers.  *Id.* ("any public customer orders

maintained in the EBOOK 34. . . *will execute against the incoming order first*") (emphasis

---

construction or ISE's construction, ISE must prove the existence in Hybrid of the "bid matching process
34 and offer matching process 36."  ISE has not.

[25] ISE's infringement analysis is doubly inappropriate because it is not based on any properly construed
claim in the '707 patent.

added).  Other materials relied upon by ISE also show how customer priority relates to

allocation, not matching.  *See* D.I. 320, Exh. 55 at 291:1-10 ("we *trade against* the customer

first"); *see also* D.I. 320, Exh. 43 at CBOE000196801 ("Resting customer orders have priority

and *trade ahead* of any ICMS. . .").

>           (b)      **CBOE's Ultimate Matching Algorithm (UMA) does not**
>                    **"match" as that term has been construed by the Court.**

Next ISE argues that UMA "matches" according to an "allocating parameter" which is

comprised of a parity component and pro rata component.  *See* D.I. 317 at 20-21.  But, as shown

in CBOE documents cited by ISE, UMA—despite its trade name—does not "match" as that term

has been construed by the Court.[26]  Rather, UMA "allocates" because it "*divid[es]* portions of

the incoming order or quotation. . ."  *See* D.I. 317 at 20-22.  For example, ISE cites the following

as evidence that UMA "matches":

>       After the customers and DPM receive their allocation, all remaining participants
>       including ICMs and the book *share in the balance* according to the following
>       formula. . .

*See* D.I. 318 at 46 (citing ISE Exh. 43 at CBOE000196801) (emphasis added).  However, since

remaining participants "share in the balance" UMA "*divides* an order or quotation. . ." and thus

*allocates* as that term has been construed by the Court.  Similarly, ISE cites a section in CBOE's

damages expert report which describes how UMA allocates, not how it matches.[27]  *See* D.I. 317

---

[26] Tellingly, UMA is detailed in CBOE Rule 6.45A, which is entitled "Priority and *Allocation* of Equity
Trades on the CBOE Hybrid System," and included under 6.45A(a) for "*Allocation* of incoming
electronic orders."  *See* D.I. 312, Exh. 16 at ISE0261423 (emphasis added).

[27] ISE quibbles with Dr. Beutel's use of the phrase "receive allocations" because it purportedly "appears
nowhere in the '707 patent" as if his report, prepared prior to claim construction, should describe UMA
using language only from the '707 patent.  *See* D.I. 317 at 22.  Here, such a description would be
inaccurate because in Hybrid, what matters is that to "receive allocations" is to "*divide* an order or
quotation . . ."  Thus UMA *allocates* as that term has been construed by the Court.

at 21 (citing Dr. Beutel's report as stating "under CBOE's UMA rules, [professionals] would each *receive allocations. . .*").

## 2.    Hybrid matches in one step.

Independent claim 35 explicitly requires matching in two steps. *See* D.I. 310 at 21. Similarly, independent claim 56 requires matching in two steps, *i.e.*, one matching step that is independent of the away market price and a second matching step that is dependent on the away market price. *See id.* at 24. As described above, ISE merely alleges that Hybrid *allocates* in two steps and does not rebut CBOE's evidence that Hybrid *matches* in a single step to both customers and professionals before it allocates. Additionally, with respect to claim 56, ISE's does not even attempt to dispute that Hybrid matches in one step by determining if the electronic book ("eBook") is at the national best bid or offer ("NBBO") and, if so, matches incoming orders or quotations against orders and/or quotations in the eBook.[28] *See* D.I. 317 at 23-25. Thus, with respect to whether Hybrid matches as in the '707 patent, CBOE's summary judgment motion is unopposed.

Finally, in alleging that Hybrid matches by first allocating to customers (i.e., through customer priority) and then to professionals (i.e., through UMA), ISE argues that Hybrid matches and allocates simultaneously.[29] But, as the Court observed and Eileen Smith's

---

[28] ISE denies that Hybrid determines if the eBook is at the NBBO. *See* D.I. 318 at 26, ¶ 71. ISE asserts that "[r]ather, *CBOEdirect* determines if the eBook is at the NBBO. *Id.* (emphasis added). But the only support ISE offers for this distinction is a paragraph in a CBOE patent application which does not mention or refer to "CBOEdirect." *See* D.I. 320, Exh. 38, ¶ 0038. Regardless, even if ISE is correct, there is still no infringement because whether it is Hybrid or CBOEdirect, ISE admits that CBOE matches in one step, not two. Consequently, there can be no infringement of claim 56 or its dependent claims.

[29] "ISE does not assert that matching 'based on an allocating parameter' is performed when a previously received order is 'potentially' identified for an incoming order. Instead, ISE asserts that *these steps are performed when CBOE's matching algorithm actually identifies* a previously received order based upon CBOE's allocation parameters." *See* D.I. 317 at 23. (emphasis added).

24

declaration proves, matching is performed *before* allocating.  *See* D.I. 320, Exh. 66 at 133:20-21; 142:8-24;[30]  D.I. 311 at ¶ 24.  Thus ISE ignores the limitation in claims 35 and 56 that matching be performed in two steps as well as the Court's construction that matching and allocating are distinct.

## IV.    CONCLUSION

CBOE respectfully requests that the Court grant summary judgment of non-infringement of all claims of the '707 patent asserted by ISE in this case.

Respectfully submitted,

Dated:  May 21, 2010                              By:  s/ *Jonathan A. Marshall*
                                                  Jonathan A. Marshall
                                                  David Francescani
                                                  Michael T. Zoppo
                                                  Brian J. Doyle
                                                  **FISH & RICHARDSON P.C.**
                                                  601 Lexington Ave, 52nd Floor
                                                  New York, NY 10022
                                                  Telephone: (212) 765-5070
                                                  Facsimile: (212) 258-2291

                                                  *Attorneys for Plaintiff Chicago Board*
                                                  *Options Exchange, Incorporated*

---

[30] "ISE Counsel: [T]here is an allocation as described here on a pro rata basis.  And once that allocation is done, then the matching can occur.
The Court:  No, no.  That isn't what you told me before.  I though that matching had to do with putting together an offer. . .to sell and an offer to buy at the same price.
ISE Counsel:  Yes.
The Court:  And when – once you get all of those together, both the public customer and the professionals, you first allocate to the public customer, and then you take all the professionals and you allocate based on pro rata or some other criteria. Right?
ISE Counsel:  Right."

Paul E. Dengel
Stacie R. Hartman
Mark E. Ashton
**SCHIFF HARDIN LLP**
6600 Sears Tower
233 South Wacker Drive
Chicago, IL 60606-6473
Telephone (312) 258-5500
Facsimile (312) 258-5600

Joanne Moffic-Silver
Jordan Newmark
**CHICAGO BOARD OPTIONS
EXCHANGE, INCORPORATED**
400 S. LaSalle Street
Chicago, IL 60605
Telephone: (312) 786-7909

26

## CERTIFICATE OF SERVICE

The undersigned hereby certifies pursuant to Fed. R. Civ.P. 5 and L.R. 5.5 that a true and correct copy of the foregoing document was filed on May 21, 2010 with the Clerk of Court using the CM/ECF system, which will send notice to counsel of record.


                                        *s/Jonathan Marshall*_____
                                        Jonathan Marshall

On May 21, 2010.