**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Chicago Board Options Exchange, Inc., <br><br> Plaintiff, <br><br> v. <br><br> International Securities Exchange, LLC, <br><br> Defendant. | Civil Action No. 07-cv-623 <br><br> The Hon. Joan H. Lefkow, U.S.D.J. <br> The Hon. Jeffrey Cole, U.S.M.J. |

**INTERNATIONAL SECURITIES EXCHANGE, LLC'S MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* NO. 1 TO PRECLUDE DR. BENN STEIL FROM TESTIFYING REGARDING ALLEGATIONS, ANALYSES, CONCLUSIONS, OR <u>OPINIONS NOT DISCLOSED IN HIS EXPERT REPORTS</u>**

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
  582 F.3d 1288 (Fed. Cir. 2009) .......................................................................................... 7, 8

*Harlow v. Eli Lilly & Co.*,
  No. 94 C 4840, 1995 WL 319728 (N.D.Ill. May 25, 1995) .................................................... 2

*NutraSweet Co. v. X-L Engineering Co.*,
  227 F.3d 776 (7th Cir. 2000) ................................................................................................... 2

*Osterhouse v. Grover*,
  No. 3:04-cv-93-MJR, 2006 WL 2051301 (S.D.Ill. Jul. 20, 2006) .......................................... 2

**OTHER AUTHORITIES**

Fed.R.Civ.P. 26 ............................................................................................................................. 1, 2

Fed.R.Civ.P. 37 ............................................................................................................................. 1, 2

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................1

II. APPLICABLE LEGAL PRINCIPLES ................................................................................1
    A.    The Federal Rules of Civil Procedure Mandate the Exclusion of Expert Testimony Not Timely Disclosed ..............................................................................1

III. DR. STEIL SHOULD BE PRECLUDED FROM OFFERING OPINIONS AT TRIAL THAT HE DID NOT DISCLOSE IN HIS EXPERT REPORTS .............2
    A.    Dr. Steil Did Not Provide Any Substantive Opinions in His Expert Reports Concerning ISE's Evidence of Objective Indicia of Nonobviousness and Should Be Precluded From Doing So at Trial .......................................................2
    B.    Dr. Steil Did Not Provide Any Substantive Opinions in His Expert Reports Concerning ISE's Contention that It Practices the Asserted Claims of the '707 Patent and Should Be Precluded From Doing So at Trial ...............................5
    C.    Dr. Steil Did Not Perform a Proper Analysis of Means-Plus-Functions Claims and Should Be Precluded From Doing So at Trial .......................................6

IV. CONCLUSION .....................................................................................................................8

I.   **INTRODUCTION**

Defendant International Securities Exchange, LLC ("ISE") respectfully submits this Memorandum of Law in Support of Motion *in Limine* No. 1 to Preclude Dr. Benn Steil From Testifying Regarding Allegations, Analyses, Conclusions, or Opinions not Disclosed in His Expert Reports ("Motion *in Limine* No. 1").

As detailed more fully below, federal authority mandates that, absent substantial justification, evidence or testimony not timely disclosed in an expert report be excluded at trial, unless such failure to disclose is harmless. Despite the fact that CBOE's expert Dr. Benn Steil served an opening expert report, a rebuttal expert report, and a supplemental expert report in this action, Dr. Steil failed to identify allegations, analyses, conclusions, or opinions concerning a number of disputed issues in this lawsuit. Given that Dr. Steil had multiple opportunities to address those issues in his expert reports but failed to do so, there is no substantial justification for permitting him to introduce such new opinions for the first time at trial. To do so would severely prejudice ISE's ability to effectively present its case, and would run afoul of compelling federal authority. Accordingly, ISE requests that this Court preclude Dr. Steil from presenting any expert testimony not previously (and timely) disclosed to ISE.

II.  **APPLICABLE LEGAL PRINCIPLES**

   A.   **The Federal Rules of Civil Procedure Mandate the Exclusion of Expert Testimony Not Timely Disclosed**

Federal Rule of Civil Procedure 26(a)(2)(B) requires an expert witness to provide a written report containing "a **complete** statement of all opinions the witness will express and the basis and reasons for them." Fed.R.Civ.P. 26(a)(2)(B)(i) (emphasis added). The Federal Rules of Civil Procedure further provide that any testimony not properly disclosed in a Rule 26 expert report shall not be admissible as evidence at trial unless the failure to disclose was substantially

1

justified or is harmless. Fed.R.Civ.P. 37(c)(1); *see also NutraSweet Co. v. X-L Engineering Co.*, 227 F.3d 776, 785-786 (7th Cir. 2000). The burden of showing that the omission is justified or harmless falls on the party to be sanctioned. *NutraSweet Co.*, 227 F.3d at 785-786 ("The sanction of exclusion is automatic and mandatory **unless the party to be sanctioned can show** that its violation of Rule 26(a) was either justified or harmless." (emphasis added and internal quotations omitted)); *see also Osterhouse v. Grover*, No. 3:04-cv-93-MJR, 2006 WL 2051301, *3 (S.D.Ill. Jul. 20, 2006). Compliance with Rule 26(a)(2) is thus a condition precedent to the use of expert testimony at trial. *See Harlow v. Eli Lilly & Co.*, No. 94 C 4840, 1995 WL 319728 at *2 (N.D.Ill. May 25, 1995).

