UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO BOARD OPTIONS EXCHANGE, INCORPORATED,<br><br>              Plaintiff,<br><br>   v.<br><br>INTERNATIONAL SECURITIES EXCHANGE, LLC,<br><br>              Defendant. | Case No. 07 CV 0623<br><br>Hon. Joan H. Lefkow, U.S.D. J.<br>Hon. Jeffrey Cole, U.S.M.J. |

**CHICAGO BOARD OPTIONS EXCHANGE, INCORPORATED'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO EXCLUDE
<u>DR. MA'S IMPROPER EXPERT OPINIONS</u>**

**I.    INTRODUCTION**

Plaintiff Chicago Board of Options Exchange, Inc. ("CBOE") moves pursuant to *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and related authority to exclude improper and unreliable expert opinions proffered by Dr. Moses Ma on behalf of Defendant International Securities Exchange LLC ("ISE").

The Opening Technical Report of Moses Ma, Ph.D. ("Opening Report") and the Rebuttal Report Expert Report of Moses Ma, Ph.D. ("Rebuttal Report") offer numerous examples of insufficient factual support and misapplied legal principles. The extent of those issues, reflected in CBOE's motions *in limine* and summarized here, raise a compelling issue about the reliability of Ma's methods and his overall suitability as an expert witness in this litigation. For example, Ma testified to disregarding this Court's holding regarding disavowal. His Opening Report strings together the Court's constructions with the words "CBOEdirect" in order to summarily

1

conclude that the limitation is met, but pays no mind whatsoever to the existence of open outcry. And, in flouting the patent statutes on anticipation and obviousness, he testified that a person of ordinary skill in the art would not consider printed publications for the purpose of rendering a patent claim invalid.

Ma's Opening and Rebuttal Reports also make a serious misstep in light of his testimony that his opinions are based on those of ISE's counsel. Such "mouthpiece" testimony is improper and should not be offered to the jury. His testimony also drew attention to general reliability issues and whether any of his opinions are in fact his own.

In sum, CBOE respectfully requests that the Court exclude Ma from testifying and, at the very least, that he not be allowed to testify as to the subject matter identified in this memorandum.

## II.  LEGAL STANDARD

Federal Rule of Evidence 702, as applied in *Daubert*, and *Kumho Tire Co.* v. *Carmichael,* 526 U.S. 137 (1999), provides that an expert may give opinion testimony "if (1) the testimony is based on sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case."

Federal Rule of Evidence 703, also applied in *Daubert*, provides that an expert may base an opinion on facts or data in the case, including otherwise inadmissible hearsay, if the facts or data are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." But an expert cannot use the Rule as a ruse to "become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion." *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 808 (N.D. Ill. 2005). *See Daubert*, 509 U.S. at 593 (The wide latitude granted to experts "is premised on an

assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline.")

The Court's role in applying these principles is "gatekeeper," excluding expert testimony that "is irrelevant or does not result from the application of reliable methodologies or theories to the facts of the case." *Micro Chem., Inc.* v. *Lextron, Inc.,* 317 F.3d 1387, 1391 (Fed. Cir. 2003).

## III. ARGUMENT

### A. Ma's Opinions Are Improperly Disconnected From the Law

As shown below, Ma has repeatedly flouted the requirements of Rule 702:

- Ma's infringement analysis wholly ignores this Court's holding regarding disavowal and open outcry and is therefore wholly improper and irrelevant. Ma testified that he did not consider the legal principle of disavowal in forming his infringement opinions. Exh. 3, Ma Dep. 65:9-23, Nov. 13, 2012.[1] Ma also analyzes only whether CBOEdirect infringes and ignores the open outcry component of CBOE's exchange. Exh. 1, Opening Technical Report of Moses Ma, Ph.D. ("Ma Opening Report") ¶¶ 1, 178, 180-81. *See also* CBOE's MIL Nos. 1 and 2.[2]

- Ma's apparent doctrine of equivalents arguments for the "automated exchange" limitation that more trades are executed by CBOEdirect trade engine than in open outcry, Exh. 1, Ma Opening Report ¶¶ 144, 154. 177, is irrelevant and legally improper. And his other argument that CBOE should not be able to avoid infringement by "having two 'rogue' traders who stayed on the trading floor and traded once a month," D.I. 157, Decl. of Dr. Moses Ma Regarding Claim Construction dated July 8, 2009 ¶ 4, is speculative, irrelevant, and fails to recognize this Court's holding regarding disavowal. *See also* CBOE's MIL No. 4.

