# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 07 C 623 | **DATE** | 3/7/2013 |
| **CASE TITLE** | CBOE vs. ISE | | |

**DOCKET ENTRY TEXT**

This document is temporarily filed under seal to allow the parties to review whether any portions are redactable as highly confidential. The seal on the document will be lifted at 5:00 p.m. on March 14, 2013 unless a motion to seal is filed before that time. ISE's motion *in limine* no. 4 to preclude CBOE from relying on non-infringing alternatives (#477) is granted. ISE's motion *in limine* no. 5 to preclude Paul S. Atkins from testifying (#480) is denied. See statement section of this order for details.

■[ For further details see text below.]  Notices mailed by Judicial staff.

# STATEMENT

ISE's Motion *in limine* No. 4 to Preclude CBOE from Relying on Non-Infringing Alternatives (#477) is **granted**.

ISE argues that CBOE's non-infringing alternative was not available during the alleged infringement. In response, CBOE argues that price/time allocation was available as of September 9, 2003, when the '707 patent issued, or it was at least available as of November 22, 2006, the relevant date if pre-suit damages are not available.

To qualify for lost profit damages, ISE bears the burden of establishing but-for causation that lost profits were due to infringing sales. *See Micro Chem., Inc.* v. *Lextron, Inc.*, 318 F.3d 1119, 1122 (Fed. Cir. 2003). The four-factor *Panduit* test provides a nonexclusive method for proving entitlement to lost profits, requiring the patentee to establish (1) demand for the patented product; (2) absence of acceptable non-infringing substitutes; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of the profit it would have made. *Rite-Hite Corp.* v. *Kelley Co.,* 56 F.3d 1538, 1545 (Fed. Cir. 1995) (citing *Panduit Corp.* v. *Stahlin Bros. Fibre Works, Inc.,* 575 F.2d 1152, 1156 (6th Cir. 1978)). "Once the patentee establishes the reasonableness of [the] inference [of but-for causation], the burden shifts to the infringer to show that the inference is unreasonable for some or all of the lost profits." *Micro Chem., Inc.* 318 F.3d at 1122. With respect to the second *Panduit* factor, "[w]hen an alleged alternative is not on the market during the accounting period, a trial court may reasonably infer that it was not available as a noninfringing substitute at that time. The accused infringer then has the burden to overcome this inference by showing that the substitute was available during the accounting period." *Grain Processing Corp.* v. *Am. Maize-Prods. Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999) (citing *Rite-Hite Corp.*, 56 F.3d at 1545). "Acceptable substitutes that the infringer proves were available during the accounting period can preclude or limit lost profits; substitutes only theoretically possible will not." *Grain Processing Corp.*, 185 F.3d at 1353.

## STATEMENT

The Beutel report states,

> CBOE could avoid infringing certain claims of the '707 patent by modifying its Hybrid system to *never* process any trade using *both* customer priority and size-based allocation rules. . . . [A] readily available alternative for CBOE would have been . . . for example, (1) use its actual sized-based allocation rules only when no customer is a participant in the trade (and thus no customer priority is used), *and* (2) replace its sized-based rule with a price/time allocation rule for allocations within a participant class when a customer *is* present (such that no size-based allocation is used).

(Dkt. #488, ISE Mot. *in Limine* Ex. G ¶ 25; Dkt. #489, ISE Mot. *in Limine* Ex. H ¶ 25). CBOE frames the non-infringing alternative as comprising only (2) above, since only those trades are allegedly infringing. Therefore, CBOE argues that the proper inquiry is into the availability of price/time allocation as a stand-alone. ISE, on the other hand, frames the non-infringing alternative as including both (1) and (2) above. Therefore, ISE argues that the relevant question is whether the combination of (1) and (2) was available. Dr. Beutel analyzes the acceptability of the entire alternative of (1) and (2) combined (*See id.* ¶¶ 28–29). Thus, the alternative discussed in the Beutel report is not merely price/time allocation. Therefore, the court determines that the issue is the availability of a system wherein size-based allocation rules are used when no customer is a participant, and price/time allocation is used when a customer is present.

CBOE concedes that it never used price/time allocation to allocate the trades of professionals in Hybrid in a situation with a public customer and multiple professional traders. Therefore, the next-best alternative from the Beutel report was never on the market, and the burden shifts to CBOE overcome the inference that the non-infringing substitute was not available. *See Grain Processing Corp.*, 185 F.3d at 1353.

ISE and CBOE disagree as to whether the non-infringing alternative was allowable under SEC filings. Although both parties agree that the SEC approved both UMA and a price/time allocation algorithm, they disagree as to whether CBOE was permitted to switch back and forth between the algorithms without sending a circular before each switch. Whether or not the system was allowable by the SEC becomes moot, however, in light of CBOE's failure to point to any evidence that a system like the one described in the Beutel report was available during the relevant period. *See id.* ("The critical time period for determining availability of an alternative is the period of infringement for which the patent owner claims damages, *i.e.,* the 'accounting period.'"). Because "[m]ere speculation or conclusory assertions will not suffice to overcome the inference[,] . . . the trial court must proceed with caution in assessing proof of the availability of substitutes not actually sold during the period of infringement." *Id.* Neither CBOE's motion nor Dr. Beutel's report cites evidence that CBOE contemplated this non-infringing substitute during the period of infringement. *See Conceptus, Inc.* v. *Hologic, Inc.*, 771 F. Supp. 2d 1164, 1179 (N.D. Cal. 2010) (concluding that expert report citing private conversations was insufficient to establish availability). Therefore, the court grants ISE's motion to exclude testimony on non-infringing alternatives.

