# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 07 C 623 | **DATE** | 3/13/2013 |
| **CASE TITLE** | CBOE vs. ISE | | |

**DOCKET ENTRY TEXT**

Order entered on 3/7/2013 (Dkt. #702) is amended as follows: motion by CBOE in limine no. 3 (#519) to preclude argument at trial concerning claims already found invalid is reserved as to claim 2. Enter order: Motion by CBOE in limine no. 3 to preclude argument at trial concerning claims already found invalid (#519) is granted as to claim 2. (*See* #707 re: claim 4.) Motion by ISE in limine no. 3 to preclude CBOE from offering argument and testimony concerning the "automated exchange" and "matching" claim terms inconsistent with the Federal Circuit's constructions (#474) is denied. Motion by CBOE in limine no. 11 to preclude argument and evidence that contravenes the construction of matching and allocating (#496) is granted. Motion by CBOE in limine no. 12 to preclude argument and evidence that relies on ISE's rejected construction of matching (#523) is granted. Motion by CBOE in limine no. 13 to preclude argument and evidence that conflates the construction of orders and quotations (#494) is granted. See order dated 3/12/2013 (#713). ISE's oral motion of 3/13/2013 to reconsider ruling on CBOE's motion in limine no. 18 concerning allocating preferentially according to size (#713) is denied. The court's use of the term "from largest to smallest" indicates sequence. ISE did not appeal the court's construction of the term and it is too late to do so now. See statement section of this order for details.

■[ For further details see text below.]

Notices mailed by Judicial staff.

## STATEMENT

1. <u>Means for matching, claim 2</u>

On March 13, 2013, the court heard evidence and argument concerning whether the specification contains structure for claim 2's "means for matching the remaining portion with professional orders or quotations in the book memory means on a pro rata basis." Col. 30:15–19. The structure on which ISE relies is found at Figures 4(a) and 4(b) and column 16. Figure 4(a) illustrates a bid matching process and an allocation algorithm. Figure 4(b) sets out detail for the allocation algorithm. The bid matching process appears to apply to public customer orders, directing that those orders be filled first. If there are no public customer orders at the lowest offer (*i.e.*, best price) (S150) or if the order is not filled in full by the public customers (S170), then the bid matching process determines whether there are orders that can be traded after the primary market maker's small order preference is honored. (S152.) If so, those orders ("the remaining portion") are sent through an allocation algorithm that sets out steps for dividing them amongst professionals on a pro rata basis. The formulae at column 16:36 ff. demonstrate how this division is done. To the extent that there needs to be structure for a "means for allocating" (which is not at issue), plainly this is structure.

Dr. Ma testified and ISE argues, however, that the allocation algorithm is actually within the larger

**STATEMENT**

process of bid matching and that allocation is the math that takes place within the allocation algorithm to divide the size of the order (to buy) by the number of contracts (for sale) to reach a number of shares per professional order. Yet another step remains, Dr. Ma testified, which is to match a particular buyer with the particular contracts being offered so they may be sent for execution of trades. If this is what the inventor meant as matching,[1] the specification does not disclose how that type of matching is done. Rather, it tells a person of ordinary skill in the art how to "divid[e] all or portions of the incoming order or quotation among the previously received orders and quotations," *i.e.*, to allocate. (Dkt. #286 at 4.) Moreover, ISE has not explained how its "matching" structure can be differentiated from allocating consistently with the ruling of the Federal Circuit, which rejected its argument that "matching" and "allocating" "are part of a single process," *Chicago Bd. Options Exch., Inc.* v. *Int'l Sec. Exch., LLC*, 677 F.3d at 1361, 1370 (Fed. Cir. 2012), stating:

> As the first example [in the specification] indicates, all incoming orders initially are "matched" to public customer orders, and where no incoming orders remain to be filled, the order is executed. In the second example, the incoming order is initially "matched" to the available public customer orders. Where there are remaining incoming orders, the balance of the incoming order is then "allocated" among quotations and professional orders. In addition, the '707 Patent's abstract describes an "exchange [that] *allocates* the *matching* of orders first to fill customer orders and then to fill professional orders on a pro rata basis." These examples show that "matching" occurs at some point that is distinct from "allocating."

*Id*. at 1371 (emphasis in original). That the court rested on examples demonstrating that matching occurred *before* allocating, points to the conclusion that ISE's position simply lacks foundation in the patent or in the opinion of the Federal Circuit.

For these reasons the court concludes that the specification does not disclose structure for claim 2's "means for matching the remaining portion with professional orders or quotations in the book memory means on a pro rata basis." As a result, claim 2 is indefinite and, therefore, invalid.

2. Automated exchange

ISE continues to argue that the court's jury instruction for "automated exchange" as set out in the order of January 14, 2013 (#643) is improper because it considers that the accused "automated exchange" in this case is CBOEdirect rather than Hybrid, as this court has determined. The court has considered ISE's position several times, both in briefs and on the record, and is unpersuaded that the order is erroneous or that Hybrid is not the accused "automated exchange."

---

1. Gary Katz, the inventor testified quite the contrary at his deposition:

> Matching is when two prices are the same to buy and to sell and does not get into the definition of how one shares buyers' and sellers' trades against each other. The allocation is the process by which it is decided which buyers and which sellers interact at the matched price.

(Katz Dep. at 162–63.)