UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHICAGO BOARD OPTIONS EXCHANGE, INCORPORATED, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Case No. 07 C 623 |
| INTERNATIONAL SECURITIES EXCHANGE, LLC, | ) ) ) ) | Judge Joan H. Lefkow |
| Defendant. | ) | |

**OPINION AND ORDER**

International Securities Exchange ("ISE") initiated this litigation against Chicago Board Options Exchange ("CBOE") alleging infringement of United States Patent No. 6,618,707 ("the '707 patent"). In response, CBOE sought a declaratory judgment that the '707 patent is invalid or, in the alternative, was not infringed. ISE stipulated to non-infringement shortly before trial. The court entered final judgment in favor of CBOE on April 10, 2013 and the Federal Circuit affirmed this judgment on April 7, 2014. CBOE now moves for attorney's fees under the exceptional case doctrine arising from 35 U.S.C. § 285 and for expert fees under the court's inherent authority to issue sanctions. For the reasons stated below, CBOE's motion is granted in part and denied in part.

**BACKGROUND**

The facts of this case have been recited numerous times in the published decisions cited herein and need not be repeated for disposition of the pending motion. Founded in 1973, CBOE, like other securities exchanges, used open outcry to effectuate trades—a method of trading where market professionals shout and use hand gestures to communicate information about

1

orders. Because this method of trading takes place on the exchange floor, it is also known as floor-based trading. As technology advanced, so did CBOE's trading system. In the mid-1990s, CBOE developed a screen-based trading system, where trades could be conducted electronically. In 2001, CBOE introduced CBOEdirect, the platform for this screen-based trading system. Two years later CBOE launched a new system called the Hybrid Trading System ("Hybrid"), which combines CBOEdirect's electronic trading platform with open-outcry trading.

Founded two years prior to CBOE's launch of CBOEdirect, ISE is a fully-electronic options exchange. It holds the subject '707 patent titled "Automated Exchange for Trading Derivative Securities," which discloses a system for electronically effectuating trades of financial instruments such as options contracts without open outcry. On November 22, 2006, ISE notified CBOE that it had filed suit against CBOE because it believed "CBOE's Hybrid System and CBOE's use of that system" infringed the '707 patent. (Dkt. 1 at Exh. A).

I. **Claim Construction History**

One of the disputed terms in the '707 patent was "automated exchange." CBOE argued that the term should be construed as "a fully computerized exchange in which no matching or allocating is performed manually in open outcry." (Dkt. 286 at 4.) ISE pushed for a broader definition, construing the term as "[a]n exchange that includes a system that automatically matches incoming orders and quotations with stored orders and quotations." (*Id.*) Significantly, ISE's principal expert witness, Dr. Moses Ma, opined that "the term 'automated exchange' refers to an exchange that has implemented any form of electronic system that automates the trading of financial instruments, even if that exchange also maintains a physical trading floor where trading can occur in a more manual fashion." (Dkt. 157 at ¶ 3.)

2

The court adopted CBOE's position that an automated exchange was fully computerized, thus rejecting Dr. Ma's opinion and ISE's position. Ultimately, the court defined "exchange" as "a method for executing trades of financial instruments" and "automated," when used to modify "exchange," as "fully computerized, such that its protocol does not include matching or allocating through use of open outcry in order to execute trades." (Dkt. 300 (internal quotation marks omitted).)[1] An "automated exchange," then, is "a method for executing trades of financial instruments that is fully computerized, such that it does not include matching or allocating through use of open outcry." (*Id.*) The court also noted that the '707 patent disavows floor-based trading. (*Id.* at n.1).