### III. DR. STEIL SHOULD BE PRECLUDED FROM OFFERING OPINIONS AT TRIAL THAT HE DID NOT DISCLOSE IN HIS EXPERT REPORTS

#### A. Dr. Steil Did Not Provide Any Substantive Opinions in His Expert Reports Concerning ISE's Evidence of Objective Indicia of Nonobviousness and Should Be Precluded From Doing So at Trial

Long before the deadline for service of opening expert reports, ISE made clear in its discovery responses that it is relying on secondary indicia of non-obviousness as support for the validity of the patent-in-suit, U.S. Patent No. 6,618,707 ("'707 patent"). Despite that, and despite that CBOE bears the burden of proving that the '707 patent is invalid by clear and convincing evidence, Dr. Steil did not offer *any* opinions in his September 14, 2012 opening expert report concerning whether the '707 patent enjoys secondary indicia of non-obviousness. Moreover, notwithstanding that ISE's expert Dr. Ma opined in his September 14, 2012 opening report about secondary indicia of non-obviousness, Dr. Steil hardly made any mention of those opinions in his October 15, 2012 rebuttal expert report. Indeed, Dr. Steil only referenced the commercial success enjoyed by ISE due to the '707 patent in one paragraph in a section of his rebuttal report titled "General Comments About the Ma Report":

2

> It is my opinion that Dr. Ma has made no showing that ISE practices the '707 patent. Put in the best light possible, Dr. Ma argues that ISE (the company) is successful. He does not show that the '707 patent was responsible for that success. For example, Dr. Ma presumes that ISE created numerous exchange principles. I incorporate by reference my invalidity report, which rebuts this at length. I have also been informed that no nexus exists where commercial success is due to an element in the prior art or some other factor not related to the claimed invention. As I understand Dr. Ma's report, pro rata is the only feature he argues to meet the "nexus" requirement. There can be no reasonable dispute, for example, that pro rata allocation existed long before ISE existed. Accordingly, Dr. Ma's reliance on that feature for commercial success is meritless.

Ex. A,[1] (10/15/12 Steil Rebuttal Report) at 18. Thus, while Dr. Steil generally asserted that Dr. Ma did not make a showing that ISE enjoys commercial success due to the '707 patent, he never offered any affirmative opinions that ISE does not enjoy commercial success due to the '707 patent. Dr. Steil definitively confirmed this during his November 12, 2012 deposition:

> Q. Did you consider commercial success in formulating -- the commercial success of the '707 patent in formulating your opinions on obviousness?
>
> A. I was informed by counsel that the commercial success of ISE was a matter of dispute and not necessarily relevant in this particular case. Again, I'm not a -- I'm not a legal expert.
>
> Q. Okay. And based on their instructions, you didn't offer any opinions on the commercial success -- on whether the commercial success of ISE was due to features of the '707 patent; is that correct?
>
> ***
> A. I did -- didn't opine in my reports on whether ISE was a commercial success.

Ex. B, (11/12/12 Steil Dep.) at 398:9-399:7.

Similarly, Dr. Steil only made reference to the secondary indicia of copying in another paragraph of the section of his rebuttal report titled "General Comments About the Ma Report":

> Dr. Ma offers a lengthy history of the Hybrid Trading System and statements alleging CBOE's motivations behind it. I understand that this is not an appropriate

---

[1] Exhibit " " refers to the Exhibits to the contemporaneously filed Declaration of Michael DeVincenzo in Support of ISE's Motions *in Limine*.

> area for expert opinion and that Dr. Ma has no personal knowledge of these
> issues. Accordingly, I do not rebut his commentary on these matters. Included in
> that history is the allegation that CBOE's Hybrid Trading System—and its
> component part CBOEdirect—is a copy of the fully computerized ISE exchange.
> While it is not my role to testify to the facts, to the extent Dr. Ma intends to argue
> the secondary consideration of copying I note that his factual allegations fall
> short. First, I am informed that copying is not a valid secondary consideration
> absent evidence of failure to develop a competitive system. CBOE began work on
> its SBT system (which was fully computerized) in 1995, long before ISE existed.
> CBOE did not need to copy ISE. Second, copying requires proof of replication of
> a specific product. A short trip to the CBOE trading floor, without which
> CBOEdirect does not and cannot operate, reveals considerable differences with
> ISE's market model.