- Ma offered infringement opinions based on ISE's rejected claim construction for "matching." Exh. 1, Ma Opening Report ¶¶ 77, 351, 367, 379. *See also* CBOE's MIL No. 12.

- Ma offered conclusory infringement opinions regarding "matching" and "allocating" that fail to apply the Court's claim constructions. Exh. 1, Ma Opening Report ¶¶ 65, 200. *See also* CBOE's MIL No. 11.

---

[1] "Exh. ___" refers to the Declaration of Brian J. Doyle in Support of CBOE's Motions in Limine Nos. 1-20 and Daubert Motion, filed herewith.

[2] "MIL No. ___" refers to CBOE's motions *in limine*, also filed today, each of which is assigned a number for the sole purpose of convenience.

- Ma offered conclusory infringement opinions regarding the "preferentially" limitations that ignore the Court's claim construction. Exh. 1, Ma Opening Report at ¶¶ 214-18, 366-69; *see id.* at ¶¶ 214-18, 228. *See also* CBOE's MIL No. 18.

- Ma omitted a required step in the corresponding structure for claim 4's "means for matching a first portion . . ." limitation, thereby ignoring the Court's claim construction. Exh. 1, Ma Opening Report ¶¶ 291-92; Exh. 3, Ma Dep. 224:20-225:16 (testifying about claim 2 and discussing the execute step of figure 5(a)). *See also* CBOE's MIL No. 10.

- Ma disregarded the word "querying" in claim 56 by opining that CBOE infringes claim 56 by "*receiving* data from OPRA [a reporting entity]." Exh. 1, Ma Opening Report, ¶ 397 (emphasis added). *See also* CBOE's MIL No. 19.

- Ma's opinion on secondary considerations (1) misstates and misapplies the "nexus" required for commercial success, Exh. 4, Rebuttal Report Expert Report of Moses Ma, Ph.D. ("Ma Rebuttal Report") ¶¶ 107 n.89, 109, 113-17, 119-20, 218 n.186, 224-28, (2) exaggerates—without support—the extent and basis of the alleged copying, *id.* at ¶¶ 126-29, 132, 237-38, 241, 243, and (3) lacks any factual basis to accompany his assertions of past failures, *id.* at ¶¶ 135-36, 247. *See also* CBOE's MIL No. 5.

- Ma failed to apply the legally required obviousness standards for (1) combining the prior art, Exh. 4, Ma Rebuttal Report ¶¶ 39, 52, 79, 97-98, 189, (2) the scope of the prior art, Exh. 3, Ma Dep. 252:21-253:15, 59:20-60:8, Nov. 13, 2012, (3) the scope of the inquiry, Exh. 4, Ma Rebuttal Report ¶ 28, and (4) assessing the prior art, Exh. 3, Ma Dep. 248:10-249:22, Exh. 4, Ma Rebuttal Report ¶ 36. *See also* CBOE's MIL No. 14.

- Ma re-argues claim constructions that have already been rejected by this Court. Exh. 4, Ma Rebuttal Report at ¶¶ 282-93 (identifying a structure for claim 2 not disclosed in the specification and a structure previously rejected by the Court). *Id.* at ¶ 296 n. 257 (identifying a structure for claim 4's "means for matching . . . based on a formula" limitation already rejected by the Court). *See also* CBOE's MIL Nos. 3, 10.

- Ma ignores invalidity principles when opining that claims 2 and 4 are not indefinite. For example, Ma assumes that claim 4 is not a means-plus-function claim and favors an inapplicable claim construction principle to determine indefiniteness. Exh. 4, Ma Rebuttal Report ¶ 294. *See also* CBOE's MIL Nos. 3, 10.