<u>ISE's Motion *in limine* No. 5 to Preclude Paul S. Atkins from Testifying (#480) is **denied**.</u>

ISE argues that the court should preclude testimony by Paul S. Atkins because (1) he is not an expert in the area of art of the invention, (2) his rationales are inconsistent with this court's construction of "automated exchange," and (3) his testimony would be duplicative of CBOE's technical expert Dr. Steil.

Federal Rule of Evidence 702 applies to patent cases. *Sundance, Inc.* v. *DeMonte Fabricating Ltd.*,

550 F.3d 1356, 1360 (Fed. Cir. 2008). Courts are charged with a "gatekeeping role," the objective of which is to ensure that expert testimony admitted into evidence is both reliable and relevant. *See Daubert* v. *Merrell Dow Pharm., Inc.,* 509 U.S. 579, 597, 113 S. Ct. 2786, 125 L. Ed. 469 (1993); *see also Kumho Tire Co.* v. *Carmichael,* 526 U.S. 137, 149, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) (holding that Rule 702 applies not only to "scientific" testimony, but to all expert testimony). In the patent context, "it is an abuse of discretion to permit a witness to testify as an expert on the issues of noninfringement or invalidity unless that witness is qualified as an expert in the pertinent art." *Sundance, Inc.* 550 F.3d at 1363. "Those of ordinary skill (or those of extraordinary skill) in the particular art are not, of course, the only witnesses who may testify as experts in a patent trial." *Id.* at 1363 n.5. Others who do not have ordinary skill in the art may testify as to narrower issues. *See id.*

ISE argues that Mr. Atkins is not qualified to testify on infringement issues because he is not a person having ordinary skill in the field of computer programming. CBOE disagrees, defining the relevant field as "markets for the exchange of securities." CBOE further argues that, even if Mr. Atkins is not qualified to testify on infringement, his expertise in exchanges overseen by the SEC allows him to testify on the issue of whether CBOEdirect and open outcry are integrated parts of a single exchange or are instead independent, side-by-side exchanges. ISE does not dispute Mr. Atkins's expertise in "SEC regulations and rulemaking, public policy concerning competitiveness and attractiveness of U.S. capital markets, and investor protection." (Dkt. #482, ISE Memo. in Supp. of Mot. *in Limine* No. 5 at 3.)

In his report, Mr. Atkins opines, "CBOE's trading floor and its CBOEdirect components cannot be considered independent exchanges. Rather, the trading floor and CBOEdircct together comprise a single, integrated, and partially automated exchange." (Dkt. #487, ISE Mot. *in Limine* Ex. F at 10.) His report further states, "[i]t is my opinion that CBOEdirect, even if it were independent from the CBOE Hybrid Trading System (which it is not), would be neither fully automated nor an exchange." (*Id.* at 25.) Mr. Atkins concludes that it is "my opinion that CBOEdirect is not an 'automated exchange.'" (*Id.* at 27.) As ISE agrees Mr. Atkins is knowledgeable in the area of exchanges, he is qualified to testify on the issues in his report.

ISE additionally argues that the court should preclude Mr. Atkins from testifying because his opinions are counter to the Federal Circuit's construction of "automated exchange." CBOE argues that the Atkins report does not opine that CBOEdirect is not an automated exchange because it is not a registered exchange. "The risk of confusing the jury is high when experts opine on claim construction . . . even when, as here, the district court makes it clear to the jury that the district court's claim constructions control." *CytoLogix Corp.* v. *Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005); *see also Callpod, Inc.* v. *GN Netcom, Inc.* 703 F. Supp. 2d 815, 821 (N.D. Ill. 2010). Exclusion of testimony predicated on mistaken claim construction is proper because such testimony is "irrelevant to issues that will be decided at trial." *Chicago Mercantile Exch., Inc.* v. *Tech. Research Grp.*, 782 F. Supp. 2d 667, 673 (N.D. Ill. 2011).

Mr. Atkins may testify that, because CBOE is a registered exchange, the SEC would allow CBOE to do certain things and not others. These types of opinions could be relevant to a conclusion of whether CBOEdirect is an independent automated exchange, as the court has construed the term. However, the Atkins report includes some improper statements that argue claim construction issues. For example, Mr. Atkins opines, "I believe that the word "exchange" as used in the '707 Patent and as applied by the Court should be understood in the context of the securities trading activity to which it applies." (Dkt. #487, ISE Mot. *in Limine* Ex. F at 10.) Mr. Atkins also relies on Dr. Ma's report, arguing, "[p]lainly, the term 'exchange' cannot be divorced from the meaning given to it by the SEC." (*Id.* at 26.) Testimony construing claims in front of the jury is improper; therefore, Mr. Atkins will not be permitted to make statements related

| STATEMENT |
|---|

to claim construction issues. *See CytoLogix Corp.*, 424 F.3d at 1172. While the court will not entirely exclude Mr. Atkins's testimony, CBOE should ensure that its experts do not opine counter to this court's construction of the claims.

    Finally, ISE argues that Mr. Atkins's testimony will be duplicative of Dr. Steil's. Federal Rule of Evidence 403 provides, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Although similarities exist between Mr. Atkins's and Dr. Steil's reports, Mr. Atkins will offer additional testimony, such as whether the SEC would have approved side-by-side exchanges. Therefore, Mr. Atkins's testimony is not duplicative.