CBOE moved for summary judgment of non-infringement, arguing, *inter alia*, that ISE could not prove that its system, Hybrid, met the court's definition of "automated exchange." (Dkt. 309.) ISE countered that Hybrid used two distinct methods for executing trades: a fully automated method and an open-outcry method, and that its infringement claims were directed at the first, CBOEdirect. (Dkt. 317.) This response represented a shift from ISE's original strategy of accusing Hybrid, presumably because the court's construction of "automated exchange" excluded Hybrid from the scope of the '707 patent. ISE contended that CBOEdirect was an automated exchange, "a fully computerized method of executing trades." *Id.*[2] CBOE emphasized in reply that CBOEdirect was not an exchange for trading a financial instrument and,

---

[1] "Stated conversely," the court added, "a method that effects trades of financial instruments by automatically matching and allocating but also entails 'oral communications between market professionals at a central location in open view of other market professionals' is not fully computerized and therefore not 'automated.'" (Dkt. 300.)

[2] Somewhat ambiguously, ISE described CBOEdirect "as part of CBOE's Hybrid System and as CBOE's disaster recovery system." (Dkt. 317 at 2, n.1.) CBOE pointed out that it had been granted two patents directed to its Hybrid Trading System: U.S. Patents 7,613,650 and 7,552,083, which the Patent Office allowed over the '707 patent on the basis that nothing in the prior art taught the integration of electronic with open-outcry methods of order execution. (*See* Dkt. 325 at 11.)

further, that "CBOEdirect cannot operate to trade financial instruments without open outcry." (Dkt. 325 at 5, 12.)

The court concluded that ISE had raised a genuine issue of material fact as to whether, under the court's construction of "automated exchange," CBOEdirect was its own exchange, separate from Hybrid. *Chicago Bd. Options Exch., Inc.* v. *Int'l Sec. Exch., LLC*, 776 F. Supp. 2d. 606, 611 (N.D Ill. 2011), *vacated*, 677 F.3d 1361 (Fed. Cir. 2012). If ISE could show that CBOEdirect functioned independently from Hybrid, then ISE could argue at trial that CBOEdirect infringed the '707 patent. *Id.* at 610–11. Nonetheless, the court granted summary judgment in favor of CBOE on other grounds. *Id.*

ISE appealed. (Dkt. 365.) As relevant here, ISE argued that this court had misconstrued "automated exchange." The Federal Circuit held that "automated exchange" described a system, not a method, but otherwise accepted this court's construction of the term. *Chicago Bd. Options Exch., Inc.* v. *Int'l Sec. Exch., LLC*, 677 F.3d 1361, 1371–73 (Fed. Cir. 2012) (construing "automated exchange" as a "system for executing trades of financial instruments that is fully computerized, such that it does not include matching or allocating through the use of open-outcry").

ISE also argued that, because the '707 patent does not *require* its system execute all trades automatically, the patent does not disavow all aspects of traditional floor-based trading systems. The Federal Circuit rejected this argument, agreeing with this court's finding that the '707 patent disavows traditional floor-based exchange systems:

> The '707 Patent thus disavows the traditional open-outcry or floor-based trading systems. There is no other way to interpret the listing in the specification of the many reasons why manual and partially automated exchanges cannot sustain the growing demands of the market. Indeed, the specification goes well beyond expressing the patentee's preference for a fully automated

> exchange over a manual or a partially automated one, and its repeated derogatory statements about the latter reasonably may be viewed as a disavowal of that subject matter from the scope of the Patent's claims.

*Id.* at 1372. The Federal Circuit reversed the grant of summary judgment on other grounds and remanded the case for further proceedings. *Id.* at 1375. On remand, the parties prepared for trial. CBOE rests its exceptional case argument on that phase of the litigation.

## II. "Automated Exchange" and the Scope of Disavowal

On remand, ISE continued to press its definition of "automated exchange" despite the Federal Circuit's ruling. In its proposed jury instruction, ISE correctly recited the settled construction of "automated exchange" as "a system for executing trades of financial instruments that is *fully computerized*, such that it does not include matching or allocating through the use of open outcry" but then added that an "'automated exchange' is not required to execute all trades *in a fully computerized manner*." (Dkt. 453 (emphasis added).)