Ex. A, (10/15/12 Steil Rebuttal Report) at 18. Thus, the sum total of Dr. Steil's conclusory statements about copying is that CBOE did not need to copy ISE and that CBOE's trading floor reveals considerable differences with ISE's market model.

Aside from the two above-identified statements from his rebuttal report, Dr. Steil made no other mention of the secondary indicia of non-obviousness. CBOE made the tactical decision not to have Dr. Steil substantively address—in any of his three expert reports—the considerable detailed analysis of secondary indicia of non-obviousness that Dr. Ma included in both his opening and rebuttal expert reports. CBOE cannot demonstrate, as it must, that allowing Dr. Steil to do so for the first time at trial is substantially justified, as Dr. Steil served three expert reports in which he failed to substantively address the secondary indicia of non-obviousness of the '707 patent. Nor can CBOE demonstrate, as it must, that ISE will not be harmed by permitting Dr. Steil to reveal new opinions on secondary indicia of non-obviousness for the first time at trial, without having provided ISE an opportunity to analyze and probe those opinions during the expert discovery period. Accordingly, CBOE should be precluded from offering at trial any expert testimony from Dr. Steil concerning whether ISE enjoys commercial success due to the '707 patent, or any expert testimony from Dr. Steil concerning any other secondary indicia

of non-obviousness beyond the above-identified conclusory statements Dr. Steil made in his rebuttal report.

>  B. **Dr. Steil Did Not Provide Any Substantive Opinions in His Expert Reports Concerning ISE's Contention that It Practices the Asserted Claims of the '707 Patent and Should Be Precluded From Doing So at Trial**

During discovery, ISE asserted that ISE enjoys commercial success as a result of practicing the '707 patent. In his opening expert report, Dr. Ma provided a detailed analysis of how ISE practices the asserted claims of the '707 patent and the nexus with ISE's commercial success. Nevertheless, Dr. Steil did not opine in any of his three expert reports that ISE does not practice the '707 patent or that there is no nexus between ISE's practicing of the '707 patent and its commercial success. Dr. Steil only referenced the issue of ISE's practicing of the asserted claims of the '707 patent and nexus with ISE's commercial success in one paragraph in a section of his rebuttal report titled "General Comments About the Ma Report":

> It is my opinion that Dr. Ma has made no showing that ISE practices the '707 patent.

Ex. A, (10/15/12 Steil Rebuttal Report) at 18. Thus, the sum total of Dr. Steil's discussion on the issue amounts to a general, conclusory assertion that Dr. Ma did not make a showing that ISE practices the '707 patent. But nowhere does Dr. Steil offer any opinion or explanation that ISE does not practice the asserted claims of the '707 patent. Dr. Steil definitively confirmed this during his November 12, 2012 deposition:

> Q. Okay. Would you agree with me you offered no opinions yourself on whether ISE practices the '707 practice?
>
> A. That's correct.
>
> Q. And do you have any opinions on whether ISE practices the '707 patent?
>
> A. I do not have an opinion on whether each element to be found in the patent is also present in the trading system which ISE operates.

Ex. B, (11/12/12 Steil Dep.) at 15:6-15.

CBOE made the tactical decision not to dispute that ISE practices the asserted claims of the '707 patent – likely because ISE does in fact practice the asserted claims. Dr. Steil had every opportunity to offer such opinions in his three expert reports if he wished to do so. Dr. Steil failed to do so, and CBOE thus cannot demonstrate, as it must, that allowing Dr. Steil to opine for the first time at trial on ISE's practicing of the asserted claims is substantially justified. Nor can CBOE demonstrate, as it must, that ISE will not be harmed by permitting Dr. Steil to reveal new opinions on ISE's practicing of the asserted claims for the first time at trial, without having provided ISE an opportunity to analyze and probe those opinions during the expert discovery period. Accordingly, CBOE should be precluded from offering at trial any expert testimony from Dr. Steil concerning whether ISE practices the asserted claims.

> C. **Dr. Steil Did Not Perform a Proper Analysis of Means-Plus-Functions Claims and Should Be Precluded From Doing So at Trial**

Claims 3 and 4 of the '707 patent each contain certain means-plus-functions limitations for which the Court provided constructions that include both a function and a structure. Specifically, claims 3 and 4 each include the limitation: "means for matching the remaining portion based on a formula that allocates the minimum allocation percentage of the remaining portion to the quotation identified with the primary market maker," which the Court construed as:

> Function: Matching the remaining portion based on a formula that allocates the minimum allocation percentage of the remaining portion to the quotation identified with the primary market maker.