- Ma flip-flopped on his definition of "quotation" but did not similarly revise his opinion that claim 4 discloses sufficient structure to avoid a means-plus-function analysis, which relies on that abandoned definition. *See* Exh. 4, Ma Rebuttal Report ¶ 295; Exh. 3, Ma Dep. 220:14-17. *See also* CBOE's MIL No. 3.

- Ma construes "away market" of claim 56—without any intrinsic evidence to support his construction—to require perfect away market protection. Exh. 4, Ma Rebuttal Report ¶ 67; Exh. 3, Ma Dep. 195:21-196:11. *See also* CBOE's MIL No. 10.

- Ma offers conclusory assertions that ISE practices the patent, disclosing neither a factual basis nor any analysis. *See, e.g.* Exh. 1, Ma Opening Report ¶¶ 60 ("ISE's 'automated exchange' includes [the limitation]."), 63 ("ISE's 'automated exchange' contains [the limitation.] Therefore, ISE's 'automated exchange' literally satisfies this limitation."); *see also* ¶¶ 66, 100, 102, 104, 106-12, 114, 117, 119, 121, 123, 130-32. *See also* CBOE's MIL No. 6.

- Ma offers infringement and validity opinions by conflating the Court's constructions of "orders" and "quotations." *E.g.,* Exh. 1, Ma Opening Report ¶¶ 295-318 (arguing infringement of claim 4 but ignoring that the claim requires allocation to a PMM "*order*" and instead making arguments about a PMM "*quotation*"); Exh. 4, Ma Rebuttal Report ¶ 295 (arguing that claim 4 is not indefinite because the claim term "*quotation*" refers to a "double-sided *order*"). *See also* CBOE's MIL No. 13.

- To support his opinion on the patent's validity, Ma purports to rebut the content of prior art publications—published by third parties long before this litigation began—with uncorroborated recollections of fact. *See also* CBOE's MIL No. 15.

- Ma opines on the secondary consideration of commercial success by relying on ISE's usage of pro-rata allocation, a feature Ma admits is in the prior art. But Ma ignores that a feature in the prior art cannot be used to show commercial success, rendering his opinion meaningless. *See also* CBOE's MIL No. 5.

Ma has offered opinions without any evidentiary support. His deposition testimony highlights his basic misunderstanding of infringement, invalidity, and claim construction. And Ma has failed to apply the principles of infringement and invalidity reliably, and in many cases has failed to apply the principles whatsoever. The pervasiveness of Ma's errors—all designed to help him advance "his case"—reveal a systemic unwillingness and failure to use and apply reliable principles in his analysis. Indeed, the only principle that Ma seems to apply is he will say anything to make "his case" stronger. Exh. 13, Markman Tr. at 258:2-11 (Ma testifying that he relied on the Domowitz article, which he believed was largely inaccurate, because "it would make *my case* stronger") (emphasis added).

5

### B. Ma's Testimony Raises Reliability Issues

Just as an expert cannot rely on his status to become the mouthpiece for witnesses not at trial, neither can he become a mouthpiece for the attorneys. *Sommerfield v. City of Chicago*, 254 F.R.D. 317, 324 n.5 (N.D. Ill. 2008); *Baxter Int'l Inc. v. McGaw, Inc.*, No. 95 C 2723, 1996 WL 145778, at *4 (N.D. Ill. Mar. 27, 1996). *See Davis v. Duran*, 277 F.R.D. 362, 365 (N.D. Ill. 2011); *Tokio Marine & Fire Ins. Co., Ltd. v. Grove Mfg. Co.*, 762 F. Supp. 1016, 1018 (D.P.R. 1991) ("An expert witness should never become solely one party's expert advocate nor a 'gun for hire.'"). But Ma has done precisely that. He testified that ISE's counsel instructed him to ignore disavowal in forming his infringement opinions:



Exh. 3, Ma Dep. 217:15-19; *see id.* at 64:22-66:9; *see also id.* at 61:5-8 (testifying that he ignored an expert report served by the former Commissioner of the Securities and Exchange Commission responsive to the factual issues identified by the Court's order on summary judgment: "Q. Okay. Have you read the report of Paul Atkins that was submitted in this case? A. No. I was told by counsel not to bother."). Similarly, Ma offers "opinions" that ISE practices the patent based on information never disclosed in discovery and not disclosed in his expert report.[3] ISE through its expert is attempting to shoehorn its own opinions into trial testimony. This falls outside the scope of Rule 703.