The court rejected ISE's proposed jury instruction, repeating the Federal Circuit's construction and stating that "a system for executing trades of financial instruments that permits automatic matching or allocating but also permits matching or allocating through oral communications . . . is *not* an automated exchange." (Dkt. 455 (emphasis added).) ISE moved for reconsideration of this ruling, arguing that it departed from the Federal Circuit's construction of "automated exchange" because it added a "converse construction" that violated the Federal Circuit's mandate. (Dkt. 457 at 3–4 (internal quotation marks omitted).) ISE also argued that the construction was "inaccurate on its face" because it used the word "permits" instead of "includes." (Dkt. 457 at 3.) The court was not persuaded by ISE's argument that it had violated the Federal Circuit's mandate but agreed that the jury instruction should use "includes" rather than "permits," and revised the instruction:

5

> An automated exchange is a system for executing trades of financial instruments that is fully computerized, such that it does not include matching or allocating through the use of open outcry. Conversely, a system for executing trades of financial instruments that includes matching or allocating through open outcry is not an automated exchange.

(Dkt. 643 at 2.)

The court reminded ISE that the Federal Circuit specifically found that the '707 patent disavows floor-based trading. "[I]t follows that the '707 patent claims a system . . . that does not include (provide for, permit) matching or allocating through open outcry." (*Id.*)

ISE's efforts to chip away at the Federal Circuit's construction of "automated exchange" did not go unnoticed by CBOE. In response to remarks ISE made at an October 4, 2012 settlement conference, CBOE requested the court clarify its construction of "automated exchange" as well as its ruling on disavowal. (Dkt. 427) CBOE believed that it had become apparent the parties had irreconcilable views on these important issues. (*Id*. at 1.)

The court granted CBOE's motion and, at a November 8, 2012 hearing, stated that the Federal Circuit "didn't reject" its construction of "automated exchange . . . other than to say it was a system, not a method . . . ." (Dkt. 735 at 4.) ISE maintained that although the Federal Circuit found that the '707 patent disavows open-outcry exchanges, it did not conclude that the patent disavows partially automated systems. (*Id*. at 5–6.) The court disagreed, stating once again that a partially automated exchange is outside the scope of the '707 patent. (*See id*. at 6.) *See also Chicago Bd. Options Exch., Inc.*, 677 F.3d at 1372 (rejecting ISE's argument "that the '707 Patent does not disavow all aspects of the traditional floor-based system because it does not require a trading system to execute *all* trades automatically").

ISE continued to ignore the Federal Circuit's construction of "automated exchange." In its third motion *in limine*, ISE asked the court to preclude CBOE from arguing that "a fully

6

computerized trading system that routes orders or quotations (or even portions of orders or quotations) to another trading system which uses open-outcry to match and/or allocate trades fails to satisfy the Federal Circuit's construction of 'automated exchange.'" (Dkt. 476 at 2.) The court denied ISE's motion, agreeing with CBOE that "[a] *single* trading system that can execute in two ways (i.e., electronically and in open outcry) falls within the scope of the disavowal and thus outside the scope of the '707 patent." (Dkt. 716; dkt. 626 at 3.) CBOE also filed a motion *in limine* to bar ISE from offering argument or evidence misconstruing "automated exchange," which the court granted. (Dkts. 545, 695.)

## III. The Accused System

Having failed in its effort to redefine "automated exchange" as one that would at least permit matching and allocating through open outcry, ISE revived its theory that CBOEdirect was the accused exchange. In arguing that CBOEdirect infringed the '707 patent, however, it ignored the court's holding that it needed to first show "whether, under the court's construction, CBOEdirect may be considered an exchange separate from the open outcry aspects of Hybrid." *See Chicago Bd. Options Exch., Inc.*, 776 F. Supp. 2d at 611. For example, in his opening technical report, ISE's expert, Dr. Ma, named CBOEdirect as the accused exchange:

> I understand that the presence of additional unclaimed elements does not affect a finding of infringement, if each and every limitation of an asserted claim is present in an accused device exactly as claimed. I further understand that the claim construction that I am to apply requires a "system for executing trades of financial instruments." Therefore, that CBOE*direct*, which unquestionably meets the Federal Circuit's construction of "automated exchange, "communicates with CBOE's partially automated floor-based open outcry method of trading, as part of CBOE's Hybrid market model, does not change my opinion that CBOE*direct* is an "automated exchange for trading a financial instrument wherein the trade may be one of a purchase of a quantity of the instrument and a sale of a quantity of the instrument."