> Structure: A general purpose computer under the control of a software system; a network of general purpose computers, each under the control of a separate software program; or a system of interconnected parallel processors programmed to perform the steps of Fig. 4(b) for bids and Fig. 5(b) for offers.

D.I. 286 at 8.

It is well-settled that when means-plus-function limitations are at issue, "a structural analysis is required…a functional analysis alone will not suffice." *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1299 (Fed. Cir. 2009). Thus, "[j]ust as a patentee who seeks to prove infringement must provide a structural analysis by demonstrating that the accused device has the identified corresponding structure or an equivalent structure, a challenger who seeks to demonstrate that a means-plus-function limitation was present in the prior art must prove that the corresponding structure-or an equivalent-was present in the prior art." *Id*.

While Dr. Steil opined that certain prior art references disclose each of the elements of claims 3 and 4, and render those claims invalid, he failed to perform the proper analysis for the above-identified "means for matching" means-plus-function limitations of claims 3 and 4. In this regard, Dr. Steil did not identify any structure in the prior art that is programmed to perform the steps of Figs. 4(b) or 5(b) of the '707 patent, as required by the Court's construction of the means for matching limitations of claims 3 and 4. Instead, Dr. Steil merely cited language from the prior art detailing the alleged functional aspects of the means for matching limitations, and opined that the prior art disclosed the concepts of those limitations. *See* Ex. C, (9/14/12 Opening Steil Report) at 40-49; *see also id.* at 21-24, 35, 93-95, 108, 173-175, 183-184, 243-245, 261-262, 323-324, 333-334 of claim charts attached to Opening Steil Report. Dr. Steil expressly testified as much during his November 12, 2012 deposition:

> With respect to claim 3, you do no analysis on whether the figure 4(b) of the '707 patent would have been obvious in light of the prior art, correct?
>
> A. **I took the concept** that was being dealt with in claim 3, which I understood to be a minimum allocation percentage, and that was the basis of my investigation into the prior art.
>
> Q. All right. Is it your opinion that all the disclosures of the minimum allocation percentage would be an equivalent algorithm to the one disclosed in figure 4(b) of the '707 patent?

7

> A. **The concept** of a minimum allocation percentage doesn't imply that one uses a specific formula. It is what it says it is, it's a minimum allocation percentage. It was my understanding that this claim was applying the concept of a minimum allocation percentage.

Ex. B (11/12/12 Steil Dep.) at 392:23-393:19 (emphasis added); *see also id*. at 357:20-358:4 ("So the details of the claim language obviously was not as important as the general concepts that spoke to you when you read the claims, correct? A. For the purposes of investigating the prior art, **I was concerned with identifying the concepts** that they were speaking about."). But as detailed above, the case law is clear that an invalidity analysis that fails to specifically take into account the required structure of a means-plus-function limitation is improper. *Fresenius*, 582 F.3d at 1299.

      CBOE made the tactical decision not to have Dr. Steil offer opinions concerning how the prior art allegedly discloses the requisite structure of the means for matching limitations. CBOE cannot demonstrate, as it must, that allowing Dr. Steil to do so for the first time at trial is substantially justified, as Dr. Steil served several expert reports, but never explained how the prior art discloses the requisite structure. Nor can CBOE demonstrate, as it must, that ISE will not be harmed by permitting Dr. Steil to reveal new opinions on how the prior art allegedly discloses the requisite structure for the first time at trial, without having provided ISE an opportunity to analyze and probe those opinions during the expert discovery period. Accordingly, CBOE should be precluded from offering at trial any expert testimony from Dr. Steil concerning how the prior art allegedly discloses the requisite structure for the above-identified means for matching limitations of claim 3 and claim 4.

### IV.   CONCLUSION

      In view of the foregoing, ISE respectfully requests that the Court grant its Motion *in Limine* No. 1.

Dated: December 14, 2012                                  Respectfully submitted,


                                                          /s/ Michael S. DeVincenzo
                                                          Parker H. Bagley
                                                          Steven R. Gustavson
                                                          Michael S. DeVincenzo
                                                          GOODWIN PROCTER LLP
                                                          The New York Times Building
                                                          620 Eighth Avenue
                                                          New York, New York  10018
                                                          Telephone No.:  (212) 813-8800
                                                          Facsimile No.:   (212) 355-3333

                                                          Michael D. Huber
                                                          Cray Huber Horstman Heil & Van Ausdal LLC
                                                          303 W Madison, Suite 2200
                                                          Chicago, IL  60606
                                                          Telephone No.:  (312) 332-8450
                                                          Facsimile No.:   (312) 332-8451

                                                          *Attorneys for Defendant International Securities Exchange, LLC*