---

[3] *See, e.g.* Exh. 1, Ma Opening Report ¶¶ 60 ("ISE's 'automated exchange' includes [the limitation]."), 63 ("ISE's 'automated exchange' contains [the limitation.] Therefore, ISE's 'automated exchange' literally satisfies this limitation."); *see also* ¶¶ 66, 100, 102, 104, 106-12, 114, 117, 119, 121, 123, 130-32. *See also* CBOE's MIL No. 6.

Ma's testimony also raised serious questions about his judgment and ability to draw conclusions from reliable facts and data. At the *Markman* hearing, Ma's testimony revealed that he is essentially an advocate under oath. Indeed, rather than being an independent expert, he referred to ISE's litigation against CBOE as "***our case***" and admitted to having fabricated facts on cross examination. *E.g.,* Exh. 13, Markman Tr. at 255:11-23 (testifying that he cited the Domowitz document because "it would give ***our case*** more strength, if I could even use your own documents"); 256:18-23 ("I thought it would make ***our case*** stronger if I could use your own documents to strengthen ***our case***."); *id* at 257:6-258:1 (testifying that the Domowitz article is inaccurate because Domowitz "did not go to these exchanges like I did, he did not interview people on exchanges and he did not look at their rules and regulations" and then confessing "I do not know that for a fact but most academics do not."); *id* at 258:2-11 (testifying that he relied on a document that he thought was inaccurate because "it would make ***my case*** stronger") (emphasis supplied).

Ma's Markman testimony reflects much more than a misunderstanding of the line between expert and advocate. Rather, it demonstrates a more fundamental problem with his credibility. This much is seen from Ma's recent deposition, where, following his branding of CBOE's expert Dr. Steil—who was present in the room—as a liar, Ma testified that whether cheating is bad 

7



Exh. 3, Ma Dep. 198:8-199:13. Ma's cavalier attitude toward fundamental ethical norms should give the Court pause when considering whether his opinions follow the word and spirit of Rules 702 and 703. Harboring such ethical relativism and having already admitted to (1) fabricating facts under oath and (2) relying on information he believed to be false simply because it would advance ▌ Ma has no place in the courtroom.

### IV.  CONCLUSION

For the forgoing reasons, CBOE respectfully requests that Ma be excluded from testifying at trial or, at a minimum, that he be prohibited from testifying about the subject matter identified in this memorandum.

Dated:  December 14, 2012                               Respectfully submitted,

                                                        By:  /s/ *Jonathan A. Marshall*

Jonathan A. Marshall (*admitted pro hac vice*)
David Francescani (*admitted pro hac vice*)
Michael T. Zoppo (*admitted pro hac vice*)
Brian J. Doyle (*admitted pro hac vice*)
Leah A. Edelman (*admitted pro hac vice*)
**FISH & RICHARDSON P.C.**
601 Lexington Avenue – 52nd Floor
New York, NY 10022
Telephone: (212) 765-5070

*Attorneys for Chicago Board Options Exchange, Incorporated*

OF COUNSEL:
Paul E. Dengel
Stacie R. Hartman
**SCHIFF HARDIN LLP**
233 South Wacker Drive
Suite 6600
Chicago, IL 60606-6473
Telephone (312) 258-5500
Facsimile (312) 258-5600

**CERTIFICATE OF SERVICE**

The undersigned certifies pursuant to Fed. R. Civ. P. 5 and L.R. 5.5, that on December 14, 2012 a true and correct copy of the foregoing document was filed via electronic filing with the Clerk of Court using the CM/ECF system and that a copy hereof will be electronically served by the electronic filing system directly upon all counsel of record.

*/s/Neil Ramsaroop*
Neil Ramsaroop