7

(Dkt. 553 at ¶ 178) (emphasis in original) (quotation marks in original).) Dr. Ma did not address the preliminary question of whether CBOEdirect functions independently from the open-outcry aspects of Hybrid.

In light of ISE's arguments, CBOE filed a motion *in limine* to preclude ISE from arguing that CBOEdirect infringes the '707 patent. (Dkt. 517.) CBOE expressed concern that ISE would claim that Hybrid is two exchanges simply because it can execute trades in two different ways. (Dkt. 518 at 3.) In its response to CBOE's motion, ISE continued to name CBOEdirect as the accused exchange. (Dkt. 584 at 1–2, 8.)

In a separate motion *in limine*, CBOE moved to strike any opinions in Dr. Ma's opening technical report that relied on improper constructions of "automated exchange." (Dkt. 545.) Although Dr. Ma had testified that he did not consider whether the patented system disavowed floor-based trading (dkt. 546 at 2–3; dkt. 555 at 65:9–66:9), ISE argued that his assertions that CBOEdirect did not fall within the scope of the disavowed subject matter were still appropriate. (Dkt. 585 at 1–2.) The court disagreed and granted both of CBOE motions *in limine*. (Dkts. 694, 695.)

At the same time, the court defined the issue for trial as

> . . . whether Hybrid is merely two independent exchanges, one an "automatic exchange" (CBOEdirect) and the other open outcry on the trading floor, or whether it is an integrated system that requires interaction with the trading floor. As such, ISE will have the burden to demonstrate (1) that each element . . . of one or more claims is present in CBOEdirect, and (2) that Hybrid's "rule-based order routing algorithm" does not include matching or allocating through open outcry. This is necessary because the '707 patent disavows floor based trading. In other words, ISE must prove that Hybrid is a system for executing trades of financial instruments that is fully computerized, such that it does not include matching or allocating through the use of open outcry.

8

(Dkt. 694.) In a subsequent statement, the court expanded upon the burdens ISE would face at trial, stating that to the extent Dr. Ma opined as to CBOEdirect, he would be offering proof of (1) above, but that if he (or another one of ISE's witnesses) did not disclose an opinion as to (2), there would be a failure of proof. (Dkt. 695 at 1.) The court reiterated that the '707 patent "does not encompass Hybrid unless ISE can also establish that it is actually two independent trading systems." (*Id.*) The court noted that "[a]lthough ISE has a different view of the case and of the import of the Federal Circuit's opinion, the Federal Circuit neither held nor indicated that this court's view of the issue for trial stated in its ruling on CBOE's motion for summary judgment, is incorrect . . . ." (*Id.*)

Trial was scheduled for March 14, 2013. A week before, ISE moved for clarification on the court's ruling on two of its motions *in limine*, claiming that the question for the jury was "whether CBOEdirect is an 'automated exchange.'" (Dkt. 698 at 1.) The court denied the motion and explained that it had considered ISE's position "several times, both in briefs and on the record" and was "unpersuaded." (Dkt. 711; dkt. 716 at 2.) ISE stipulated to non-infringement on March 22, 2013, after *voir dire* but before any evidence was offered. ISE then appealed to the Federal Circuit a second time, arguing that the court erred by holding that Hybrid was the accused system and by "precluding ISE from accusing CBOEdirect of infringement." *Chicago Bd. Options Exch., Inc.* v. *Int'l Sec. Exch., LLC*, 748 F.3d 1134 (Fed. Cir. 2014), *reh'g denied* (May 5, 2014).

The Federal Circuit affirmed, stating, "CBOEdirect is a part of the larger Hybrid trading system. The Hybrid system does utilize, at least to some extent, 'matching or allocating through the use of open-outcry.' Thus, ISE must demonstrate that CBOEdirect is separate from the open-

9

outcry aspects of Hybrid." *Id.* at 1140. It further held that, "because this factual issue was unresolved in the previous appeal, the trial court did not violate the mandate rule by allowing this unresolved issue to go to the jury." *Id.*

## ANALYSIS

### I. Attorney's Fees

Section 285 of the Patent Act authorizes a district court to "award reasonable attorney fees to the prevailing party" in "exceptional cases." 35 U.S.C. § 285. Previously, exceptional cases were limited to those that met the Federal Circuit's strict two-part test for objective baselessness and subjective bad faith. *Brooks Furniture Mfg., Inc.* v. *Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (2005). The Supreme Court abrogated that standard in *Octane Fitness, LLC* v. *ICON Health & Fitness, Inc.*, 572 U.S. ---, 134 S. Ct. 1749, 1756, 188 L. Ed. 2d 816 (2014). Under *Octane Fitness*, an exceptional case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id. at* ---, 134 S. Ct. at 1756, 188 L. Ed. 2d 816. District courts "may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* A preponderance of the evidence is sufficient to prove exceptionality. *Id.* at 1758.

Although only one of *Octane Fitness's* two prongs is required, ISE's conduct on remand meets both: the substantive strength of ISE's litigating position was so weak that to advocate it at all was unreasonable. After the Federal Circuit's ruling in the first appeal, ISE had only one avenue through which it could pursue its claims. It could argue that CBOEdirect was a stand-alone automated exchange alongside a floor-based system, such that it was not part of a system that included matching and allocating in open outcry. ISE did not take this route. Instead, it

made arguments that had clearly been foreclosed by previous rulings. ISE repeatedly pressed for the same rejected definition of "automated exchange" that its principal expert submitted during the claim construction hearing: one that did not require matching and allocating through open outcry. Once that door was closed, ISE referred to CBOEdirect as the accused exchange despite its original claim and the court's eventual ruling that Hybrid was the accused system. In fact, ISE continues to do so in its reply to CBOE's motion for attorney's fees, where it goes so far as to assert that "[d]espite all parties agreeing that CBOEdirect was the accused system, this Court *sua sponte* found that CBOE Hybrid would be the accused 'automated exchange' at trial." (Dkt. 754 at 4.) ISE does not acknowledge that the Federal Circuit agreed with this court as to the object of ISE's infringement claims. The review of ISE's conduct entailed in deciding this motion persuades the court that ISE must have understood, after the first decision on appeal, that it could not prove infringement. If ISE had evidence that CBOEdirect was operating independently of Hybrid, it certainly would have disclosed it. Its own expert acknowledged that CBOEdirect was "part of" CBOE's patented Hybrid system. Rather than folding its tent, it wasted the court's and CBOE's time and resources.

The determination that CBOE is entitled to attorney's fees is in line with other courts' applications of *Octane Fitness*. For example, in *TNS Media Research, LLC* v. *TiVo Research & Analytics, Inc.*, No. 11 CIV. 4039, 2014 WL 5639930, at *8 (S.D.N.Y. Nov. 4, 2014), a district court awarded attorney's fees where a party repeatedly pressed for a claim construction that was "frivolous" and "lacked merit." The court also took issue with the party's construction of another claim term that rendered the party's amendments to the original claim language meaningless. *Id.* at *9. A few months earlier, another court in the same district awarded attorney's fees where "defendants' post-trial motions simply re-litigate[d] issues that had already

11

been decided . . . ." *Cognex Corp.* v. *Microscan Sys., Inc.*, No. 13-CV-2027, 2014 WL 2989975, at *3 (S.D.N.Y. June 30, 2014). A third court called the tactic of relitigation described in *Cognex* "egregious." *See Gametek LLC* v. *Zynga, Inc.*, No. CV 13-2546, 2014 WL 4351414, at *3 (N.D. Cal. Sept. 2, 2014).

ISE does not acknowledge *Octane Fitness's* new standard. Instead, it frames its arguments in terms of whether the suit was "'objectively baseless' . . . brought or prosecuted in bad faith, or an example of a 'rare' case which the Supreme Court recently equated with 'exceptional' under 35 U.S.C. Section 285." (Dkt. 754 at 1.) Although ISE claims that, in the wake of *Octane Fitness*, "district courts do *not* consider the bar to have been substantially lowered," ISE supports this statement with citations to district court decisions that, contrary to ISE's claim, explicitly acknowledge *Octane* as the "more liberal test." (*Id.* at 3 (citing *Bianco* v. *Globus Med., Inc.*, No. 2:12-CV-00147, 2014 WL 1904228, at *1 (E.D. Tex. May 12, 2014) among others).)

Even under the stricter *Brooks Furniture* standard, the Federal Circuit affirmed a district court's grant of attorney's fees where a party "improperly asserted and maintained its positions in the litigation." *Taurus IP, LLC* v. *DaimlerChrysler Corp.*, 726 F.3d 1306, 1327 (Fed. Cir. 2013). In *Taurus*, the district court determined that the party "'prolonged the litigation in bad faith' after construction of the disputed claim terms" and filed repetitive motions. *Id.* at 1329 (quoting the district court's opinion). In affirming the district court, the Federal Circuit faulted the party for its "unreasonably broad construction" and failure to "continually assess the soundness of pending infringement claims, especially after an adverse claim construction." *Id.* at 1327–28. In another case, also under the stricter *Brooks Furniture* standard, the Federal Circuit affirmed a district court's finding that a case was exceptional where the party's assertions had

been "rejected" by the Federal Circuit and "'created confusion, wasted valuable court time, and increased the burden of the litigation on the parties.'" *Takeda Chem. Indus., Ltd.* v. *Mylan Labs., Inc.*, 549 F.3d 1381, 1386–87 (Fed. Cir. 2008) (quoting the district court's opinion). Like the parties in both *Taurus* and *Takeda*, ISE's refusal to accept rulings of this court and the Federal Circuit exceeded the bounds of reasonable advocacy.

ISE endeavors to draw the court's attention away from its repetitive failing arguments by focusing on its various victories over the course of the litigation. It states that "CBOE never moved for summary judgment of invalidity," that its patent infringement claim "survived summary judgment," and that "CBOE's inequitable conduct defense was dismissed," and then details the arguments it won on appeal. (Dkt. 754 at 2.) This motion is not about the issues ISE won along the way—it is about how ISE responded in the face of the Federal Circuit's first opinion. Under all the circumstances presented, the court concludes that ISE's litigation conduct in the face of the weakness of its infringement claims stands out from most other patent cases to which this court has been assigned. As such, the case became "exceptional" after the May 2012 decision of the Federal Circuit.

## II. Expert Fees

CBOE makes a perfunctory argument that ISE should pay for CBOE's expert witnesses because the expenses were incurred as a result of ISE's unreasonable conduct. A district court has inherent authority "to impose sanctions in the form of reasonable expert fees in excess of what is provided for by statute." *Takeda*, 549 F.3d at 1391. Use of this authority is reserved for cases where the court finds "fraud or bad faith whereby the 'very temple of justice has been defiled.'" *Amsted Indus. Inc.* v. *Buckeye Steel Castings Co.*, 23 F.3d 374, 378 (Fed. Cir. 1994)

(quoting *Chambers* v. *NASCO, Inc.*, 501 U.S. 32, 50–51, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)).

CBOE has not demonstrated, by specific references to the record, that it only engaged experts because the case was proceeding to trial. Nor does the court believe that ISE's conduct on remand, even though unreasonable, was conducted in bad faith. As such, the motion to shift CBOE's expert witness expenses to ISE is denied.

## CONCLUSION

For the foregoing reasons, CBOE's motion is granted in part and denied in part. CBOE shall submit a detailed request for the fees incurred as a direct result of ISE's conduct identified in this Opinion and Order. The parties are directed to work together to determine fees in accordance with Northern District of Illinois Local Rule 54.3(d).

Date:   December 10, 2014   _____

U.S. District Judge Joan H. Lefkow